# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF UTAH, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 2:23-cv-16 |
| | ) | |
| MARTIN J. WALSH, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.     Venue Is Improper in this District and Division under 28 U.S.C. § 1406 Because
There Is No Connection Between the Complaint and this District or Division. ................. 4

II.    Alternatively, the Court Should Transfer this Matter to the District of Columbia or a
District in which a Plaintiff Resides under 28 U.S.C. § 1404(a). ........................... 9

III.   At a Minimum, in the Interests of Justice and to Avoid the Appearance of Judge-
Shopping, the Court Should Transfer this Case Under 28 U.S.C. § 1404 to a Division
Within this District in which More than One Judge Sits. ................................... 14

CONCLUSION.......................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*Alabama v. U.S. Army Corps of Eng'rs,*
   382 F. Supp. 2d 1301 (N.D. Ala. 2005) ................................................................... 7, 8, 9

*Birnbaum v. Blum,*
   546 F. Supp. 1363 (S.D.N.Y. 1982) ................................................................................7

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) ............................................................................... 7, 8, 9

*Chapman v. Dell, Inc.,*
   No. 09-cv-7, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) .....................................9

*Dep't of Homeland Sec. v. New York,*
   140 S. Ct. 599 (2020) ................................................................................................13

*Fla. Hometown Democracy, Inc. v. Browning,*
   No. 08-cv-80636, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008) .............................6

*Fla. Nursing Home Ass'n v. Page,*
   616 F.2d 1355 (5th Cir. 1980), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla.*
   *Nursing Home Ass'n,* 450 U.S. 147 (1981) ...............................................................5

*Florida v. United States,*
   No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ......................... 7, 8

*Garcia v. Int'l Const. Equip. Inc.,*
   765 F. App'x 109 (5th Cir. 2019) ...................................................................... 13, 16

*Gray Cas. & Sur. Co. v. Lebas,*
   No. 12-cv-2709, 2013 WL 74351 (E.D. La. Jan. 7, 2013) .......................................7

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) ...................................................................................................11

*Hanby v. Shell Oil Co.,*
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................................. 9, 12

*Icon Indus. Controls Corp. v. Cimetrix, Inc.,*
   921 F. Supp. 375 (W.D. La. 1996) .............................................................................9

*In re Gibson,*
   423 F. App'x 385 (5th Cir. 2011) ...................................................................... 13, 16

*In re Planned Parenthood Fed'n of Am., Inc.,*
   52 F.4th 625 (5th Cir. 2022) ....................................................................................14

*In re Radmax, Ltd.,*
   720 F.3d 285 (5th Cir. 2013) ................................................................12, 14, 15

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) .......................................................................*passim*

*Leonhart v. McCormick,*
   395 F. Supp. 1073 (W.D. Pa. 1975) ....................................................................6

*McCuin v. Texas Power & Light Co.,*
   714 F.2d 1255 (5th Cir. 1983) .................................................................... 13, 16

*Mizell v. Prism Computer Corp.,*
   27 F. Supp. 2d 708 (S.D. Miss. 1998) ...............................................................15

*Nestor v. Hershey,*
   425 F.2d 504 (D.C. Cir. 1969) ........................................................................ 6, 7

*Norwood v. Kirkpatrick,*
   349 U.S. 29 (1955) ............................................................................................10

*O'Neill v. Battisti,*
   472 F.2d 789 (6th Cir. 1972) ..............................................................................6

*Perkins v. Snider,*
   No. 94-cv-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ..............................6

*Positive Software Sols., Inc. v. New Century Mortg. Corp.,*
   476 F.3d 278 (5th Cir. 2007) ............................................................................13

*Republic of Iraq v. Beaty,*
   556 U.S. 848 (2009) ............................................................................................8

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,*
   626 F.3d 973 (7th Cir. 2010) .................................................................... 11, 15

*Reuben H. Donnelly Corp. v. FTC,*
   580 F.2d 264 (7th Cir. 1978) ..............................................................................5

*Rock Bit Int'l, Inc. v. Smith Int'l, Inc.,*
   957 F. Supp. 843 (E.D. Tex. 1997) ...................................................................14

*Stewart Org., Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988) .................................................................................... 10, 11

*Van Dusen v. Barrack,*
   376 U.S. 612 (1964) ..........................................................................................10

*Veba-Chemie A.G. v. M/V Getafix,*
   711 F.2d 1243 (5th Cir. 1983) ............................................................................................. 10

*Zhang v. Chertoff,*
   No. 08-cv-2589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ..................................... 5

## Statutes

28 U.S.C. § 1391 ........................................................................................................... *passim*

28 U.S.C. § 1404 ........................................................................................................... *passim*

28 U.S.C. § 1406 ....................................................................................................... 1, 4, 9

29 U.S.C. § 203(x) .............................................................................................................. 8

29 U.S.C. § 2617(2) ........................................................................................................... 8

42 U.S.C. § 9607(d)(2) ...................................................................................................... 8

## Regulations

Proposed Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder
   Rights
   86 Fed. Reg. 57272 (Oct. 14, 2021) .............................................................................. 3

Final Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising
Shareholder Rights,
   87 Fed. Reg. 73822 (Dec. 1, 2022) ......................................................................... *passim*

## Other Authorities

@steve_vladeck, Twitter (Jan. 26, 2023, 5:45 PM),
   https://twitter.com/steve_vladeck/status/1618742043987316736 ................................. 16

15 Bus. & Com. Litig. Fed. Cts. § 162:39 ....................................................................... 6

1 Moore's Federal Practice 1487–88 ................................................................................ 6

17 Moore's Federal Practice Civil § 110.03 (2021) ......................................................... 7

Wright & Miller, 14D Fed. Prac. & Proc. § 3805 (4th ed.) ............................................ 5

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) .......................... 10, 12, 15

Ryan J. Owens and Ryan C. Black, *The Supreme Court Must Stop the Trend of Judge-Shopping*, The Hill
*available at*
   https://thehill.com/opinion/judiciary/484703-the-supreme-court-must-stop-the-trend-of-judge-
   shopping/ ...................................................................................................................... 16

Special Order No. 3-342 (Sept. 8, 2022) *available at*
    https://www.txnd.uscourts.gov/sites/default/files/orders/03-342.pdf ...........................................2

Special Order No. 3-343 (Sept. 14, 2022), *available at*
    https://www.txnd.uscourts.gov/sites/default/files/orders/3-343.pdf ...........................................2

Special Order No. 3-344 (Sept. 14, 2022), *available at*
    https://www.txnd.uscourts.gov/sites/default/files/orders/3-344.pdf ...........................................2

Special Order No. 3-345 (Sept. 14, 2022) *available at*
    https://www.txnd.uscourts.gov/sites/default/files/orders/3-345.pdf ...........................................2

Special Order No. 3-347 (Dec. 14, 2022) *available at*
    https://www.txnd.uscourts.gov/sites/default/files/orders/3-347.pdf ...........................................2

*United States v. Texas*, No. 22-58 (Nov. 29, 2022), *available at*
    https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf ..13

*United States v. Texas*, No. 22-58 (Sept. 19, 2022) *available at*
    https://www.supremecourt.gov/DocketPDF/22/22-58/238509/20220922104355438_22-
    58%20tsac%20Vladeck%20revised.pdf ...............................................................................................16

**INTRODUCTION**

This lawsuit challenges a federal government regulation, promulgated in Washington, D.C., that clarifies the application of fiduciary duties for selecting investments and other investment courses of action under the Employee Retirement Income Security Act of 1974 ("ERISA"). The case does not arise from any event or omission occurring in the Northern District of Texas, much less the Amarillo Division. No Plaintiff resides in this District or this Division. Nor does any Defendant. Plaintiffs' decision to forum shop by filing in the Northern District—and, in particular, in the single-judge Amarillo Division, which has no connection whatsoever to this dispute—undermines public confidence in the administration of justice.

The proper court for this suit is either the U.S. District Court for the District of Columbia, where Defendants reside, or a District in which one of the Plaintiffs resides.[1] *See* 28 U.S.C. § 1391(e). Because venue is improper in this District or Division under 28 U.S.C. § 1391(e), the case should be transferred to a proper District pursuant to 28 U.S.C. § 1406. Alternatively, this action should be transferred under 28 U.S.C. § 1404(a), because the interests of justice counsel in favor of transfer.

But even if the Court finds that Texas resides in the Northern District (despite its capital being in Austin) and that transfer outside this District is not warranted, transfer within this District is still appropriate. At minimum, and to avoid any appearance of judge-shopping by Plaintiffs, the Court should transfer this case to a Division within the District in which more than one District Judge sits. Such a transfer would avoid the appearance that Plaintiffs can, in effect, choose their judge by selecting a Division in which a single judge sits. Unlike new cases filed in this Division—which are all assigned

---

[1] There are 29 named Plaintiffs, none of whom resides in the Northern District of Texas. The complaint asserts venue in this District and this Division based solely on the State of Texas, Compl. ¶ 44, ECF No. 1, which in fact resides in the Austin Division of the Western District of Texas.

to a single judge[2]—new civil cases in the Dallas, Fort Worth, Lubbock, Abilene, and San Angelo Divisions are assigned randomly among multiple judges in all relevant circumstances.[3] Plaintiffs' and other litigants' ongoing tactic of filing many of their lawsuits against the federal government in single-judge divisions, or divisions where they are otherwise almost always guaranteed to procure a particular judge, undermines public confidence in the administration of justice.

For these reasons, and as set forth in more detail below, transfer is clearly warranted here. In the meantime, to avoid unnecessary expenditure of the parties' and the Court's resources, Defendants respectfully request that the Court stay all outstanding deadlines, including the government's answer deadline and any other deadlines that may arise, pending resolution of this motion.

## BACKGROUND

Plaintiffs—25 States, a publicly traded company and its subsidiary, a trade association, and an individual—have sued the Department of Labor ("DOL") and the Secretary of Labor in his official capacity, challenging a final rule promulgated by Defendants in Washington, D.C. Compl. ¶¶ 8–37; *see also* Final Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. 73822 (Dec. 1, 2022) (the "Investment Duties Rule" or "Rule"). The Investment

---

[2] Under Special Order No. 3-344, all new cases filed in the Amarillo Division are assigned to the one judge sitting in this Division. *See* Special Order No. 3-344 (Sept. 14, 2022), *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-344.pdf (last accessed Feb. 6, 2023). All new cases filed in the Wichita Falls Division are also assigned to a single judge. *See* Special Order No. 3-343 (Sept. 14, 2022), *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-343.pdf.

[3] *See* Special Order No. 3-342 (Sept. 8, 2022) (civil cases filed in the Dallas Division assigned randomly among eleven judges), *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/03-342.pdf (last accessed Feb. 6, 2023); Special Order No. 3-347 (Dec. 14, 2022) (civil cases filed in the Fort Worth Division assigned randomly among three judges), *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-347.pdf (last accessed Feb. 6, 2023); Special Order No. 3-345 (Sept. 14, 2022) (civil cases filed in the Lubbock, Abilene, and San Angelo Divisions assigned randomly among two judges), *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-345.pdf (last accessed Feb. 6, 2023).

Duties Rule was promulgated following the publication of a notice of proposed rulemaking and a sixty-day public comment period, during which DOL received more than 895 written comments and 21,469 petitions.  *See* Proposed Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 86 Fed. Reg. 57272 (Oct. 14, 2021); 87 Fed. Reg. at 73827.  The final Rule responds to the public's comments and clarifies the duties of fiduciaries to ERISA employee benefit plans with respect to selecting investments and taking investment courses of action, including making plain that fiduciaries must base such actions on factors they determine to be "relevant to a risk and return analysis."  87 Fed. Reg. at 73885.  The Rule also makes clear that fiduciaries must act consistent with these principles when exercising shareholder rights.  *Id.*  The Rule clarifies that risk-return factors may include, depending on the individual facts and circumstances, the economic effects of environmental, social, and governance ("ESG") factors on the investment.  *See id.*  The Rule also emphasizes that a fiduciary may not subordinate plan participants' financial benefits or "sacrifice investment return or take on additional investment risk" to promote unrelated goals.  *Id.*

These changes are consistent with prior sub-regulatory guidance put forth by DOL to help plan fiduciaries understand their obligations under ERISA.  *See id.* at 73822, 73824–25.  The Rule also eliminates recently adopted specific documentation requirements because DOL determined they risk unneeded costs to the plan and otherwise do not serve the interests of ERISA plan participants.  *See id.* at 73827–28.  Plaintiffs assert that the Investment Duties Rule violates the Administrative Procedure Act ("APA") because it allegedly exceeds DOL's statutory authority under ERISA and is arbitrary and capricious.  Compl. ¶¶ 174–90.  The majority of the rule became effective on January 30, 2023.  *See* 87 Fed. Reg. at 73886.

Plaintiffs filed this suit in the Amarillo Division of the Northern District of Texas on January 26, 2023.  They allege that venue is proper here because "Plaintiff State of Texas is a resident

of this judicial district."[4]  Compl. ¶ 44.  They also allege that "a substantial part of the events or omissions giving rise to the Complaint occur within this district" but include no factual allegations to support this conclusory statement.  *Id.*  Instead, the Investment Duties Rule was drafted and signed in Washington, D.C., where Defendants reside.  87 Fed. Reg. at 73886.

## ARGUMENT

This Court should transfer this case to the U.S. District Court for the District of Columbia or another District in which one of Plaintiffs resides under 28 U.S.C. § 1406 because venue is improper in this District or Division under 28 U.S.C. § 1391(e).  Alternatively, the Court should transfer this case under 28 U.S.C. § 1404(a) because the interests of justice counsel transfer.  At a minimum, even if the Court finds that Texas resides in this District and that transfer to another District is not warranted, to avoid any appearance of judge-shopping by Plaintiffs that would undermine public confidence in the administration of justice, the Court should transfer this case within this District to a Division where civil cases are assigned randomly between multiple judges.

**I.       Venue Is Improper in this District and Division under 28 U.S.C. § 1406 Because There Is No Connection Between the Complaint and this District or Division.**

The federal venue statute, 28 U.S.C. § 1406, directs a district court to dismiss or transfer a case filed in the wrong district or division.  Specifically, it provides that a district court "shall dismiss" a case laying venue in the wrong division or district, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Venue in a suit against the federal government is governed by 28 U.S.C. § 1391(e).  That section provides that in a civil action against the United States, its agencies, or its officers, venue is proper in "any judicial

---

[4] The Complaint also alleges that Plaintiff Liberty Oilfield Services LLC is a Texas limited liability corporation.  Compl. ¶ 33.  Plaintiffs do not cite Liberty Oilfield Services's residency, however, as a basis for filing suit in the Northern District of Texas, *see id.* ¶ 44, or otherwise allege that its principal place of business is in this District—let alone the Amarillo Division, *see* 28 U.S.C. § 1391(c)(2).

district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Venue is not proper in this District, much less in the Amarillo Division, because neither Defendants nor Plaintiffs reside here, and no part of the events giving rise to this case occurred in this District or Division.

First, DOL and the Secretary of Labor reside in Washington, D.C.  *Zhang v. Chertoff*, No. 08-cv-2589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) ("Federal defendants are generally deemed to reside in the District of Columbia."); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds*, *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) ("[t]o hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" because most federal agencies likely maintain offices in "most, if not all, judicial districts").

Second, the policy challenged in this suit was promulgated by Defendants in Washington D.C., and no real property is at issue in this case.

Third, no Plaintiff resides in this District or Division.  In particular, where a State sovereign brings suit, the sovereign resides in the district where it "maintains its principal place of business." 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business."); Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.) ("[R]eference to 'the' and the singular

'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time.").

Texas is the only Plaintiff asserting residence in this District or Division, but the State of Texas "resides" for venue purposes in its principal place of business, its capital Austin, located in the Austin Division of Western District of Texas.[5] *See, e,g.*, *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government.") (citing 1 Moore's Federal Practice 1487–88 ("Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties.")); *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-cv-80636, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) (applying the "'general rule' that in suits against public officials, a defendant's residence for venue purposes is the district where he performs his official duties" to Florida Secretary of State); *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed.) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties.  State officials with 'statewide jurisdiction' may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. 94-cv-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence,

---

[5] Defendants also intend to challenge Texas and the other State Plaintiffs' standing to bring this lawsuit.  Because Texas is the only Plaintiff asserting residence in this District or Division, a finding by the Court that Texas lacks standing would leave no party asserting residence in this District.

that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2021) (same).

Indeed, the State of Texas has previously maintained in another suit that "any argument that venue can lie in a 'place of injury,' which Plaintiffs could allege is in any part of the [State of] Texas, 'is contrary to the venue statute and the weight of jurisprudence.'" Texas's Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Transfer, *City of El Cenizo v. Texas*, 5:17-cv-404, ECF 32-1, at 4 (W.D. Tex. filed June 8, 2017) (quoting *Gray Cas. & Sur. Co. v. Lebas*, No. 12-cv-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013)); *see id.* at 10 (arguing that venue is improper when Plaintiffs "assert no particular facts about the operation of [the challenged law] in their municipalities or counties"). Rather, Texas argued in that case that the sole venue for its suit was in Austin because that is where Defendant State government officials "perform their official duties." *Id.* at 5. Texas now takes the opposite view.

Plaintiffs may rely on out-of-circuit cases for the proposition that a *State* resides for venue purposes in every district or division within its sovereign territory. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018); *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, *2 (N.D. Fla. Jan. 18, 2022); *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005). But this Court should decline to follow those cases, which erroneously conclude that a State sovereign resides in all judicial districts within its borders without addressing the explicit statutory text of section 1391.

To the contrary, Congress recognized six specific entities in the venue statute as "residing" in a certain district:

- Corporations, 28 U.S.C. § 1391(d);
- "[A]n officer or employee of the United States or any agency thereof acting in his official capacity," 28 U.S.C. § 1391(e)(1);
- Foreign states, 28 U.S.C. § 1391(f);

- Natural persons, 28 U.S.C. § 1391(c)(1);

- "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," 28 U.S.C. § 1391(c)(2); and

- Defendants "not resident in the United States," 28 U.S.C. § 1391(c)(3).

State sovereigns are not specifically enumerated and—being neither the federal government, a corporation, a foreign state or resident in a foreign country, nor a natural person—fall into the residual category under section 1391(c)(2) for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated." Such a covered entity, "if a plaintiff," is resident "*only* in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2) (emphasis added). "[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]" *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). If Congress intended to limit the entity category described in section 1391(c)(2) "to particular [entities] that it had in mind, it could have enumerated them individually," as it did with the federal government, foreign governments, and other persons and entities. *Id.* Congress knows how to make explicit provisions for States, and particularly State governments, when it chooses. *See, e.g.*, 42 U.S.C. § 9607(d)(2); 29 U.S.C. § 2617(c); 29 U.S.C. § 203(x). Because it did not do so in section 1391, under that section, a State, when acting as a plaintiff, resides where it maintains its principal place of business: the State capitol. *See* 28 U.S.C. § 1391(c)(2).

What is more, Congress was clearly cognizant of States when drafting section 1391, *see* 28 U.S.C. §§ 1391(b)(1), (d), and knew how to provide a separate venue provision for States as plaintiffs had it so intended. Cases like *California v. Azar*, *Florida v. United States*, and *Alabama v. U.S. Army Corps of Engineers*, disregard this principle. Instead, those cases effectively create a new venue provision exclusively for States found nowhere in section 1391. And that State-only venue provision is based only on a "common sense" view of the nature of States and provides a broader choice of venue than the broadest entity venue provisions that, even for the federal government, limit residence

to certain districts and not "ubiquitous" presence.  *California*, 911 F.3d at 570; *Alabama*, 382 F. Supp. 2d at 1329.  Indeed, if those decisions are correct, then for venue purposes, the United States could sue any party, whether a sovereign state or otherwise, in any district or division in the country, on the same theory that a sovereign "resides" everywhere at once within its boundaries.  Such a reading of section 1391 renders its limitations on residency a nullity.

The only proper venues for this case under section 1391(e) are the District of Columbia, the Austin Division of the Western District of Texas, or another District in which one of Plaintiffs resides. Thus, the Court should dismiss this case or transfer it in the interest of justice under 28 U.S.C. § 1406.

## II.   Alternatively, the Court Should Transfer this Matter to the District of Columbia or a District in which a Plaintiff Resides under 28 U.S.C. § 1404(a).

Even if the Court finds that venue is proper in this Division, it should nevertheless, pursuant to 28 U.S.C. § 1404(a), transfer the case to the District of Columbia or to a District in which one of Plaintiffs resides.

Under section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc).  "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g.*, *Chapman v. Dell, Inc.*, No. 09-cv-7, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'" (quoting *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383 (W.D. La. 1996))).  "The underlying premise of § 1404(a)

is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *In re Volkswagen of Am., Inc.*, 545 F.3d at 313.  By filing in a District and a Division that have no connection to the claims, parties, or potential witnesses in this case, Plaintiffs have "abus[ed] their privilege under § 1391." *Id.*  Transfer is warranted here "[f]or the convenience of parties and witnesses," and because transfer is "in the interest of justice[.]"  28 U.S.C. § 1404(a).

Transfers under section 1404(a) are to be more freely granted than dismissals ordered on *forum non conveniens* grounds.  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than had been required to dismiss on *forum non conveniens* grounds); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983) (the "heavy burden traditionally imposed upon defendants by the *forum non conveniens* doctrine—dismissal permitted only in favor of a substantially more convenient alternative—was dropped in the § 1404(a) context").  And while district courts are empowered with substantial discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), the Fifth Circuit, sitting en banc, has held that a district court "clearly abuse[s] its discretion in denying [a defendant's] transfer motion" when "the only connection between [the] case and the [chosen division] is plaintiffs' choice to file there," *Volkswagon*, 545 F.3d at 318 (brackets omitted).  Moreover, it is well-settled "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) (collecting cases); *see also Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964).

10

The public and private factors that guide the section 1404 analysis all favor transfer here.  *See Volkswagon*, 545 F.3d at 315; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312.  If the answer is yes, the Court must then determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient."  *Id.* at 315.  The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at 315.  The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*  These factors "are not necessarily exhaustive or exclusive."  *Id.*  Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Org.*, 487 U.S. at 30— "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

The private factors, which focus on the convenience of the parties and witnesses in litigating in the chosen District or Division, militate in favor of transfer here.  The challenged policy was conceived and promulgated in Washington, D.C., and the administrative record—upon which this APA case will be decided—is also located there.  *See Volkswagen*, 545 F.3d at 316.

The public interest factors strongly favor transfer.  This District and Division have no "local interest" in having the case adjudicated here.  *Id.*  This public interest factor—which recognizes that

there can be a "local interest in having localized interests decided at home"—weighs heavily in favor of transfer out of this District or Division. *See id.* Of the twenty-nine Plaintiffs, only the State of Texas resides in Texas; another Plaintiff alleges it is "a Texas limited liability company." Compl. ¶ 33. And given the claims in this suit, no party—not even Texas—"resides" in the Northern District, much less the Amarillo Division, for purposes of section 1391(e). And even if this Court adopts a capacious view of where Texas resides, the State is clearly less at home here than in the State capital, Austin. Moreover, none of the Defendants resides in this District or Division. Plaintiffs' "choice of forum is of minimal value" where, as here, "none of the parties reside in this division of this District." *See Hanby*, 144 F. Supp. 2d at 677.

Plaintiffs' claims—which seek declaratory and injunctive relief seeking to invalidate or set aside a policy promulgated in Washington, D.C.—also have no connection to this District or Division. Further, Plaintiffs have not identified anyone in this District or Division who has "an interest—that is, a stake—in the resolution of this controversy." *Volkswagen*, 545 F.3d at 318. "In short, there is no relevant factual connection to" this District or Division. *Id.* In such circumstances, it is an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

Finally, even if the convenience factors did not clearly favor transfer to Washington, D.C.— which they do—"the interest[s] of justice," 28 U.S.C. § 1404(a), alone favor transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (collecting cases). Not only is there no public interest in having this matter litigated in this Division, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of judge shopping were left unchecked. As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges,

12

sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J. concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions). This concern is heightened in single-judge divisions, where a party can effectively select its preferred judge. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007) (Wiener, J. dissenting) ("The trial judge who is to hear a case is almost never 'selected' by or agreed on by the parties; rather, such judge is . . . designated by objectively random or blind assignment through long established court procedures (except in the rare case of a party's successful forum shopping in a single-judge district . . .).").  Absent a clear connection to a particular District, filing in a single-judge division in that District contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed," regardless of the impartiality of the judge sitting in the single-judge division.  *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011); *see also* Tr. 93:25-94:11, *United States v. Texas*, No. 22-58 (Nov. 29, 2022) (Kagan, J.) (suggesting single judge divisions facilitate the perception that litigants can "pick [their] trial court judge"), *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf (last accessed Feb. 6, 2023).  This practice conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice,'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983), and thus the Fifth Circuit "permit[s] intra-district case transfers to prevent judge-shopping," *Garcia v. Int'l Constr. Equip. Inc.*, 765 F. App'x 109, 110 (5th Cir. 2019).

There is no good cause to indulge Plaintiffs' apparent gamesmanship.  Defendants have moved expeditiously to transfer this matter.  Any delay caused by Plaintiffs' selection of venue is entirely of Plaintiffs' making.  The fact that Plaintiffs may seek emergency relief is no basis for ratifying their selection of an inappropriate venue for their claims, particularly when the time sensitivity was

created by Plaintiffs' own actions.[6]  *See Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997) ("Speed of disposition of lawsuits without any Beaumont connection is not a valid reason for forum shopping.  If it were otherwise, why would the plaintiff not choose Kansas, South or North Dakota, or the famed 'rocket docket' of the Eastern District of Virginia?"); *see also In re Radmax*, 720 F.3d at 289 (standard "delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer").  And here, more than most cases, there is a public interest in declining to reward Plaintiffs' selection of this single-judge Division in which to hear claims that have no connection to the Division.

In short, there is no local interest in having this case adjudicated in a Division where none of the parties resides, none of the underlying events occurred, and none of the potential evidence exists. This is exactly the sort of case where other venues—including the District Court for the District of Columbia—"have a greater 'stake' in the litigation" that this District.  *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317–18).  Accordingly, the Court should transfer this case, either to Washington, D.C. or to a District in which one of Plaintiffs resides.

### III.   At a Minimum, in the Interests of Justice and to Avoid the Appearance of Judge-Shopping, the Court Should Transfer this Case Under 28 U.S.C. § 1404 to a Division Within this District in which More than One Judge Sits.

At a minimum, the Court should grant an intra-district transfer under 28 U.S.C. § 1404.  If the Court concludes that venue is proper in the Northern District because Texas resides in this District and determines that transfer from this District to another is not warranted under section 1404(a), the Court should nonetheless transfer this case to a Division within this District that is not a single-judge

---

[6] The Investment Duties Rule was signed on November 21, 2022 and published in the Federal Register on December 1, 2022.  *See* 87 Fed. Reg. at 73886.  The majority of the Rule became effective on January 30, 2023.  *See id.*  Nonetheless, Plaintiffs waited to file this lawsuit until January 26, 2023; they have yet to file any emergency motion.  *See generally* Compl.

Division—namely Dallas, Fort Worth, Lubbock, Abilene, or San Angelo—for random assignment in the normal course.

An intra-district transfer is supported by both Section 1404(a) and 1404(b). Section 1404(a) allows for transfer of a case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). And it calls on the Court to consider not just the convenience of the parties but also the "interest of justice." Section 1404(b) permits intra-district transfer purely in the Court's discretion. It provides that "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b). As discussed, it is well-established "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854; *see also, e.g.*, *Research Automation*, 626 F.3d at 978 ("The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."); *Mizell v. Prism Computer Corp.*, 27 F. Supp. 2d 708, 714 (S.D. Miss. 1998) ("The interests of justice component of § 1404(a) may, in itself, be determinative of the decision to allow a transfer, even when the convenience of the parties and witnesses would call for a different result."); *cf. In re Radmax*, 720 F.3d at 290 (granting mandamus directing transfer from Marshall Division to Tyler Division within the Eastern District of Texas).

The Court should exercise its authority under Section 1404 (a) or (b) in the circumstances presented here. There is no apparent reason—other than judge shopping—that explains why Plaintiffs elected to file in the Amarillo Division rather than in the Dallas, Fort Worth, Lubbock, Abilene, or San Angelo Division in this District, let alone in D.C. Unlike civil cases filed in the Amarillo Division, which are assigned to a single judge in all circumstances, cases in Dallas,

Fort Worth, Lubbock, Abilene, and San Angelo are assigned randomly among multiple judges. Given the absence of any clear connection to the Amarillo Division, Plaintiffs' choice to file here contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed[.]" *In re Gibson*, 423 F. App'x at 388. It also undermines public confidence in the impartiality of the judicial system by suggesting that some "parties clearly have [a] right to a 'judge of their choice.'" *McCuin*, 714 F.2d at 1262. In such circumstances, the Fifth Circuit "permit[s] intra-district case transfers to prevent judge-shopping." *Garcia*, 765 F. App'x at 110.

This case is merely the latest example of an ongoing practice of many of the Plaintiff States and other litigants of filing most of their lawsuits against the federal government in single-judge divisions or divisions where they are almost always guaranteed to procure a particular judge assignment. *See* Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022) (noting 20 such lawsuits in Texas courts in 2021 and 2022 up to September 19, 2022), *available at* https://www.supremecourt.gov/DocketPDF/22/22-58/238509/20220922104355438_22-58%20tsac%20Vladeck%20revised.pdf (last accessed Feb. 6, 2023);[7] *see also* Ryan J. Owens and Ryan C. Black, *The Supreme Court Must Stop the Trend of Judge-Shopping*, The Hill (describing judge-shopping during the Trump administration), *available at* https://thehill.com/opinion/judiciary/484703-the-supreme-court-must-stop-the-trend-of-judge-shopping/ (last accessed Feb. 6, 2023). That practice undermines public confidence in the judicial

---

[7] Between September 19, 2022 and January 26, 2023, six additional suits, including this one, have been filed in Texas courts in single-judge venues or venues where Plaintiffs are almost always guaranteed to procure a particular judge assignment, bringing the number to 25. *See Texas v. Becerra*, No. 22-cv-419 (S.D. Tex.); *Texas v. Mayorkas*, No. 23-cv-1 (S.D. Tex.); *Texas v. EPA*, No. 23-v-17 (S.D. Tex.); *Texas v. HHS*, No. 23-cv-66 (N.D. Tex.); *Texas v. DHS*, No. 23-cv-7 (S.D. Tex.); *Texas v. Walsh*, No. 23-cv-16 (N.D. Tex.); *see also* @steve_vladeck, Twitter (Jan. 26, 2023, 5:45 PM), https://twitter.com/steve_vladeck/status/1618742043987316736 (providing update to Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022)).

system, rewards gamesmanship, and overworks certain members of the judiciary at the expense of the random-assignment system functioning as intended.  To avoid that perception, and to discourage gamesmanship in the future, this Court should at a minimum transfer this case to a Division in which more than one judge sits for random assignment consistent with that Division's assignment rules.

## CONCLUSION

This Division is not the appropriate forum for Plaintiffs' claims.  For the reasons articulated herein, the Court should transfer this action either to the District of Columbia or another District in which a Plaintiff resides.  At a minimum, should the Court determine venue is proper in the Northern District of Texas, it should nonetheless transfer this case to the Dallas, Fort Worth, Lubbock, Abilene, or San Angelo Division.[8]

Dated: February 7, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

BRAD P. ROSENBERG
*Assistant Branch Director*
Federal Programs Branch

/s/ *Leslie Cooper Vigen*
LESLIE COOPER VIGEN
CASSANDRA M. SNYDER
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005

---

[8] As of the time of this filing, Defendants had not been properly served pursuant to Federal Rule of Civil Procedure 4(i).  Defendants are nonetheless moving now to conserve the Court's and the parties' resources should this matter be transferred—particularly given that Plaintiffs have indicated that they intend to seek a preliminary injunction.  *See* Compl. ¶ 6.  Defendants reserve the right, however, to assert insufficient service of process as a defense.  *See* Fed. R. Civ. P. 12(b)(5).

(202) 305-0727
leslie.vigen@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Leslie Cooper Vigen*
LESLIE COOPER VIGEN
U.S. Department of Justice

**CERTIFICATE OF CONFERENCE**

I certify that on February 7, 2023, undersigned counsel conferred with counsel for Plaintiffs regarding this motion: Melissa Holyoak, Counsel for the State of Utah; Beau Roysden, Counsel for the State of Utah; Leif Olson, Counsel for the State of Texas; Joseph S. St. John, Counsel for the State of Louisiana; Kevin M. Gallagher, Counsel for the Commonwealth of Virginia; Jared M. Kelson, Counsel for Liberty Energy, Inc., Liberty Oilfield Services, and Western Energy Alliance; and Ned Hedley, Counsel for James R. Copland.  Plaintiffs oppose Defendants' motion to transfer.

/s/ *Leslie Cooper Vigen*
LESLIE COOPER VIGEN