# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

_____

STATE OF UTAH, *et al.*

                 Plaintiffs

v.                                       No. 2:23-cv-16

JULIE A. SU, in her official capacity
as Acting Secretary of Labor,[1] *et al.*

                 Defendants.

_____

## REPLY IN SUPPORT OF
## MOTION TO TRANSFER VENUE

Plaintiffs have scrambled to address their venue problem by amending their complaint to add, for the first time, a new plaintiff who they allege resides in this District. That last-minute addition—more than a month after Plaintiffs filed their initial complaint, several days after Plaintiffs filed their motion for a preliminary injunction, and mere hours before Plaintiffs' deadline for filing their opposition to Defendants' motion to transfer—may make venue in Amarillo proper under 28 U.S.C. § 1391(e). But Plaintiffs' maneuvering underscores the lack of connection to this District and Division at the outset of the case while heightening the public perception that Plaintiffs' choice of venue was, in fact, for the purpose of judge-shopping.

The interests of justice and preventing Plaintiffs' gamesmanship from undermining public confidence in the judicial system require—more than ever—that the Court transfer this case pursuant to 28 U.S.C. § 1404. There are numerous options: the case could be transferred to Washington, D.C. (where Defendants reside and the events giving rise to this lawsuit occurred) or to another District in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Julie A. Su is automatically substituted for Martin J. Walsh as a Defendant sued in an official capacity.

which one of the original Plaintiffs resides. Only a § 1404 transfer would counteract the public's perception that Plaintiffs may hand-select which judge they prefer to adjudicate their claims. At a minimum, the Court should transfer the case to any other Division within the Northern District of Texas with more than one judge.

## ARGUMENT

I. **The Court Should Transfer this Matter under 28 U.S.C. § 1404 to Avoid the Public Perception of Judge-Shopping.**

The appearance of judge-shopping that Defendants warned of in their motion to transfer has only increased with the filing of Plaintiffs' amended complaint. That amendment serves as a de facto admission that the original complaint had no connection to Amarillo or to the Northern District of Texas. *See generally* Compl., ECF No. 1. No Plaintiff named in that complaint resides in Amarillo.[2] None of the events giving rise to the claims occurred in Amarillo. Plaintiffs have made no attempt to explain, rather than paper over, the lack of connection between their choice of venue and the parties and facts of this case in the first instance. Nor do Plaintiffs contend with their pattern of filing cases in single-judge divisions, although it is their burden to do so. *See, e.g.*, *Cerda v. Almanza Villarreal Forwarding, LLC*, No. 5:22-cv-43, 2022 WL 7376188, at *1 (S.D. Tex. Oct. 3, 2022) (noting that burden shifts to Plaintiffs once Defendant presents evidence that venue is improper) (collecting cases); *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (same).

In the absence of any explanation, the public is left to draw its own conclusions as to why certain Plaintiffs—particularly the State of Texas—overwhelmingly file cases against the federal government in certain divisions with one or few judges. *See* Appendix A, Brief of Professor Stephen

---

[2] Although Defendants are no longer pressing the argument that venue is improper in light of Plaintiffs' addition of a plaintiff who they allege resides in Amarillo, Defendants do not concede that venue is proper for the State of Texas or that the State of Texas resides anywhere outside its state capitol.

2

I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022) (noting 20 such lawsuits in Texas courts in 2021 and 2022 up to September 19, 2022), https://perma.cc/XH48-4VE4 (last accessed March 14, 2023); *see also* Mot. 16 n.7 (listing additional six lawsuits, including this one, filed between September 19, 2022 and January 26, 2023 in Texas courts in single-judge venues or venues where Plaintiffs are almost always guaranteed to procure a particular judge assignment). Contrary to Plaintiffs' assertions that the public perception is predicated on mere "whispers," Opp. 3, no less than Supreme Court justices have attributed to judge-shopping plaintiffs' decisions to file in single-judge divisions with which their complaints have little to no connection. *See, e.g.*, Tr. 93:25-94:11, *United States v. Texas*, No. 22-58 (Nov. 29, 2022) (Kagan, J.) (suggesting single-judge divisions facilitate the perception that litigants can "pick [their] trial court judge"), https://perma.cc/RNS9-QF9W; *see also* Chief Justice John G. Roberts, *2021 Year-End Report on the Federal Judiciary*, https://perma.cc/TZ5A-KHUC (Dec. 31, 2021) (describing the historical practice of judge-shopping in the patent context and its impact on "public confidence" in the courts).

And in fact, the State of Texas itself has left little doubt as to its intentions in other cases: the Office of the Attorney General of Texas recently admitted that it filed a case in the Victoria Division of the Southern District of Texas expressly to ensure that it would be heard by Judge Drew Tipton, who was the only judge in that Division at the time the complaint was filed. *See* Pls.' Ex. A, ECF No. 55-1, Tr. 45:22–46:3, *State of Texas v. Department of Homeland Security*, No. 6:23-cv-00016 (Feb. 28, 2023) ("The case is being filed in Victoria, quite frankly, Your Honor, because of our experience with you."). But "[i]n federal court, the parties clearly have no right to a 'judge of their choice.'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983). This principle holds true regardless of the impartiality of the judge of choice. It is the perceived ability to select a particular judge that undermines public trust, not the perceived beliefs of the selected judge.

3

Defendants recognize that Judge Tipton recently denied the government's motion to transfer pursuant to § 1404, which the government argued was necessary to combat the public perception of judge-shopping. *See State of Texas v. Department of Homeland Security*, No. 6:23-cv-00007, 2023 WL 2457480 (S.D. Tex. March 10, 2023). The government respectfully contends that motion was incorrectly decided. The court there reasoned that "[a]ll parties agree that this Court will preside fairly and impartially," and "it is not appropriate to transfer a case that is in the proper venue due to an alleged public perception of bias that conflicts with the perception of the Parties in the case." *Id.* at *8. But "public confidence in the courts" is a critical interest. *See* Chief Justice John G. Roberts, *2021 Year-End Report on the Federal Judiciary*, https://perma.cc/TZ5A-KHUC (Dec. 31, 2021). Even recognizing the fairness and impartiality of this Court, Plaintiffs' conduct erodes that public confidence. *See, e.g.*, *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69, 72–73 (D.P.R. 2004) (explaining that "prevent[ing] judge-shopping . . . enhanc[es] public confidence in the assignment process" (quoting *United States v. Mavroules*, 798 F. Supp. 61 (D. Mass. 1992))); *Grutter v. Bollinger*, 16 F. Supp. 2d 797, 802 (E.D. Mich. 1998) (explaining that the ability to "handpick[]" a judge undermines "the public's confidence in the integrity of the judiciary").

Moreover, courts have issued rulings to combat judge-shopping in instances where there was no allegation of bias, but the plaintiffs' behavior demonstrated efforts to manipulate the system to obtain a judge of their choice. *See Vaqueria Tres Monjitas*, 341 F. Supp. 2d at 72–73 (granting motion to transfer where plaintiffs' dismissal and re-filing of action demonstrated judge-shopping); *see also United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) (denying motion for reassignment based on appearance of judge-shopping); *Steward v. Dow Corning Corp.*, No. 92-cv-1105, 1992 WL 75195, at *2 (D. Kan. Mar. 13, 1992) (denying motion to file amended complaint where plaintiffs' filing demonstrated attempts to judge-shop). Similarly here, where a state has a demonstrated pattern of suing the federal government in particular single-judge divisions—and avoiding litigating any such

4

lawsuits in the courthouse down the street from its own Attorney General's office—the interests of justice counsel in favor of transfer under § 1404 to maintain confidence in the legal system.

Instead of grappling with this real issue of perceived fairness, and without any apparent justification, Plaintiffs accuse *Defendants* of judge-shopping—which does not make any sense[3]—and argue that Defendants must "move to recuse" if they "believe this Court is biased." Opp. 9. But Defendants have no concerns about the impartiality of this Court or that of any of the judges in this District. It is Plaintiffs, such as the State of Texas, who have created public concern about fairness by repeatedly filing suit against the federal government in divisions with a single judge or a very limited number of judges with no apparent connection, let alone a "substantial" one, 28 U.S.C. § 1391(b)(2), (e)(1)(b), to the underlying claims.

Plaintiffs' only attempt to grapple with the "interests of justice analysis" is to argue that those

---

[3] Defendants have proposed that this case be transferred to the District of Columbia or any District in which one of the original Plaintiffs resides. The U.S. District Court for the District of Columbia has 21 active and/or senior judges. *See* U.S. District Court for the District of Columbia, *District Judges* (last visited March 10, 2023), https://perma.cc/N2ZB-W7YP (14 active judges); U.S. District Court for the District of Columbia, *Senior Judges* (last visited March 10, 2023), https://perma.cc/A8WZ-N558 (7 senior judges). Alternatively, the Court could transfer this case to the District of Utah (Utah, not Texas, is the lead plaintiff in this matter). Salt Lake City is the home to 10 active and/or senior judges. *See* U.S. District Court for the District of Utah, *Judges for the District of Utah* (last visited March 10, 2023), https://perma.cc/A8TV-RLSG. Austin, where Texas's state capital is located, has 4 active and/or senior judges. *See* U.S. District Court for the Western District of Texas, *Judges' Directories & Biographies* (last visited March 10, 2023), https://perma.cc/F8E9-DT2L (choose "Austin"). The Eastern District of Virginia—where the Commonwealth of Virginia's capital is located—has 6 active and/or senior judges in Richmond. *See* U.S. District Court for the Eastern District of Virginia, *Richmond* (last visited March 10, 2023), https://perma.cc/562C-QNVQ. Within the Northern District of Georgia, there are 15 active and/or senior judges who sit full-time or part-time in Atlanta, home to Plaintiff State of Georgia. *See* U.S. District Court for the Northern District of Georgia, *District Judge Directory* (last visited March 10, 2023), https://perma.cc/T7CY-56EV. Three of the original four private parties—Liberty Energy Inc., Liberty Oilfield Services LLC, and Western Energy Alliance—all appear to be based in Colorado, in which there are 15 active and/or senior district court judges who sit in Colorado's capitol of Denver. *See* U.S. District Court for the District of Colorado, *Judicial Officers* (last visited March 10, 2023), https://perma.cc/LBS6-L8FF. Thus, even without accounting for the remaining 23 original named Plaintiffs, there appear to be at least 71 judges who could be assigned this case.

interests do not encompass "forum shopping" concerns. Opp. 9. But this assertion runs directly contrary to the weight of authority cited in Defendants' motion. *See, e.g.*, Defs.' Mot. 12–13, 15–16. And Plaintiffs' only cited case does not stand for Plaintiffs' stated proposition. *See* Opp. 9 (citing *James v. Experian Info. Sols., Inc.*, No. 3:12-cv-902, 2014 WL 29041, at *5 (E.D. Va. Jan. 2, 2014)). To the contrary, the court in that case noted that any "manipulation of the assignment process" would support reassignment. *Id.* The court found that the defendant had failed to show any such "manipulation" in part because cases in that district "are assigned randomly by computer." *Id.* In divisions where cases are *not* "assigned randomly by computer," *id.*, and where a plaintiff "manipulat[es]" that assignment process, *id.*, by filing despite a lack of connection to that division—as here—reassignment may be necessary. Moreover, Plaintiffs' practice of judge-shopping is even more insidious than forum-shopping. While forum-shopping still implicates some degree of unpredictability, judge-shopping expressly violates the principle that "[i]n federal court, the parties clearly have no right to a 'judge of their choice.'" *McCuin*, 714 F.2d at 1262.

Finally, Plaintiffs argue that their judge-shopping is acceptable because the Chief Judge of the Northern District of Texas created single-judge divisions. *See* Opp. 10. But the Chief Judge presumably never envisioned that plaintiffs with little to no connection to these single-judge divisions would file complaints in those divisions in order to select a judge of their choice. It is not the existence of single-judge divisions that creates the perception of judge-shopping. It is Plaintiffs' manipulation of single-judge divisions that does so. This Court should not reward Plaintiffs for their gamesmanship—especially now that Plaintiffs have essentially admitted to filing in a Division and a District that, as an initial matter, had no connection to their complaint.

To counteract this appearance of judge-shopping, the Court should transfer this matter under 28 U.S.C. § 1404, in the interests of justice, to the District of Columbia or another District in which this case could have been properly filed in the first instance. At a minimum, the Court should grant

an intra-district transfer to any other Division within this District that is not a single-judge Division for random assignment in the normal course.

## II. The Other Public and Private Factors Also Weigh in Favor of Transfer for the Convenience of the Parties.

The public interest in systemic integrity and fairness alone requires transfer of this matter under § 1404. *See* Defs.' Mot. 11, 12–14. Plaintiffs do not point to any other public or private factor that indicates that Amarillo is a "clearly more convenient" forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Instead, those factors weigh in favor of a change in venue or are, at worst, neutral. It is unserious to argue that this matter presents an issue local to Amarillo, Texas, or that witnesses or sources of proof are more easily accessible in Amarillo. *Contra* Opp. 5, 7–8. For example, Plaintiffs assert that this division is "home to large numbers of companies and individuals engaged in the oil and gas industry." *Id.* at 7. Yet Plaintiff Western Energy Alliance, which bills itself as "[t]he Voice of the Oil & Natural Gas Industry in the West," is based in Denver, Colorado, and has no apparent connection to Amarillo. *See* Western Energy Alliance, *Home Page* (last visited March 14, 2023), https://www.westernenergyalliance.org/. Plaintiffs also claim that "[t]his district and division include large numbers of retirees and working participants in retirement plans," Opp. 7, but that is true literally everywhere. These and other, similar attempts to characterize this ERISA lawsuit as involving a local Amarillo issue are untethered from factual support and so broadly phrased as to render them meaningless. Plaintiffs have thus failed to carry their burden of establishing that venue is proper in Amarillo or the Northern District of Texas. *See Cerda*, 2022 WL 7376188, at *1 (noting that burden shifts to Plaintiffs once Defendant presents evidence that venue is improper) (collecting cases); *Am. Gen. Life Ins. Co.*, 273 F.R.D. at 396 (same). As for documentary materials, Plaintiffs concede that "[t]he parties will have ready and full access to the primary source of proof, the administrative record, no matter where this case is heard." Opp. 4. If anything, hearing this case in

Washington, D.C. or in another Division and District in a major city in which one of the original Plaintiffs resides would be more convenient to attorneys traveling for oral argument.

Plaintiffs' remaining public-interest arguments that they claim weigh favor of remaining in Amarillo—"[c]ourt congestion isn't a concern," "the Court is familiar with the governing law," and "[t]here are no conflict-of-law problems"—are not unique to this Court. *Contra* Opp. 6–8. But more importantly, these factors are substantially outweighed by the need to counteract the appearance of judge-shopping that Plaintiffs have created as a result of their ongoing practice of filing multiple cases in single-judge divisions that have no connection to the parties or to the underlying merits—belated attempts to manufacture venue notwithstanding.

## CONCLUSION

For the reasons articulated herein, the Court should transfer this action either to the District of Columbia or another District in which one of the original Plaintiffs resides. At a minimum, the Court should transfer this case to the Dallas, Fort Worth, Lubbock, Abilene, or San Angelo Division of the Northern District of Texas.

Dated: March 14, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

BRAD P. ROSENBERG
*Special Counsel*
Federal Programs Branch

*/s/ Cassandra M. Snyder*
LESLIE COOPER VIGEN
CASSANDRA M. SNYDER
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW

8

Washington, DC 20005
(202) 451-7729
cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Cassandra M. Snyder*
CASSANDRA M. SNYDER
U.S. Department of Justice