# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

STATE OF UTAH ET AL.,

*Plaintiffs*,

v.

JULIE A. SU[*] and
UNITED STATES DEPARTMENT OF LABOR,

*Defendants*.

NO. 2:23-CV-00016-Z

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

---

[*] Plaintiffs have substituted the name of the Acting Secretary of Labor as a Defendant in accordance with Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.      Plaintiffs Have Established Standing ........................................................................ 1

II.     Plaintiffs Have Shown They Are Entitled to a Preliminary Injunction ......................... 3

        A.      The 2022 Rule Violates ERISA ................................................................... 3

                1.      The 2022 Rule is Contrary to the Text of ERISA ................................ 3

                2.      The Major Questions Doctrine Applies ............................................ 6

                3.      *Chevron* Deference Does Not Save the 2022 Rule ............................... 8

        B.      The 2022 Rule Is Arbitrary and Capricious .................................................. 9

                1.      The 2022 Rule Fails to Rebut DOL's Prior Finding that Strict Regulations Are
                        Necessary to Protect Participants and Prevent Fiduciary Violations .......... 9

                2.      The Alleged Need for the 2022 Rule is Inadequate ........................... 10

                3.      The 2022 Rule's Changes Are Unreasonable, Internally Inconsistent, and Rely on
                        Impermissible Considerations ...................................................... 12

                        a.      Expanding the Tiebreaker Provision ................................... 12

                        b.      Authorizing Consideration of Participants' Preferences ......... 13

                        c.      Authorizing Nonpecuniary Factors in Proxy Voting and Other Exercises of
                                Shareholder Rights ........................................................ 13

                        d.      Removing Documentation Requirements When Fiduciaries Act for Collateral
                                Purposes ...................................................................... 14

                        e.      Eliminating Specific Restrictions on QDIAs ........................ 15

                4.      The 2022 Rule Unreasonably Removed Collateral Benefit Disclosure
                        Requirements Included in the NPRM ............................................. 15

                5.      The 2022 Rule Failed to Consider Issuing Sub-Regulatory Guidance Instead of
                        Amending Existing Regulations .................................................... 16

                6.      The 2022 Rule is the Product of Prejudgment .................................. 16

        C.      Plaintiffs Have Shown They Will Suffer Irreparable Harm Without an Injunction ... 16

        D.      An Injunction Will Not Harm Defendants or Disserve the Public Interest ............ 19

        E.      The Scope of the Injunction Should Not Be Artificially Limited ....................... 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AARP v. EEOC,*
   226 F. Supp. 3d 7 (D.D.C. 2016) .......................................................................................19

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
   458 U.S. 592 (1982) ..........................................................................................................2

*Am. Petrol. Inst. v. EPA,*
   661 F.2d 340 (5th Cir. 1981) ...........................................................................................10

*BST Holdings, L.L.C. v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) ....................................................................................... 17, 20

*Buffington v. McDonough,*
   143 S. Ct. 14 (2022) ...........................................................................................................9

*California v. Texas,*
   141 S. Ct. 2104 (2021) .......................................................................................................2

*Chamber of Com. v. Dep't of Labor,*
   885 F.3d 360 (2018) ...........................................................................................................8

*Chevron v. NRDC,*
   467 U.S. 837 (1984) ...........................................................................................................8

*Coyne & Delany Co. v. Selman,*
   98 F.3d 1457 (4th Cir. 1996) ...........................................................................................18

*Crossover Mkt. LLC v. Newell,*
   2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) ................................................................19

*Cuozzo Speed Techs., LLC v. Lee,*
   579 U.S. 2617 (2016) .........................................................................................................9

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
   710 F.3d 579 (5th Cir. 2013) ...........................................................................................20

*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ...................................................................................................3, 18

*DHS v. Regents of the Univ. of Cal.,*
   140 S. Ct. 1891 (2020) .......................................................................................................9

*El Paso County v. Trump,*
   982 F.3d 332 (5th Cir. 2020) .............................................................................................2

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009)..................................................................................9, 10

*Fed. Sav. & Loan Ins. Corp. v. Dixon,*
835 F.2d 554 (5th Cir. 1987)..........................................................................3

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014).............................................................................4, 5, 6, 7

*Friends of Animals v. Jewell,*
828 F.3d 989 (D.C. Cir. 2016).....................................................................17

*Gill v. Whitford,*
138 S. Ct. 1916 (2018)..................................................................................20

*Gonzales-Veliz v. Barr,*
938 F.3d 219 (5th Cir. 2019).........................................................................12

*Interstate Circuit v. United States,*
306 U.S. 208 (1939)......................................................................................11

*Johnson v. Allsteel, Inc.,*
259 F.3d 885 (7th Cir. 2001)..........................................................................7

*Massachusetts v. EPA,*
549 U.S. 497 (2007).....................................................................................2, 3

*Massimo Motor Sports LLC v. Shandong Odes Indus. Co.,*
2021 WL 6135455 (N.D. Tex. Dec. 28, 2021) ............................................19

*Mex. Gulf Fishing Co. v. Dep't of Com.,*
60 F.4th 956 (5th Cir. 2023) ...........................................................................9

*Michigan v. EPA,*
576 U.S. 743 (2015)........................................................................................8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,*
463 U.S. 29 (1983)........................................................................................12

*NFIB v. DOL,*
142 S. Ct. 661 (2022)..................................................................................6, 7

*NFIB v. Perez,*
2016 WL 3766121 (N.D. Tex. Jun. 27, 2016) .............................................17

*Pennsylvania v. New Jersey,*
426 U.S. 660 (1976)........................................................................................2

*PIU Mgmt., LLC v. Inflatable Zone Inc.*,
    2010 WL 681914 (S.D. Tex. Feb. 25, 2010) ............................................................. 18, 19

*S. Ute Indian Tribe v. Dep't of Interior*,
    2015 WL 3862534 (D. Colo. June 22, 2015) ................................................................. 19

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
    960 F.3d 190 (5th Cir. 2020) ........................................................................................ 1

*Sec. of Labor v. Sullivan*,
    805 F.2d 682 (7th Cir. 1986) ...................................................................................... 17

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000) ........................................................................................................ 2

*State v. Becerra*,
    577 F. Supp. 3d 527 (N.D. Tex. 2021), and DOL ...................................................... 16, 18

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ...................................................................................... 18

*Texas v. United States*,
    86 F. Supp. 3d 5918 (S.D. Tex. 2015) ........................................................................ 2, 18

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018) ......................................................................... 2

*Texas v. United States*,
    524 F. Supp. 3d 598 (S.D. Tex. 2021) ........................................................................ 17

*United States v. Fafalios*,
    817 F.3d 155 (5th Cir. 2016) ...................................................................................... 11

**Statutes**

29 U.S.C. § 1135 .............................................................................................................. 5

**Other Authorities**

29 C.F.R. § 2509.75–8 ..................................................................................................... 18

29 C.F.R. § 2550.404a-1 ................................................................................................. 4, 5

Interpretive Bulletin 2008-1,
    73 F.R. 61734 (Oct. 17, 2008) ...................................................................................... 9

Financial Factors in Selecting Plan Investments,
    85 F.R. 72846 (Nov. 13, 2020) ............................................................................ 1, 4, 5, 6, 13

Fiduciary Duties Regarding Proxy Voting and Shareholder Rights,
85 F.R. 81658 (Dec. 16, 2020) .................................................................................... 1, 4

Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights,
87 F.R. 73822 (Dec. 1, 2022) ....................................................................................... *passim*

Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118 (2016) .................................. 9

Emp. Benefits Sec. Admin., DOL, *Fact Sheet: EBSA Restores Over $1.4 Billion to Employee Benefit Plans, Participants, and Beneficiaries* (2022), https://www.dol.gov/sites/dolgov/ files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/ebsa-monetary-results-2022.pdf .................................................................................................................. 11

L. Brandeis, *Other People's Money and How the Bankers Use It* (1933) ......................................... 14

Patrick Donachie, *DOL Finalizes ESG Rule, Reversing 'Chilling Effect' of Trump-Era Version,* WealthManagement.com (Nov. 22, 2022) ......................................................................... 12

Restatement (Third) of Trusts § 78 ............................................................................... 6, 7

S. Rep. No. 92-1150 (1972) ......................................................................................... 17

## INTRODUCTION

Fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") are the highest known to law. *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020). In 2020, the U.S. Department of Labor ("DOL") promulgated critical protections under the Employee Retirement Income Security Act of 1974 ("ERISA") to deter fiduciary violations and protect participants in covered retirement plans after finding "shortcomings in the rigor of the prudence and loyalty analysis by some participating in the [environmental and social governance ("ESG")] investment marketplace." Financial Factors in Selecting Plan Investments, 85 F.R. 72846, 72847, 72850 (Nov. 13, 2020) ("2020 Investment Rule"); Fiduciary Duties Regarding Proxy Voting and Shareholder Rights, 85 F.R. 81658, 81678 (Dec. 16, 2020) ("2020 Proxy Voting Rule").

Reversing course, DOL has now subverted those protections and made it easier for fiduciaries to advance collateral agendas that are unrelated to the financial interests of participants. *See* Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 F.R. 73822 (Dec. 1, 2022) ("2022 Rule"). This turns ERISA on its head. Whereas ERISA—like the 2020 rules—imposes various obligations on fiduciaries to benefit and protect plan participants, the 2022 Rule instead *burdens participants* while giving fiduciaries more discretion to make investment decisions based on "climate change and other ESG issues" that define the Biden Administration's political agenda. 87 F.R. at 73826. Plaintiffs have met their burden for this Court to preliminarily enjoin the 2022 Rule.

## ARGUMENT

### I.   PLAINTIFFS HAVE ESTABLISHED STANDING

DOL does not contest the standing of Plaintiffs Liberty Oilfield Services LLC ("Liberty Services"), Liberty Energy Inc. ("Liberty"), Western Energy Alliance, James R. Copland, or Alex L. Fairly. *See* Mtn.10-15.[1] Because one party with standing is sufficient for judicial review of agency

---

[1] "Mtn." cites to internal page numbers of the Motion for Preliminary Injunction, Dkt. 39. "Opp." cites to internal page numbers of the Opposition in response to that Motion, Dkt. 69.

rulemaking, this Court may proceed to the merits. *E.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

In any event, Plaintiff States have also established proper legal bases for standing and submitted unrebutted supporting evidence. First, DOL is wrong that "[i]f states cannot sue the federal government as *parens patriae* to enforce constitutional rights, it makes little sense to allow them to do so to enforce statutory rights." Opp.17. States can proceed on exactly that distinction: "[A]fter *Massachusetts v. EPA*, *parens patriae* standing is prohibited where a state seeks to 'protect her citizens from the operation of federal statutes'"—such as through constitutional challenges to federal statutes—"but permitted where a state wishes 'to assert its rights under federal law'"—such as the APA. *Texas v. United States*, 328 F. Supp. 3d 662, 697 (S.D. Tex. 2018) (quoting *Massachusetts,* 549 U.S. at 520 n.17); *see also Texas v. United States*, 86 F. Supp. 3d 591, 625-28 (S.D. Tex. 2015) (collecting cases).

Second, DOL misunderstands "quasi-sovereign interest" for purposes of *parens patriae* and special-solicitude analyses. *See* Opp.18. A State pursues private interests as a nominal party when "merely litigating as a volunteer the personal claims of its citizens." *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976). Here, by contrast, Plaintiff States have adduced unrebutted evidence of a "quasi-sovereign interest in the health and well-being—both physical and economic—of [their] residents *in general*." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982) (emphasis added); *see* Mtn.17. That is precisely the sort of quasi-sovereign interest a State may vindicate consistent with Article III.[2]

DOL's reliance on *El Paso County v. Trump*, 982 F.3d 332 (5th Cir. 2020), is misplaced. *See* Opp.15. The plaintiff there did not allege the challenged federal policy would cost it specific tax revenues. Rather, it asserted generally "that the economy of the county at large will be harmed, resulting in a reduction in general tax revenues for the county." *El Paso*, 982 F.3d at 340. Plaintiff States' injury is not so generalized. They instead have provided evidence demonstrating a likely

---

[2] DOL adds that the Supreme Court didn't discuss special solicitude in *California v. Texas*, 141 S. Ct. 2104 (2021). *See* Opp.18. But the Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).

reduction in the collection of a specific type of tax revenue—state income tax—caused by a reduction in a specific type of income—retirement distributions—which will be caused by the 2022 Rule. *See* Mtn.16. DOL did nothing to rebut this evidence and cannot now label these injuries "merely speculative assertions of future lost tax revenue." Opp.15 (cleaned up); *cf. Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 566 (5th Cir. 1987) (unrebutted evidence can support a preliminary injunction).

Finally, DOL argues that the injury of several Plaintiff States arising from reduced investment in the fossil-fuel industry is speculative. *See* Opp.16. This, too, misses the mark. Plaintiff States don't merely assert hypothetical injuries, but rather submitted *evidence* that the 2022 Rule will in fact reduce such investment, which will reduce their tax revenues, decrease employment, adversely affect industries that support fossil-fuel development, and decrease overall economic activity. *See* Mtn.17. Again, DOL did nothing to rebut this evidence. *Cf. Fed. Sav. & Loan*, 835 F.2d at 566.

Plaintiff States' evidence establishes an injury at least as concrete, particularized, actual or imminent, fairly traceable to the challenged action, and redressable as in *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565-66 (2019) (downstream injuries that "all … turn[ed] on [the States'] expectation that reinstating a citizenship question will depress the census response rate," even if illogical or the result of "unlawful third-party action"), and *Massachusetts*, 549 U.S. at 521-26 (non-regulation of carbon emissions in the transportation sector over the course of a century, which would allegedly affect Massachusetts's coastline in unknowable amounts and places). Plaintiff States thus have standing.

## II.   PLAINTIFFS HAVE SHOWN THEY ARE ENTITLED TO A PRELIMINARY INJUNCTION

### A.   The 2022 Rule Violates ERISA

#### 1.   The 2022 Rule is Contrary to the Text of ERISA

In ERISA, Congress expressly restricted fiduciaries to protect the retirement savings of plan participants, providing that the "exclusive purpose" for which fiduciaries may act is to pursue financial "benefits." In contrast, the 2022 Rule states fiduciaries may act for "collateral benefits other than

investment returns," 87 F.R. at 73827, 73885 (new 29 C.F.R.§ 2550.404a-1(c)(2)), and deletes the 2020 Proxy Voting Rule's prohibition on exercising proxy rights to "promote non-pecuniary benefits or goals unrelated to the financial interests of the plan participants and beneficiaries," 85 F.R. at 81663; *compare* 29 C.F.R. § 2550.404a-1(e)(2)(ii)(C) (2021), *with* 87 F.R. at 73885 (new 29 C.F.R. § 2550.404a-1(d)(2)(ii)(C)). These changes present a direct and fundamental conflict with ERISA. *See* Mtn.18.

DOL doesn't dispute the obvious meanings of "benefits," "exclusive purpose," and "solely." *Compare* Mtn.19-22, *with* Opp.22-23. Even *amicus* Iwry admits that "the core legal standards" "are tightly constrained by the plain language of ERISA, as interpreted by [*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014)]." Dkt. 77-1 ("AB"), at 4. But DOL dismisses the 2022 Rule's conflict with this plain language. *See* Mtn.22-24. First, nonpecuniary tiebreakers are by definition not based on financial benefits and thus violate the strict "sole benefit" rule under ERISA. Moreover, even if some limited tiebreaker is consistent with ERISA, the 2022 Rule is not so limited and fails to require fiduciaries to select the best available investments for risk-adjusted return whenever possible. This is clear in comparison to the 2020 Investment Rule, which required fiduciaries to be "unable to distinguish on the basis of pecuniary factors alone" before they could use a tiebreaker. 29 C.F.R. § 2550.404a-1(c)(2) (2021). Relaxing that strict standard was the purpose of the 2022 Rule. *See* 87 F.R. at 73835 (describing tiebreaker as "unrealistically difficult and prohibitively stringent" and "rare and unreasonably difficult to identify"); *id.* at 73836-37 (standard is "impractical"). Moreover, a relaxed standard increases the likelihood of fiduciaries even inadvertently violating their duties and creates a slippery slope that leads to false equivalence and abuse, both of which will be difficult to police, especially with the elimination of disclosure requirements discussed below. DOL has previously recognized the risk of loose tiebreaker standards. *See infra* Part II.B.1.

Second, the 2022 Rule improperly deletes the prohibition in the 2020 Proxy Voting Rule on exercising shareholder rights to "promote non-pecuniary benefits or goals unrelated to those financial

interests of the plan participants and beneficiaries." *Compare* 29 C.F.R. § 2550.404a-1(e)(2)(ii)(C) (2021), *with* 87 F.R. at 73885 (new 29 C.F.R. § 2550.404a-1(d)(2)(ii)(C)). This deletion eliminated a clear regulatory command that follows directly from ERISA's text and *Dudenhoeffer*.

DOL responds that 29 U.S.C. § 1135 provides authority to "'prescribe such regulations as [the Secretary of Labor] finds necessary or appropriate to carry out the [relevant] provisions' of ERISA." Opp.22 (quoting 29 U.S.C. § 1135). But this language does not confer authority to contravene ERISA or the Supreme Court's interpretation of "benefits," "exclusive purpose," and "solely" in that statute. Moreover, nothing in § 1135's text—which lists examples like "defin[ing] accounting, technical[,] and trade terms"—even suggests Congress delegated broad substantive authority, let alone to modify the strict duties imposed on trustees under sections 403 and 404. *See* Mtn.26. DOL never grapples with this aspect of § 1135. Nor can this language bear the weight DOL ascribes to it, consistent with the major questions doctrine. *See infra* Part II.A.2.

Third, DOL attempts to save the 2022 Rule by rewriting the regulation in its brief and spinning the 2020 Investment Rule and pre-2020 guidance as setting forth single, broad tiebreaker. DOL claims the 2022 Rule merely fills a gap where "a fiduciary is presented with two investment courses of action that are economically equivalent." Opp.23. But the 2022 Rule's text does not say "economically equivalent." Instead, it uses the much looser requirement that the fiduciary "prudently concludes that competing investments … equally serve the financial interests of the plan over the appropriate time horizon." 87 F.R. at 73885 (new 29 C.F.R. § 2550.404a-1(c)(2)). This insulates the fiduciary three-fold: introducing a prudence defense specific to the tiebreaker for collateral benefits, using vague language of "equally serv[ing] the financial interests of the plan," and adopting a vague "appropriate time horizon." That is a far cry from "economically equivalent," which is much closer to the 2020 rule— "unable to distinguish on the basis of pecuniary factors alone." 29 C.F.R. § 2550.404a-1(c)(2) (2021). Recasting the 2022 Rule in stricter terms implicitly concedes DOL unlawfully loosened that standard.

DOL's analysis of past tiebreakers is equally faulty. While DOL tries its best to minimize *Dudenhoeffer*, *see* Opp.25, the critical fact is that most of the history DOL relies on is predates that decision or, in the case of the 2015 and 2016 guidance, fails to acknowledge that case entirely. The *only* tiebreaker that actually analyzes and applies *Dudenhoeffer* is the 2020 Investment Rule, which was significantly stricter than any prior sub-regulatory guidance. History, therefore, supports Plaintiffs.

Fourth, DOL claims that the 2022 Rule's tiebreaker is consistent with common law, citing comment f of Restatement (Third) of Trusts § 78. *See* Opp.25. The portion of the comment cited discusses DOL's Interpretive Bulletin 94-1 and "social investing," but provides no independent analysis and notes the proposition is the subject of "considerable disagreement." Restatement (Third) of Trusts § 78 cmt. f. DOL also never attempts to reconcile acceptance of "social investing" with *Dudenhoeffer*, which specifically rejected any presumption of prudence involving "nonpecuniary benefits." 573 U.S. at 421. Instead, *Dudenhoeffer* correctly places the focus of ERISA on financial returns, and nothing in comment f overcomes this. *Id.* at 422-23 (rejecting argument that common law background principles could "excuse trustees from their duties under ERISA" (citation omitted)).

### 2.   The Major Questions Doctrine Applies

Plaintiffs have shown that the major questions doctrine, which requires clear authorization from Congress for rules of "vast economic and political significance," prohibits DOL from authorizing or allowing ERISA fiduciaries to consider nonpecuniary factors. *NFIB v. DOL*, 142 S. Ct. 661, 665 (2022) (citation omitted); *see* Mtn.25-26. DOL's responses are either inapposite or incorrect. First, DOL reasons it has endorsed tiebreakers for decades, so tiebreaker rules are not a major question. Opp.26. But the actual history does not support that, because DOL never reduced the tiebreaker principle to a substantive rule until 2020, and then only in its narrowest form. DOL has also been far from consistent in its formulation of tiebreakers, which were more often aimed at stating ESG could be used as a financial factor than for collateral benefits. *See* Mtn.24. In any event, past

practice is only one indicator of a major question—it does nothing to change the primary considerations of "vast economic and political significance." *NFIB*, 142 S. Ct. at 665 (citation omitted).

Second, and relatedly, DOL argues that since "the *economic* effects of ESG factors were appropriate considerations in ERISA fiduciaries' evaluation of investments," authorizing fiduciaries to consider ESG for *collateral* benefits is not a major question. Opp.27 (emphases added). That doesn't change the economic and political significance of the action. And, in any event, these are two very different things given ERISA's command to focus on "*financial* benefits (such as retirement income)," which "does not cover nonpecuniary benefits." *Dudenhoeffer*, 573 U.S. at 421.

Third, DOL argues that "the Rule imposes no new mandatory action on anyone; it instead provides guidelines that clarify ERISA fiduciaries' preexisting duties." Opp.27. DOL cites no authority for the proposition that mandatory requirements are a prerequisite for major questions. It also elides that the 2022 Rule absolutely imposes a new burden on *participants* by increasing their costs to protect their retirement savings. *See, e.g.*, Restatement (Third) of Trusts § 78 cmt. b ("[T]he policy of the trust law is to prefer (as a matter of default law) to remove altogether the occasions of temptation rather than to monitor fiduciary behavior and attempt to uncover and punish abuses when a trustee has actually succumbed to temptation…."); *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 888 (7th Cir. 2001) (increased fiduciary discretion "renders 'less solid' the participant's benefits by shifting the risk to the participant," resulting in "an injury-in-fact" (citation omitted)). DOL's argument lays bare that the focus of the 2022 Rule is allowing fiduciaries to use participants' savings to pursue favored ESG goals. Congress did not authorize this.

Finally, as DOL notes, Congress passed a joint resolution on March 1, 2023, disapproving the 2022 Rule under the Congressional Review Act such that it would have no force or effect. Opp.14 n.5 (citing H.J. Res. 30). President Biden had to veto that resolution to keep the 2022 Rule in effect. A joint resolution from Congress is as strong a signal one could hope to find that the rulemaking is—at

the very least—of vast political significance, requiring review under the major questions doctrine. The requisite clear statement is missing here.

### 3. *Chevron* Deference Does Not Save the 2022 Rule

DOL improperly invokes deference under the two-step framework in *Chevron v. NRDC*, 467 U.S. 837 (1984). The 2022 Rule would fail at *Chevron* step 1 because the plain text of ERISA forecloses consideration of non-pecuniary factors, including for tiebreakers. *See supra* Part II.A.1 & 2. DOL nonetheless contends that "ERISA is silent as to what standard fiduciaries should use to guide their investment decisions where two investment courses of action are financially equivalent." Opp.26. But DOL cannot narrow the question to avoid the overarching limitations Congress imposed. Even if ERISA doesn't say what a fiduciary must do when investments are economically indistinguishable, it definitely says what the fiduciary cannot do—choose on the basis of collateral factors. Further, DOL's use of "financially equivalent" in its brief, like its use of "economically equivalent," is not what the 2022 Rule says, *see supra* Part II.A.1, so the argument is inapposite because DOL is not attempting to justify the tiebreaker it imposed, but instead some potential rewrite that is narrower.

The 2022 Rule would likewise fail at *Chevron* step 2 because the tiebreaker in the 2022 Rule is not a reasonable reading of ERISA. *See Michigan v. EPA*, 576 U.S. 743, 751 (2015). Because Congress provided clear guidance that fiduciaries must act for the "sole" and "exclusive purpose" of obtaining financial benefits for plan participants, the only possible justification for a tiebreaker is when investments are truly "economically indistinguishable"—the standard under the 2020 rules—and other financial considerations (such as liquidity constraints and transaction cots) restrict an investor's ability to diversify. Mtn.24. DOL provides no response to the argument that the only possible justification for a tiebreaker rule is when costs prevent diversification and instead tries to exploit a rare and theoretical scenario to pursue a much broader rule, thereby "rewrit[ing] the law that is the sole source of its authority. This it cannot do." *Chamber of Com. v. Dep't of Labor*, 885 F.3d 360, 373 (2018).

8

Finally, *Chevron* unconstitutionally delegates statutory interpretation to federal agencies and should be limited or overruled. *See, e.g.*, *Buffington v. McDonough*, 143 S. Ct. 14, 16-22 (2022) (Gorsuch, J., dissenting from denial of certiorari); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286-87 (2016) (Thomas, J., concurring); *Mex. Gulf Fishing Co. v. Dep't of Com.*, 60 F.4th 956, 963 n.3 (5th Cir. 2023); Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2150, 2153-54 (2016).

### B.  The 2022 Rule Is Arbitrary and Capricious

#### 1.  The 2022 Rule Fails to Rebut DOL's Prior Finding that Strict Regulations Are Necessary to Protect Participants and Prevent Fiduciary Violations

The 2022 Rule failed to rebut DOL's prior finding that, notwithstanding the general duties of prudence and loyalty, strict regulations are necessary to protect participants from "shortcomings in the rigor of the prudence and loyalty analysis by some participating in the ESG investment marketplace." Mtn.27 (quoting 85 F.R. at 72847, 72850; 85 F.R. at 81678); *see also* Interpretive Bulletin 2008-1, 73 F.R. 61734, 61735 (Oct. 17, 2008) ("A less rigid rule would allow fiduciaries to act on the basis of factors outside the economic interest of the plan."). This shortcoming renders the entire rulemaking arbitrary and capricious.

DOL needed to consider the 2022 Rule's effect on this danger to participants—a danger well "within the ambit of the existing [policy]" and, indeed, its purpose. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020). Because DOL was departing from its prior factual findings, it was also required to provide "a more detailed justification" for its decision. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The 2022 Rule did not call its prior findings into question or dispute that portions of the 2020 rule it rescinded were helpful and effective in protecting against harm to plan participants. Instead, the 2022 Rule cites only to the general prohibition on "subordination of participants' financial benefits under the plan to ESG or any other goal." Mtn.28 (citing 87 F.R. at 73853). But DOL had already concluded that merely reciting this duty was insufficient.

DOL claims that the 2022 Rule "describes the need for its clarifications in light of the flaws

of the 2020 Rules." Opp.29. But those alleged flaws are all about insufficient pursuit of ESG investing, with *nothing* about protecting participants from "shortcomings in the rigor of the prudence and loyalty analysis by some participating in the ESG investment marketplace." 85 F.R. at 72847, 72850; 85 F.R. at 81678. In fact, DOL doesn't cite any portion of the 2022 Rule that discusses or balances the 2020 findings regarding harm or danger to participants against the need for clarification and supposed chilling effect. DOL also points to the "contradict[ion]" with the prior policy as the "more detailed justification" for contradicting it—turning *Fox* on its head. 556 U.S. at 515. The 2022 Rule is thus arbitrary and capricious in its entirety.

## 2.   The Alleged Need for the 2022 Rule is Inadequate

Plaintiffs have also explained that while DOL claims the 2020 rules created a "chill" or "confusion" about consideration of ESG factors under ERISA, the 2022 Rule never identified who specifically was confused, what the source of confusion was, or that any such confusion or negative perceptions reduced *financial* returns for participants. Mtn.28. The 2020 rules were clear that ESG factors, just like any other factors, must be considered insofar (and only insofar) as they affect the financial interests of participants. Mtn.29.

DOL responds that the 2022 Rule "expressly describes the potential for financial harm to plan participants and beneficiaries caused by the confusion and deterrent effect that the 2020 Rules created for fiduciaries." Opp.30. However, DOL never rebuts the core point that the 2022 Rule lacks *any* support for its purported justification. Ipse dixit is no basis for rulemaking. *Am. Petrol. Inst. v. EPA*, 661 F.2d 340, 349 (5th Cir. 1981).

Moreover, the argument that fiduciaries were foregoing financial benefits because of the 2020 rules strains credulity and is belied by the fact that DOL cannot point to even a single instance of that happening. It also ignores substantial language in the 2020 rules stating fiduciaries must act for pecuniary factors and *no* language prohibiting consideration of *financial* risk factors, including ESG.

Instead, the rule broadly permits and requires consideration of all types of financial factors. If DOL really had concrete evidence on which to act, it would have cited it. *See Interstate Circuit v. United States*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can only lead to the conclusion that the strong would have been adverse. Silence then becomes evidence of the most convincing character.").

Plaintiffs also pointed out a second, related problem with the 2022 Rule—DOL's conclusion that the mere deletion from the 2022 Rule of certain discussion in the associated notice of proposed rulemaking ("NPRM") was sufficient to clear up any pro-ESG bias, while at the same time concluding that the 2020 rules, which never mention ESG in the regulatory text, somehow created the opposite anti-ESG bias that could be cured only by an amendment to the regulation. Mtn.29. This is fundamentally inconsistent and renders the 2022 rule arbitrary and capricious. *Id.* (collecting cases). In response, DOL states "[t]he reference or lack of reference to ESG factors is not determinative of a rule's overall bias against or in favor of ESG factors. Rather, the Rule must be read in context and as a whole. And in any event, the Rule specifically explains these choices." Opp.30. But DOL's argument that the actual text of the rule is "not determinative" of any chilling effect offers an illogical standard inconsistent with the APA. The 2020 Rule is a regulation, and courts interpret regulations beginning with the text. *See, e.g., United States v. Fafalios*, 817 F.3d 155, 159 (5th Cir. 2016). DOL never explains why fiduciaries are chilled by something that is not in the text of the C.F.R. and would not be relied on by courts to contradict plain regulatory language.[3]

---

[3] *Amicus* recognizes that the 2020 rules "did not" "prohibit[] consideration of ESG factors," AB.5 n.11, and spends 17 pages arguing that the 2022 Rule is no different than the 2020 rules it replaced: "the substantive investment standards … are essentially the same," AB.3, "little substantive difference," AB.4; the rules are the "same" and "not meaningfully different," AB.11-12; "little meaningful difference," AB 15. That would be news to the DOL which proclaimed the "important change[s]" incorporated in the 2022 Rule, including the explicit addition of ESG factors. Emp.

### 3. The 2022 Rule's Changes Are Unreasonable, Internally Inconsistent, and Rely on Impermissible Considerations

The 2022 Rule is further arbitrary and capricious because many of its provisions are unreasonable, internally inconsistent, fail to consider relevant factors, and "rel[y] on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). DOL's response does not rebut the conclusion that the 2022 Rule's central purpose and effect is to overturn important protections for participants to free fiduciaries to pursue (overtly or covertly) the current administration's preferred political goals. On the contrary, DOL's post hoc rationalizations serve only to underscore the 2022 Rule's unlawfulness.

### a. Expanding the Tiebreaker Provision

DOL does not dispute that the tiebreaker under the 2020 rules helped protect beneficiaries from fiduciary violations. *See* Opp.30-31. Instead, DOL asserts that it caused "confusion" among

---

Benefits Sec. Admin., DOL, Fact Sheet: *Final Rule on Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights* (Nov. 22, 2022). Indeed, former Labor Secretary Walsh and one of his top deputies emphasized that the 2022 Rule removed "the prior administration's restrictions" and "needless barriers" to considering ESG factors. Patrick Donachie, *DOL Finalizes ESG Rule, Reversing 'Chilling Effect' of Trump-Era Version*, WealthManagement.com (Nov. 22, 2022).

*Amicus*'s argument also begs the question: If the 2022 Rule is substantively no different than the rules it replaces, then what was the need for a new rule? Why not simply keep the 2020 rules? The answer cannot be increased clarity because *amicus* independently concludes the 2022 Rule and 2020 rules are no different, then admits the 2022 Rule and its NPRM sow as much or more confusion. AB.5 n.11. If the 2022 Rule is not substantively different from the prior rules, then the correct solution is to return to the 2020 rules which also included key protections in the form of disclosure and accountability provisions and QDIA restrictions abandoned by the 2022 Rule.

*Amicus* continues that "'removing the source of confusion' is a 'good reason' for an agency to clarify regulatory requirements." AB.6 (quoting *Gonzales-Veliz v. Barr*, 938 F.3d 219, 235 (5th Cir. 2019)). But *Gonzalez-Veliz* does not support DOL's justification here or the principle that *any* claimed confusion whatsoever satisfies *Fox*. In *Gonzalez-Veliz*, the "the Attorney General overruled an erroneous BIA decision to be more faithful to the statutory text." 938 F.3d at 235. The 2020 rules were "a much more faithful interpretation" of ERISA.

Moreover, *Amicus* cannot point to any specific instances where a fiduciary accepted lower returns or higher risk due to purported "confusion." AB.5-6. *Amicus* instead says the purpose was to remove "any doubt." *Id.* Removing "any doubt" does not count as a "good reason" for gutting protections for participants when DOL failed to rebut or reconsider its prior factual finding that there were "shortcomings" in the rigor of some in the ESG investment marketplace.

fiduciaries. *Id.* Thus, like the other changes in the 2022 Rule, the deletion of the 2020 rule's more stringent tiebreaker provision was not premised on the need to protect plan participants, but rather on the purported need to enable fiduciaries to advance collateral objectives that do not further the participants' financial interests. But as Plaintiffs have demonstrated, Mtn.31, the expanded tiebreaker rule does harm participants from a financial perspective, and a fiduciary confronted with two equally beneficial investment options typically advances the participants' financial interests if he diversifies by investing in both options. Thus, even if collateral considerations were permissible under ERISA in narrow tiebreaker situations, the 2022 Rule fails to give any permissible reason for broadening that exception in the way that it does.

### b. Authorizing Consideration of Participants' Preferences

The 2022 Rule improperly allows fiduciaries to hide behind vague notions of "participant preferences" to justify consideration of non-pecuniary factors like climate change. Mtn.31-32. DOL does not deny this objective of the 2022 Rule's participant-preference provisions. Opp.31-32. Choosing investments to encourage increased plan participation is not authorized by ERISA. Nor does DOL provide any rational justification for the total absence of any objective methodology in measuring "participant preferences" for certain investments. *See* Opp.32. That is by design: The absence of any objective criteria is yet another mechanism that helps fiduciaries to advance collateral objectives under the cover of subjective determinations that are incapable of rational review.[4]

### c. Authorizing Nonpecuniary Factors in Proxy Voting and Other Exercises of Shareholder Rights

Along the same lines, the 2022 Rule deleted an earlier provision that barred fiduciaries from exercising shareholder rights for purposes "unrelated to [the] financial interests of … participants and

---

[4] DOL argues the preamble to the 2020 Investment Rule similarly stated that rule did not preclude fiduciaries "from looking into" investments because of participant demand. Opp.32 (quoting 85 F.R. at 72864). That is a far cry from selecting them, as the next sentence of the preamble made clear.

beneficiaries." *See* Mtn.32 (29 C.F.R. § 2550.404a-1(c)(2)(ii)(C) (2021)). In support of this change, DOL asserted that it did not want "to impose … additional duties" on fiduciaries and claimed the provision "serve[d] no independent function." 87 F.R. at 73848; *see* Opp.32-33. Once again, DOL's explanation is based on the arbitrary desire to benefit fiduciaries' pursuit of collateral goals at the expense of participants. Mtn.28, 32-33. The explanation is also internally inconsistent. If the deleted provision serves "no independent function," then it could not impose any "additional duties." On the other hand, if the provision imposes additional duties, then it necessarily serves some independent function. While some administrative duties (such as keeping a detailed log of weather patterns present when voting shares) clearly would impose burdens without serving any legitimate purpose, simply and clearly stating that a fiduciary cannot act for impermissible purposes does not match that description. Instead, DOL eliminated the requirement for the opposite reason—it was apparently too effective at ensuring fiduciaries had a permissible reason for their actions and was hampering non-pecuniary goals.

#### d. Removing Documentation Requirements When Fiduciaries Act for Collateral Purposes

To protect participants, the 2020 rules further required fiduciaries to document certain activities—such as use of the tiebreaker rule and proxy voting—that present a higher risk of fiduciary violations. If a fiduciary has a legitimate reason to act, it is hardly a burden to document that action. After all, "[s]unlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, *Other People's Money and How the Bankers Use It* 62 (1933).

DOL says it eliminated these documentation requirements because they were burdensome for fiduciaries. Opp.33-35.[5] True to form, the 2022 Rule transferred the fiduciaries' "burden" to simply document their actions over to participants, who must now spend extra resources to monitor their investments and ensure compliance with fiduciary duties. The 2022 Rule makes no mention of these

---

[5] *Amicus* contends that fiduciaries will document important decisions anyway, so this provision was unnecessary. AB.7, 14. But if that is the case, DOL's burden argument vanishes.

additional costs on participants, nor does it offer any explanation for why participants (rather than fiduciaries) should bear the costs of ensuring compliance with ERISA. *See* Mtn.34.

### e. Eliminating Specific Restrictions on QDIAs

A similar inconsistency invalidates DOL's explanation for removing the 2020 rules' specific restrictions on qualified default investment alternatives ("QDIAs"). DOL admits that QDIAs "warrant special treatment," and yet DOL has eliminated (and has not replaced) the special treatment that was afforded under the 2020 rules. To remedy this inconsistency, DOL now asserts that the separate QDIA regulation constitutes the "special treatment" needed. Opp.35. But that QDIA regulation was the pre-existing backdrop against which DOL found that "special treatment" for QDIAs was necessary. *See* Mtn.34-35.

### 4. The 2022 Rule Unreasonably Removed Collateral Benefit Disclosure Requirements Included in the NPRM

The 2022 Rule eliminated a common-sense provision that would have required fiduciaries to disclose whenever they considered collateral benefits in the context of participant-driven individual account plans. But neither the 2022 Rule nor DOL's response here provides any clear explanation for why this provision—which would have helped to protect participants from fiduciary violations—was removed. Rather, the 2022 Rule merely listed concerns from commenters—both for and against the disclosure provision—along with unspecified reasons "similar" to other considerations in the rulemaking, and then summarily concluded that the provision would not be adopted. Only now does DOL identify specific comments, but it points to nonsensical ones, like "consider[ing] the disclosure requirement unnecessary because it had no economic significance." Opp.36-37. If investment considerations have no economic significance and are immaterial to participants, DOL provides no clue why fiduciaries should consider those criteria. Mtn.35-36. And DOL still makes no attempt to explain how it weighed these considerations, *id.*, but instead follows a pattern of stripping disclosure requirements from the 2022 Rule that would allow oversight of fiduciaries.

15

### 5.  The 2022 Rule Failed to Consider Issuing Sub-Regulatory Guidance Instead of Amending Existing Regulations

In a similar vein, DOL does not deny that the 2022 Rule failed to address or consider the reasonable alternative of sub-regulatory guidance. *See* Opp.37-38. Instead, DOL asserts that such guidance was "obviously untenable" because it would fail to clear up the "confusion" that fiduciaries supposedly encountered under the 2020 rules. *Id.* If this answer was so "obvious," DOL would have addressed it in the 2022 Rule. Failure to do so renders the 2022 Rule arbitrary and capricious. *See* Mtn.36-37. This fiduciary-centered analysis also ignores that the alleged chill—which has no basis in the regulatory text—cannot justify a rule that consistently allows fiduciaries to carry out collateral objectives behind a cloak of obscurity. *See supra* Part II.B.2.

### 6.  The 2022 Rule is the Product of Prejudgment

Finally, regarding the issue of unlawful "prejudgment," DOL does not deny that it had already decided to rescind the 2020 rules before reviewing public comments. *See* Opp.38-39. Instead, DOL cites inapposite cases addressing an "open-mindedness test" for which Plaintiffs are not advocating. DOL has not attempted to rebut the objective evidence unequivocally demonstrating that DOL had already decided its course of action before public comments began. Nor does DOL address Plaintiffs' argument that DOL's prejudgment violates the Due Process Clause. *See* Mtn.37.

### C.  Plaintiffs Have Shown They Will Suffer Irreparable Harm Without an Injunction

Standing and irreparable harm "are largely overlapping," *State v. Becerra*, 577 F. Supp. 3d 527, 554 (N.D. Tex. 2021), and DOL does not contest that Liberty Services, Liberty, Western Energy Alliance, Copland, and Fairly allege imminent, concrete injuries that are fairly traceable to the challenged action and redressable by a favorable ruling, *see supra* Part I; Mtn.10; Dkt. 48, at 2-3. Moreover, DOL offers no rebuttal evidence to the declarations offered by Plaintiffs, which substantiate that the 2022 Rule will cost them money. *See* Mtn.11-15, 39; Dkt. 48-1 at 5. The only question left is whether these injuries are likely to occur "in the absence of preliminary relief" and

16

"cannot be undone through monetary remedies." *Texas v. United States*, 524 F. Supp. 3d 598, 662-63 (S.D. Tex. 2021) (citations omitted). Because the costs described in the declarations directly flow from the changes in the 2022 Rule and are not recoverable, irreparable harm is straightforward here. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.").

Closely related to this, Plaintiffs suffer informational injury from the 2022 Rule's recission of disclosure requirements, Mtn.39-40. The loss of information is itself a well-recognized form of injury in this context. *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). "ERISA was enacted by Congress in 1974 after determining that the then present system of regulation was ineffective in monitoring and preventing fraud and other pension fund abuses." *Sec. of Labor v. Sullivan*, 805 F.2d 682, 689 (7th Cir. 1986) (en banc). Prior law was "'weak in its limited disclosure requirements and wholly lacking in substantive fiduciary standards. Its chief procedural weakness can be found in its reliance upon the initiative of the individual employee to police the management of his plan.'" *Id.* (quoting S. Rep. No. 92-1150, at 5 (1972)). The removal of disclosure requirements from the 2020 rules deprives plan participants of useful information and is an irreparable harm that "cannot be remedied by an award of economic damages." *NFIB v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *39 (N.D. Tex. Jun. 27, 2016). In that case, another division of this court enjoined a DOL rule that, like the 2022 Rule, reduced employers' access to advice and information on union organizing. The court held that the change caused irreparable harm. *Id.*

The arguments DOL does make are flawed. First, DOL contends that because increased monitoring costs are not mandated by the 2022 Rule, they're self-inflicted and not irreparable. Opp.20 & n.9. But these harms are not "self-inflicted." Courts and DOL have recognized that plan sponsors and fiduciaries have a responsibility to monitor "the performance of trustees and other fiduciaries … to ensure their performance has been in compliance with the terms of the plan and statutory

standards." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-66 (4th Cir. 1996) (quoting 29 C.F.R. § 2509.75–8, at FR–17). Moreover, costs that logically flow from a rule change are sufficient even when not mandated directly. *See, e.g.*, *Becerra*, 577 F. Supp. 3d at 555-56; *Texas v. United States*, 86 F. Supp. 3d 591, 617 (S.D. Tex. 2015), *aff'd,* 809 F.3d 134.

Second, DOL continues that irreparable harm here relies on the independent acts of third-party fiduciaries. But in *Dep't of Commerce*, the Court was "satisfied" with a "showing that third parties will likely react in predictable ways to [the challenged rule], even if they do so unlawfully." 139 S. Ct. at 2566. The same is true here, particularly given DOL's prior, unrebutted finding of "shortcomings" in the rigor of some, *see supra* Part II.B.1, and Plaintiffs' unrebutted declarations, including that the 2022 Rule will reduce access to capital, *see* Mtn.12; *supra* Part I. Moreover, costs related to reasonable monitoring for unlawful activity occur whether or not the unlawful activity occurs.

Third, DOL's argument that the 2022 Rule sufficiently protects participants conflates irreparable injury and the merits, and is again foreclosed by *Dep't of Commerce*, which recognized injury from even illogical or "unlawful" third-party actions. 139 S. Ct. at 2566.

Fourth, Plaintiff States submitted substantial, unrebutted evidence of harm to their tax revenues, economies, and citizens' jobs that are a natural result of the 2022 Rule. *See* Mtn.16-18, 40. These economic harms are not recoverable from the federal government and thus irreparable. *See, e.g.*, *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). DOL offers nothing new in response, instead referencing its standing arguments, Opp.22, which fail for the same reasons discussed above, *see supra* Part I. Critically, as with standing, DOL does nothing to rebut evidence submitted by Plaintiff States of irreparable harm.

Finally, DOL stretches in accusing Plaintiffs of delay. *See* Opp.19-20. While "a substantial period of delay … militates against the issuance of a preliminary injunction," *PIU Mgmt., LLC v. Inflatable Zone Inc.*, 2010 WL 681914, at *5 (S.D. Tex. Feb. 25, 2010) (cleaned up), there was no

substantial delay here, and there is good explanation for any delay at all. The 236-page release of the 2022 Rule was twice as long as the 109-page release of the NPRM. Plaintiffs diligently assessed the lengthy release, then coordinated with over two dozen States plus private parties. Even with these burdens, Plaintiffs filed their complaint prior to the 2022 Rule's effective date, followed by the present motion—supported by two expert and multiple lay affidavits—less than four weeks later. DOL's suggestion that Plaintiffs should have predicted the 2022 Rule from the NPRM suggests parties should assume an agency has prejudged the rulemaking and will not consider comments. *See infra* Part II.B.6.

In *PIU*, the court also held that a back-and-forth between the parties was "a good explanation" for delay. 2010 WL 681914, at *6-7. Here, Plaintiffs not only filed their complaint less than two months after the release of a lengthy final rule, they were prepared to file the motion for preliminary injunction less than two weeks later. Like *PIU*, the delay in filing was due in part to conferring with defense counsel and considering proposals to manage the litigation.[6] The cases DOL cites involve periods far longer and less explicable, and thus don't support a finding of delay, much less unexplained delay.[7]

### D. An Injunction Will Not Harm Defendants or Disserve the Public Interest

As Plaintiffs have explained, the 2022 Rule is an unlawful attempt to invert ERISA's statutory protections by making it easier for fiduciaries to consider and promote ESG investing. Because DOL

---

[6] On January 30, counsel for the State of Texas emailed a contact at the U.S. Attorney's Office to inquire who would be representing Defendants and to let the government know Plaintiffs intended to file the motion prior to February 10. The contact replied the same day copying DOL's counsel and accepting service. On February 6, DOL's counsel emailed Plaintiffs' counsel to ask Plaintiffs' position on a motion to transfer venue. They also proposed a conference call to discuss the motion and logistics related to the litigation. That meeting took place on February 9, during which Defendants proposed cross-motions for summary judgement and provided information regarding disclosure of the administrative record. After considering the proposal, Plaintiffs confirmed on February 16 that they would seek a preliminary injunction and filed two business days later.

[7] *See Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, 2021 WL 6135455 (N.D. Tex. Dec. 28, 2021) (2 months to file complaint plus 3 months to file for preliminary injunction); *Crossover Mkt. LLC v. Newell*, 2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) (5 months to file for preliminary injunction after complaint); *AARP v. EEOC*, 226 F. Supp. 3d 7 (D.D.C. 2016) (6 months to file complaint with no explanation); *see also S. Ute Indian Tribe v. Dep't of Interior*, 2015 WL 3862534 (D. Colo. June 22, 2015) (*not* denying preliminary injunction but considering possible consolidation with trial on the merits).

has no legitimate interest in enforcing the unlawful 2022 Rule, an injunction will not result in any harm to DOL or to the public. *See BST*, 17 F.4th at 618. On the other hand, the public will suffer irreparable harm if the 2022 Rule is allowed to displace ERISA's fundamental objectives and undermine the proper functioning, management, oversight, and growth of retirement plans nationwide. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). DOL is wrong that an injunction will discourage fiduciaries from considering "*all* potentially financially material factors when selecting investments," Opp.39, because the 2020 rules clearly stated that fiduciaries must consider all relevant financial factors and in no way precluded ESG. Far from "reaffirm[ing] standards that ERISA fiduciaries have relied upon for years," *id.*, upholding the 2022 Rule would enable the subversion of ERISA's primary objectives that have existed since that statute was enacted.

### E.  The Scope of the Injunction Should Not Be Artificially Limited

DOL argues that any injunctive relief should be "narrowly" tailored to invalidate only portions of the 2022 Rule. Opp.48. This ignores that the underlying justification for the 2022 Rule is arbitrary and capricious, so the entire rule should be enjoined. Moreover, Plaintiffs allege a competitive disadvantage and lost access to capital because of the 2022 Rule, *see supra* Parts I, II.C, which would require enjoining the rule in its entirety "to redress the … particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). A "narrowly" tailored injunction is also unworkable in this case because investments are made on a nationwide basis, and it is infeasible for fiduciaries to have conflicting sets of duties for different clients or in different states.

DOL adds that the Court should deny injunctive relief to Plaintiff States because they lack standing, Opp.48, but that is wrong, *see* Mtn.16-18, *supra* Part I. At a minimum, the injunction should apply to the private Plaintiffs as well as the funds invested by residents of the Plaintiff States.

### CONCLUSION

For the foregoing reasons, this Court should grant a preliminary injunction.

Dated April 11, 2023.

/s/ Leif A. Olson
KEN PAXTON
Attorney General
AARON REITZ
Texas Bar No. 24105704
Deputy Attorney General for Legal Strategy
LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801

Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548
aaron.reitz@oag.texas.gov
leif.olson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

/s/ Jonathan Berry
C. BOYDEN GRAY
JONATHAN BERRY
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JARED M. KELSON

Boyden Gray & Associates
801 17th Street NW, Ste. 350
Washington, DC 20006
(202) 955-0620
berry@boydengrayassociates.com
kelson@boydengrayassociates.com

*Counsel for Plaintiffs Liberty Energy Inc., Liberty Oilfield Services LLC, and Western Energy Alliance*

Respectfully submitted,

/s/ Melissa Holyoak
SEAN REYES
Attorney General
MELISSA HOLYOAK
Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

BRUNN (BEAU) ROYSDEN
Fusion Law, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ 85020
(602) 315-7545
beau@fusion.law

JOHN SULLIVAN, Of Counsel
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351
john.sullivan@the-sl-lawfirm.com

*Counsel for Plaintiff State of Utah*

/s/ Andrew Ferguson
JASON MIYARES
Attorney General
ANDREW N. FERGUSON**
Solicitor General
KEVIN M. GALLAGHER**
Deputy Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*

21

*/s/ Neville Hedley*
NEVILLE HEDLEY**
Hamilton Lincoln Law Institute
1440 W. Taylor Street, #1487
Chicago, IL 60607
(312) 342-6008
ned.hedley@hlli.org

ANNA ST. JOHN
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

*Counsel for Plaintiff James R. Copland and Alex L. Fairly*


STEVE MARSHALL
Attorney General
EDMUND LACOUR
Solicitor General

Alabama Attorney General's Office
501 Washington Ave.
Montgomery, AL 36014
(334) 353-2196
edmund.lacour@alabamaag.gov

*Counsel for Plaintiff State of Alabama*

*/s/ Joseph S. St. John*
JEFF LANDRY
Attorney General
ELIZABETH B. MURRILL*
Solicitor General
JOSEPH S. ST. JOHN
Deputy Solicitor General
TRACY SHORT
Assistant Attorney General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


TREG TAYLOR
Attorney General
JEFFREY G. PICKETT
Senior Assistant Attorney General
BENJAMIN HOFMEISTER**
Assistant Attorney General

Alaska Department of Law
123 4th Street
Juneau, AK 99801
(907) 269-5275
jeff.pickett@alaska.gov
ben.hofmeister@alaska.gov

*Counsel for Plaintiff State of Alaska*

TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN JACOBS
Deputy Solicitor General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

ASHLEY MOODY
Attorney General
JOSEPH E. HART
Counselor to the Attorney General

Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, FL 32399-1050
Phone: (850) 414-3300
joseph.hart@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY**
Solicitor General

Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

RAÚL R. LABRADOR
Attorney General
DAVID M.S. DEWHIRST**
Chief Deputy Attorney General

Idaho Attorney General's Office
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
david.dewhirst@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

THEODORE E. ROKITA
Attorney General
THOMAS FISHER**
Solicitor General

Indiana Attorney General's Office
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-6255
tom.fisher@atg.in.gov

*Counsel for Plaintiff State of Indiana*

BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
eric.wessan@ag.iowa.gov.

*Counsel for Plaintiff State of Iowa*

KRIS KOBACH
Attorney General
JESSE A. BURRIS**
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Ave, 2nd Floor
Topeka, KS 66612
(785) 368-8197
jesse.burris@ag.ks.gov

*Counsel for Plaintiff State of Kansas*


LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN**
Solicitor General

Montana Department of Justice
215 N Sanders St.
Helena, MT 59601
(406) 444-2707
Christian.Corrigan@mt.gov

*Counsel for Plaintiff State of Montana*


DANIEL CAMERON
Attorney General
LINDSEY KEISER**
Assistant Attorney General

Kentucky Attorney General's Office
700 Capital Avenue, Suite 118
Frankfort, KY
Tel: (502) 696-5478
lindsey.keiser@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*


ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
MARIA A. LANAHAN**
Deputy Solicitor General

Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-3321
josh.divine@ago.mo.gov
maria.lanahan@ago.mo.gov

*Counsel for Plaintiff State of Missouri*


MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Deputy Solicitor General

Nebraska Attorney General's Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

24

JOHN FORMELLA
Attorney General
MARK W. DELL'ORFANO
Attorney

New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
anthony.j.galdieri@doj.nh.gov
(603) 271-1214

*Counsel for Plaintiff State of New Hampshire*

DREW H. WRIGLEY
Attorney General
COURTNEY TITUS**
Deputy Solicitor General

North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-3644
ctitus@nd.gov

*Counsel for Plaintiff State of North Dakota*

DAVE YOST
Attorney General
BENJAMIN FLOWERS
Solicitor General

Ohio Attorney General's office
30 E. Broad St., 17th Fl.
Columbus, OH 43215
(614) 728-7511
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation

Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
zach.west@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

ALAN WILSON
Attorney General
THOMAS T. HYDRICK**
Assistant Deputy Solicitor General

South Carolina Attorney General's Office
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for Plaintiff State of South Carolina*

JONATHAN SKRMETTI
Attorney General and Reporter
GABRIEL KRIMM**
Assistant Solicitor General

Office of the Attorney General and Reporter of
Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-3491
brandon.smith@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

PATRICK MORRISEY
Attorney General
LINDSAY S. SEE**
Solicitor General
MICHAEL R. WILLIAMS**
Senior Deputy Solicitor General

West Virginia Attorney General's Office
State Capitol Complex, Bldg. 1, Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305
(681) 313-4550
lindsay.s.see@wvago.gov
michael.r.williams@wvago.gov

*Counsel for Plaintiff State of West Virginia*


**admitted pro hac vice*
*motion for admission pro hac vice pending*

In association with local counsel:

F. Scott Flow
FLOW LAW FIRM, PLLC
800 SW 9th Avenue
Amarillo, Texas 79101-3206
(806) 372-2010
fsflow@flowlaw.com

*Co-Counsel for Plaintiffs other than States of Texas, Tennessee*

BRIDGET HILL
Attorney General
RYAN SCHELHAAS**
Chief Deputy Attorney General

Office of the Wyoming Attorney General
200 W. 24th Street
Cheyenne, WY 82002
(307) 777-7841
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*


## CERTIFICATE OF SERVICE

I certify that on April 11, 2023, the undersigned counsel used the CM/ECF system to file this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas. The attorneys in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Brunn (Beau) Roysden
Brunn (Beau) Roysden
Fusion Law, PLLC

26