# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

STATE OF UTAH ET AL.,

                *Plaintiffs*,

v.

JULIE A. SU[*] and
UNITED STATES DEPARTMENT OF LABOR,

                *Defendants*.

NO. 2:23-CV-00016-Z

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

[*] Plaintiffs have substituted the name of the Acting Secretary of Labor as a Defendant in accordance with Fed. R. Civ. P. 25(d).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii
INTRODUCTION ......................................................................................................................... 1
PROCEDURAL BACKGROUND ............................................................................................... 2
ARGUMENT ................................................................................................................................. 2
I.   The Administrative Record Does Not Change the Conclusion that the 2022 Rule Is Arbitrary and Capricious ............................................................................................................... 2
     A.   The Administrative Record Does Not Rebut DOL's Prior Finding That Strict Regulations Are Necessary to Protect Participants ............................................... 2
     B.   The Alleged Justification for the 2022 Rule Is Inadequate ................................... 4
     C.   The 2022 Rule Is Unreasonable, Internally Inconsistent, and Relies on Impermissible Considerations ........................................................................................................ 7
     D.   The 2022 Rule Unreasonably Removed Collateral Benefit Disclosure Requirements Included in the NPRM ............................................................................................ 8
     E.   The Administrative Record Does Not Save DOL's Conclusion that Issuing Sub-Regulatory Guidance Was "Obviously Untenable" .............................................. 9
     F.   The Administrative Record Confirms that the 2022 Rule is the Product of Prejudgment ......................................................................................................... 10
II.  This Court Should Vacate the 2022 Rule and Declare it Unlawful ............................... 10
CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                 Page(s)

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ...................................................................................... 1, 8

*Chamber of Com. of U.S. v. U.S. Dep't of Lab.*,
   885 F.3d 360 (5th Cir. 2018) ............................................................................................... 1

*DHS v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020) ......................................................................................................... 3

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ............................................................................................................. 3

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .................................................................................................... 4, 5, 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................................ 3, 7

*Prohibition Juice Co. v. FDA*,
   45 F.4th 8 (D.C. Cir. 2022) ................................................................................................. 1

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) ............................................................................................................. 1

**Statutes**

5 U.S.C. § 703 ........................................................................................................................ 10

5 U.S.C. § 706 .................................................................................................................... 1, 10

28 U.S.C. § 2201 .................................................................................................................... 10

28 U.S.C. § 2202 .................................................................................................................... 10

**Other Authorities**

29 C.F.R. § 2550.404a-1 ......................................................................................................... 8

73 F.R. 61734 (Oct. 17, 2008) ................................................................................................ 4

85 F.R. 72846 (Nov. 13, 2020) ....................................................................................... 3, 4, 9

85 F.R. 81658 (Dec. 16, 2020) ............................................................................................... 3

87 F.R. 73822 (Dec. 1, 2022) .............................................................................................. 1, 7

**INTRODUCTION**

This Court should resolve this Administrative Procedure Act ("APA") challenge by making a final ruling on the merits that the Department of Labor ("DOL") rule titled "Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights," 87 F.R. 73822 (Dec. 1, 2022) ("2022 Rule"), is contrary to law and arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A), (C). Accordingly, this Court should set aside the 2022 Rule under § 706 and enter declaratory judgment for Plaintiffs to the same effect.

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law" *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Chamber of Com. of U.S. v. U.S. Dep't of Lab.*, 885 F.3d 360, 368, 388 (5th Cir. 2018). The parties therefore agreed to consolidate the pending motion for preliminary injunction with trial on the merits under Rule 65(a)(2), with additional summary judgment briefing after DOL submitted the administrative record to address 1) whether the 2022 Rule is arbitrary and capricious, and 2) what final relief should be granted. *See* Dkt.89 at 1. The additional briefing ensures that all issues are presented to this Court for final decision.

The administrative record does not change the outcome in this case. The Court "must 'judge the propriety of [DOL's] action solely by the grounds invoked by the agency," which DOL memorialized in its rulemaking. *Prohibition Juice Co. v. FDA*, 45 F.4th 8, 18-19 (D.C. Cir. 2022) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Nor does the administrative record support DOL's claims. The 2022 Rule is therefore arbitrary and capricious,[1] and setting it aside under § 706 and entering declaratory judgment are the proper remedies. Plaintiffs therefore respectfully move under Rule 56 for summary judgment on these issues in conjunction with the consolidated trial on the merits.

---

[1] Plaintiffs incorporate by reference the existing briefing from their motion for preliminary injunction and reply on why the 2022 Rule is arbitrary and capricious and will not unnecessarily repeat it here. *See* Dkt.39 at 26-38 (motion); Dkt.85 at 9-16 (reply).

## PROCEDURAL BACKGROUND

The parties finished briefing Plaintiffs' motion for preliminary injunction on April 11, 2023. *See* Dkt.39, 69, 85. Plaintiffs argued that the 2022 Rule violates ERISA and is arbitrary and capricious. Dkt.39 at 18-38. On April 21, 2023, the parties agreed to consolidate the preliminary injunction hearing with trial on the merits under Rule 65(a)(2). Dkt.89 at 2. They further agreed that Defendants would produce the administrative record on May 2, and the parties would supplement their existing briefing thereafter to address whether the 2022 Rule is arbitrary and capricious and the appropriate relief.[2]

## ARGUMENT

### I. THE ADMINISTRATIVE RECORD DOES NOT CHANGE THE CONCLUSION THAT THE 2022 RULE IS ARBITRARY AND CAPRICIOUS

In the pending motion for preliminary injunction, the parties have fully briefed whether the 2022 Rule is contrary to law. *See, e.g.*, Dkt.39 at 18-26; Dkt.85 at 3-9. They have also briefed whether the 2022 Rule is arbitrary and capricious. *See* note 1, *supra*. Pursuant to the agreed schedule, this section is limited to why the administrative record DOL produced further confirms the 2022 Rule is arbitrary and capricious.[3]

#### A. The Administrative Record Does Not Rebut DOL's Prior Finding That Strict Regulations Are Necessary to Protect Participants

The 2022 Rule contradicts DOL's prior finding that strict regulations are necessary to protect ERISA plan participants,[4] which is a fundamental aspect of fiduciary law and the animating

---

[2] The parties agreed to file a joint appendix on June 23 with portions of the administrative record.
[3] A review of the comments received shows that a significant portion of commentors recognized harms that would result from the NPRM and the industry-practice of charging higher fees for "ESG" funds. *See* AR0005721 (Prof. Edward Zelinsky); AR0005891 (U.S. Senate Ranking Members); AR0005922 (National Center for Public Policy Research); AR0006381 (National Association of Manufacturers); AR0006410 (American Securities Association); AR0006443 (Hamilton Lincoln Law Institute); AR0006524, 6527 (Life:Powered); AR0006551 (Boyden Gray & Associates PLLC); AR0006603 (Consumers' Research); AR0006737 (Bernard S. Sharfman); AR0006759 (FreedomWorks Foundation); AR0006770 (American Enterprise Institute); AR0006781 (Western Energy Alliance and U.S. Oil & Gas Association); AR0007307 (North American Coal); AR0007312 (American Legislative Exchange Council); AR0007507 (States of Utah et al.); AR0007637 (National Legal and Policy Center).
[4] As used in this Motion, "participants" refers to both ERISA plan participants and beneficiaries.

consideration of the 2020 rules. *E.g.*, Dkt.39 at 27-28.[5] DOL previously concluded that, notwithstanding the general duties of prudence and loyalty, strict regulations are necessary to protect participants from documented "shortcomings in the rigor of the prudence and loyalty analysis by some participating in the ESG investment marketplace." 85 F.R. at 72847, 72850; 85 F.R. at 81678. Without offering evidence to rebut this finding, the 2022 Rule weakened or eliminated those protections and expressly allowed investment decisions based on collateral factors.

That is arbitrary and capricious. When departing from past factual findings in decision making, agencies must provide a "more detailed justification than what would suffice for a new policy created on a blank slate." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). DOL has not justified "disregarding facts and circumstances that underlay … the prior policy." *Id.* And there is nothing in the record that provides DOL's "reasoned analysis" of "alternatives that are within the ambit of the existing policy"—i.e., anything that expressly considers protection of ERISA participants for the circumstance when a fiduciary acts with a potentially harmful lack of rigor. *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (cleaned up) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983)).

Instead, DOL has produced comments and letters from ERISA fiduciaries, including by asset managers and asset-manager organizations that profit from ESG plans, suggesting that financially-focused ESG investing can be good for participants.[6] The record also contains some news and law

---

[5] Financial Factors in Selecting Plan Investments, 85 F.R. 72846 (Nov. 13, 2020); Fiduciary Duties Regarding Proxy Voting and Shareholder Rights, 85 F.R. 81658 (Dec. 16, 2020).

[6] *See, e.g.*, AR0005374 (list of all comments); AR0006510 at p. 2 (State Street Global Advisors, commenting that "addressing material ESG issues is a good business practice"); *id.* at n.4 (recognizing importance of economic factors such as "[s]tronger cash flows, lower borrowing costs and higher valuations" and saying that "investments through an [ESG] lens [do not] *necessarily* mean[] diminished financial returns") (emphasis added); AR0005757 at p. 2 (Council of Institutional Investors, commenting that "ESG factors can be economically material investment factors" and citing statement from Larry Fink, Blackrock CEO).

review articles arguing that ESG can be a profitable investment strategy, at least when things go right.[7] Moreover, what the record fails to add is any reasoned analysis by DOL that the changes in the 2022 Rule, such as eliminating various protections for participants and expressly allowing investment and shareholder actions based on collateral factors, sufficiently guard against harm to participants when fiduciaries act *without* sufficient rigor. 85 F.R. at 72847-48.

This is especially relevant because the 2020 rules did not prohibit ESG investing when done for pecuniary reasons. *See, e.g.*, Dkt.85 at 10-11; *see also* Part I(B) and I(E), *infra*. Instead, the 2020 rules followed directly from the Supreme Court's unanimous opinion in *Fifth Third Bancorp v. Dudenhoeffer* that ERISA "does not cover nonpecuniary benefits." 573 U.S. 409, 420-21 (2014).

Therefore, it was arbitrary and capricious for DOL to eliminate protections in the 2020 rules to facilitate something that was already permitted (considering ESG for *pecuniary* reasons) without producing a reasoned consideration of the risks to participants from eliminating protections if something goes wrong, such as when a fiduciary acts without sufficient rigor. One example would be a fiduciary conflating pecuniary with nonpecuniary factors. And this is an important concern given how ill-defined ESG factors can be. *See, e.g.*, Interpretive Bulletin 2008-1, 73 F.R. 61734, 61735 (Oct. 17, 2008) ("A less rigid rule would allow fiduciaries to act on the basis of factors outside the economic interest of the plan."). DOL's lack of reasoned analysis in the 2022 Rule, including not giving a more detailed justification, renders the entire rulemaking arbitrary and capricious.

## B. The Alleged Justification for the 2022 Rule Is Inadequate

Under the 2020 rules, ESG factors are prudently considered just like any other factors insofar as they affect the financial interests of participants in an ERISA plan. Dkt.39 at 28-29; Dkt.85 at 10-11. While DOL claimed the 2020 rules created a "chill" or "confusion" about consideration of ESG

---

[7] *E.g.*, AR0002166 (law review article titled "Do ESG Funds Deliver on their Promises?"); AR0002484 (news article titled "ESG funds beat out S&P 500 in first year of COVID-19").

factors, the 2022 Rule never identified in a concrete manner how a generalized "chill" or "confusion" reduced *financial* returns for participants. Dkt.39 at 28. In addition, DOL never explained how the 2020 rule created a "chill" distinct from ERISA and *Dudenhoeffer*, as the 2020 rules merely implemented that decision in a manner that protects ERISA plan participants. The administrative record does not change this.[8]

Like the 2022 Rule preamble, the administrative record contains only generic claims about "chill" and "confusion" without any specifics sufficient to justify expressly permitting consideration of collateral factors by ERISA fiduciaries and eliminating protections for ERISA participants. For example, Natixis Investment Managers wrote to DOL regarding a meeting it held in spring 2021 and said generally that it had "seen firsthand the *chilling effect* of the rule on appropriate ESG investments." AR0010151. Similarly, the American Retirement Association and Ceres wrote a letter to DOL dated March 23, 2021 that briefly mentions "chill" in passing. AR0009687 at p.3. This letter argues that it is difficult for fiduciaries to separate the pecuniary and nonpecuniary aspects of ESG. *Id.* But this only shows why DOL's prior finding about the need to protect participants from a lack of rigor is on point. *See* Part I(A), *supra*. Ceres wrote another letter dated August 27, 2021 that similarly mentions "a chilling effect." AR0010438. Importantly, all these letters came out *after* DOL publicly claimed on March 10, 2021, that the 2020 rules "have already had a chilling effect on appropriate integration of ESG factors in investment decisions." AR0010476. Importantly, these letters also acknowledge that consideration of ESG as a pecuniary factor *is* allowed under the 2020 rules, and they fail to grapple with *Dudenhoeffer*, which itself uses the term "nonpecuniary." These letters thus do not support the argument that DOL

---

[8] CalPERS even asked for a complete "safe harbor" for fiduciaries to consider ESG in investment decisions, showing how extreme some of those pushing ESG are. *See* AR0006833 at p.5-6.

had an adequate basis to promulgate the 2022 Rule.[9]

Recall that the NPRM conspicuously omitted any mention of *Dudenhoeffer*. The handful of comment letters that endorsed DOL's NPRM and referenced *Dudenhoeffer* do not indicate that the 2020 Rules "chilled" fiduciaries.[10] The letters from CalPERS and the Institute for Policy Integrity which do mention *Dudenhoeffer* fundamentally misinterpret its holding, and only the latter even alludes to any confusion caused by the 2020 Rule's reference to the nonpecuniary concept expressly set forth in *Dudenhoeffer*. AR006459 at p.9.

It is difficult to imagine how the 2020 rules could "chill" or "confuse" fiduciaries engaged in an activity that was not prohibited by the 2020 rules, especially when those rules were consistent with a unanimous Supreme Court decision and language in the preamble would not be relied on by courts to contradict plain regulatory language in the 2020 rules themselves. And even if a vague "chill" could provide a basis for changes to the 2020 rules (or sub-regulatory guidance), nothing in the administrative record supports the argument that "chill" alone authorizes DOL to permit consideration of collateral (i.e., nonpecuniary) factors and to eliminate protections for participants at every turn. In other words, mere invocation of "chill" or "confusion" cannot allow an agency to depart however it wants from prior regulations and the underlying statutory framework.

---

[9] The administrative record also contains comments from the 2020 rulemaking that mention chill, but none of these support DOL's actions in the 2022 rulemaking because they are again not specific or tied to the 2022 Rule. In fact many of them appear to raise unrelated concerns. *See* AR0009414 at p. 20 (Coordinating Committee for Multiemployer Plans, commenting the 2020 NPRM would bring "unwarranted[] scrutiny" on selection of minority and women-owned investment managers); AR009492 at p.3 (International Painters and Allied Trades Industry Pension Fund, commenting that having to decide whether to vote a proxy will now require "engaging economists"). A comment from the International Association of Pension Plan states that in the context of a tiebreaker a documentation requirement would "chill" investments in areas frowned on by DOL, AR0009435 at p.4, but never explains how merely documenting the reason for a vote is sufficiently difficult as to chill what a fiduciary otherwise views as the best *financial* choice, which doesn't require documentation anyway.

[10] *See* Institute for Policy Integrity, AR006459; CalPERS, AR006833; Natural Resources Defense Council, AR006850; Prof. Robert Sitkoff, AR006996; and Investment Company Institute, AR007103.

### C. The 2022 Rule Is Unreasonable, Internally Inconsistent, and Relies on Impermissible Considerations

The 2022 Rule is further arbitrary and capricious because many of its provisions are unreasonable, internally inconsistent, fail to consider relevant factors, and "rel[y] on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43. The 2022 Rule expressly allows consideration of collateral (i.e., nonpecuniary) factors by ERISA fiduciaries in investing and voting, and at every turn eliminated protections for participants, such as recordkeeping requirements and clear commands to act solely for participants' financial interests. Dkt.39 at 29-34.

With respect to expanding the tiebreaker provision, DOL has made the same "confusion" and "chill" arguments refuted above. *See* Part I(B). And any references in the administrative record to "confusion" and "chill" are too amorphous to support expanding such a provision beyond the very narrow circumstances where the fiduciary is unable to distinguish between the investments on pecuniary factors alone and diversification it is not practical. *See, e.g.*, AR005891 at p. 2 (U.S. Senate Ranking Members, noting that "less diversification" may subject fiduciaries to litigation risk).[11]

Similarly, the administrative record cannot save the improper change of authorizing nonpecuniary factors in proxy voting and other exercises of shareholder rights. This change is based on the impermissible purpose of benefitting fiduciaries' pursuit of collateral goals. Dkt.85 at 14. The 2022 Rule notes that commentators suggested this deletion in order to permit proxy voting even where it "would not directly affect shareholder value" and to avoid any "burdensome economic analysis before voting proxies." 87 F.R. at 73847; *see also* AR0006642 at p.7-8 (comment from the Spark Institute). But as Plaintiffs have pointed out, DOL's dual-rationale that the 2020 rule's express command both "serves no independent function" and "impose[s] additional duties" is contradictory,

---

[11] Authorizing consideration of participants' preferences similarly fails the arbitrary and capricious test because the rule failed to provide a uniform approach to determining these preferences, and it simply gives the fiduciary additional discretion to pursue collateral objectives. Dkt.39 at 31-32.

rendering it arbitrary and capricious. Dkt.39 at 32. All that the 2020 rule provision required was that the fiduciary "not … promote non-pecuniary benefits or goals unrelated to those financial interests of the plan's participants or beneficiaries." 29 C.F.R. § 2550.404a-1(c)(2)(ii)(C) (2021). This is not a burdensome requirement, and the comments cannot feign confusion or burden.

Removing documentation requirements for fiduciaries likewise follows DOL's pattern of transferring ERISA fiduciaries' "burdens" onto participants. Nothing in the administrative record contradicts the commonsense conclusion that simply requiring a fiduciary to document the actual reason why it is doing something is not overly burdensome.

Finally, the administrative record does not support eliminating specific restrictions on QDIAs. The comments generally said protecting participants in QDIAs is covered by the general duties of prudence and loyalty. *See, e.g.*, AR0005757 (Council of Institutional Investors); AR0005818 (Ceres). Unlike other investments, however, participants do not opt into QDIAs.

### D.  The 2022 Rule Unreasonably Removed Collateral Benefit Disclosure Requirements Included in the NPRM

The 2022 Rule eliminated a common-sense provision that would have required fiduciaries to disclose any consideration of collateral benefits in the context of participant-driven individual account plans. Neither the 2022 Rule nor DOL's opposition to the motion for preliminary injunction provided any clear explanation for why this provision, which would have helped participants, was removed.

The administrative record does not save this arbitrary and capricious decision. *See Am. Bioscience*, 269 F.3d at 1083. If anything, it highlights how improper consideration of collateral benefits is in the first place and how important it is to protect ERISA participants from a lack of rigor because the supporting commenters all took a "nothing to see here" approach. AR0006642 at p.4 (Spark Institute, Inc., arguing the requirement should be removed because it disproportionately emphasizes "one part of the fiduciary decision-making process"); AR0006730 at p. 5 (Investment Adviser Association, commenting that DOL doesn't require "prominent disclosure for other considerations");

8

AR0007127 at p. 5 (Fidelity, advising DOL to simply defer to the SEC).

ERISA participants may well view funds chosen for collateral benefits differently for multiple reasons. The statute presumes they will focus on financial returns and should thus worry about funds that have collateral reasons behind their selection. ESG funds also often have higher fees. *See, e.g.*, 85 F.R. at 72848; AR0002525 (Wall Stret Journal article titled "Tidal Wave of ESG Funds Brings Profit to Wall Street; Socially focused exchange-traded funds give asset managers higher fees in a low-fee industry," which noted that funds that explicitly focus on socially responsible investments have 43% higher fees than widely popular standard ETFs); AR0005922 at p.7 (National Center for Public Policy Research, commenting on fees). The 2022 Rule improperly opened the door to consideration of "collateral benefits." It should be declared contrary to law for that reason. It was also arbitrary and capricious for DOL to remove the collateral benefit disclosure requirement.

### E. The Administrative Record Does Not Save DOL's Conclusion that Issuing Sub-Regulatory Guidance Was "Obviously Untenable"

The 2022 Rule failed to address or consider the reasonable alternative of sub-regulatory guidance. Dkt.39 at 36-37. DOL's response was that such guidance was "obviously untenable" because it would fail to clear up the "confusion" that fiduciaries supposedly encountered under the 2020 rules. Dkt.69 at 37-38; AR0009681 at p.2 (Committee on Investment of Employee Benefit Assets Inc., urging DOL to "stop the cycle of changing the rules every time there is a new administration"). Also, as noted below, DOL publicly committed itself to the limited task of "how to craft rules," again stating it intended to amend the rules. *See* Part I(F), *infra*; *see also* AR0010477 at p. 2-3 (Executive Order directing DOL to consider "a proposed rule to suspend, revise, or rescind" the 2020 rules).

The administrative record does not save the failure by DOL to consider issuing sub-regulatory guidance. Comments and other materials in that record consistently recognize that consideration of ESG factors, insofar as they relate to pecuniary consideration, was lawful under the 2020 rules. E.g., AR0009687 at p. 3 (Ceres March 23, 2021 letter to DOL noting that 2020 rules' preambles

9

"acknowledge[] that an ESG-type factor *could* be considered a 'pecuniary' factor under certain circumstances"); *id.* at p.2 (recognizing that 2020 rule "was significantly improved over the proposed regulation, as it was amended to remove all direct references to ESG-related factors in the operative text of the regulation").

### F. The Administrative Record Confirms that the 2022 Rule is the Product of Prejudgment

The administrative record supports the conclusion that DOL had prejudged the outcome prior to the rulemaking. The letter from Natixis to DOL cites the statement of the Principal Deputy Assistant Secretary that DOL would be working with stakeholders "to determine how to craft rules that better recognize the important role that [ESG] integration can play in the evaluation and management of investments." AR0010151 at p. 1. This shows that even before the NPRM, the groups meeting with DOL understood this was process was about "how"—not whether—to achieve a result.

## II. THIS COURT SHOULD VACATE THE 2022 RULE AND DECLARE IT UNLAWFUL

Because the 2022 Rule is arbitrary and capricious and contrary to law and was promulgated in excess of statutory jurisdiction, authority, or limitations within the meaning of § 706(2)(A), (C), this Court should apply the "default rule" and "set aside" agency action under § 706(2). *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) ("[V]acatur of an agency action is the default rule in this Circuit."). The Court should also grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a); 5 U.S.C. § 703. *See* Dkt.47 at 41 ¶¶ B-C (requested relief).

Plaintiffs do not seek injunctive relief as part of the consolidated hearing or in requesting final judgment. Instead, this Court should retain jurisdiction over this dispute in the final judgment and preserve Plaintiffs' rights under 28 U.S.C. § 2202.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the briefing on the motion for preliminary injunction, this Court should enter final judgment in favor of Plaintiffs.

Dated May 16, 2023.

/s/ Leif A. Olson
KEN PAXTON
Attorney General
AARON REITZ
Texas Bar No. 24105704
Deputy Attorney General for Legal Strategy
LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801

Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548
aaron.reitz@oag.texas.gov
leif.olson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

/s/ Jonathan Berry
C. BOYDEN GRAY
JONATHAN BERRY
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JARED M. KELSON

Boyden Gray & Associates
801 17th Street NW, Ste. 350
Washington, DC 20006
(202) 955-0620
berry@boydengrayassociates.com
kelson@boydengrayassociates.com

*Counsel for Plaintiffs Liberty Energy Inc., Liberty Oilfield Services LLC*, and *Western Energy Alliance*

Respectfully submitted,

/s/ Melissa Holyoak
SEAN REYES
Attorney General
MELISSA HOLYOAK
Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

BRUNN (BEAU) ROYSDEN
Fusion Law, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ 85020
(602) 315-7545
beau@fusion.law

JOHN SULLIVAN, Of Counsel
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523-1351
john.sullivan@the-sl-lawfirm.com

*Counsel for Plaintiff State of Utah*

/s/ Andrew Ferguson
JASON MIYARES
Attorney General
ANDREW N. FERGUSON**
Solicitor General
KEVIN M. GALLAGHER**
Deputy Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*

11

/s/ Neville Hedley
NEVILLE HEDLEY**
Hamilton Lincoln Law Institute
1440 W. Taylor Street, #1487
Chicago, IL 60607
(312) 342-6008
ned.hedley@hlli.org

ANNA ST. JOHN
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

*Counsel for Plaintiff James R. Copland and Alex L. Fairly*


STEVE MARSHALL
Attorney General
EDMUND LACOUR
Solicitor General

Alabama Attorney General's Office
501 Washington Ave.
Montgomery, AL 36014
(334) 353-2196
edmund.lacour@alabamaag.gov

*Counsel for Plaintiff State of Alabama*

/s/ Joseph S. St. John
JEFF LANDRY
Attorney General
ELIZABETH B. MURRILL*
Solicitor General
JOSEPH S. ST. JOHN
Deputy Solicitor General
TRACY SHORT
Assistant Attorney General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

TREG TAYLOR
Attorney General
JEFFREY G. PICKETT
Senior Assistant Attorney General
BENJAMIN HOFMEISTER**
Assistant Attorney General

Alaska Department of Law
123 4th Street
Juneau, AK 99801
(907) 269-5275
jeff.pickett@alaska.gov
ben.hofmeister@alaska.gov

*Counsel for Plaintiff State of Alaska*

12

TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN JACOBS
Deputy Solicitor General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY**
Solicitor General

Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

THEODORE E. ROKITA
Attorney General
THOMAS FISHER**
Solicitor General

Indiana Attorney General's Office
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-6255
tom.fisher@atg.in.gov

*Counsel for Plaintiff State of Indiana*

ASHLEY MOODY
Attorney General
JOSEPH E. HART
Counselor to the Attorney General

Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, FL 32399-1050
Phone: (850) 414-3300
joseph.hart@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

RAÚL R. LABRADOR
Attorney General
LINCOLN DAVIS WILSON*[13]
Chief of Civil Litigation and Constitutional Defense
Idaho Attorney General's Office
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
david.dewhirst@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
eric.wessan@ag.iowa.gov.

*Counsel for Plaintiff State of Iowa*

---

[13] On May 16, 2023, Lincoln Davis filed a motion for pro hac vice admission.  David Dewhirst is no longer employed at the Idaho Attorney General's Office.

| | |
|---|---|
| KRIS KOBACH<br>Attorney General<br>JESSE A. BURRIS**<br>Assistant Attorney General<br><br>Kansas Attorney General's Office<br>120 SW 10th Ave, 2nd Floor<br>Topeka, KS 66612<br>(785) 368-8197<br>jesse.burris@ag.ks.gov<br><br>*Counsel for Plaintiff State of Kansas* | DANIEL CAMERON<br>Attorney General<br>LINDSEY KEISER**<br>Assistant Attorney General<br><br>Kentucky Attorney General's Office<br>700 Capital Avenue, Suite 118<br>Frankfort, KY<br>Tel: (502) 696-5478<br>lindsey.keiser@ky.gov<br><br>*Counsel for Plaintiff Commonwealth of Kentucky* |
| LYNN FITCH<br>Attorney General<br>JUSTIN L. MATHENY<br>Deputy Solicitor General<br><br>Mississippi Attorney General's Office<br>P.O. Box 220<br>Jackson, MS 39205-0220<br>(601) 359-3680<br>justin.matheny@ago.ms.gov<br><br>*Counsel for Plaintiff State of Mississippi* | ANDREW BAILEY<br>Attorney General<br>JOSHUA M. DIVINE<br>Solicitor General<br>MARIA A. LANAHAN**<br>Deputy Solicitor General<br><br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-3321<br>josh.divine@ago.mo.gov<br>maria.lanahan@ago.mo.gov<br><br>*Counsel for Plaintiff State of Missouri* |
| AUSTIN KNUDSEN<br>Attorney General<br>CHRISTIAN B. CORRIGAN**<br>Solicitor General<br><br>Montana Department of Justice<br>215 N Sanders St.<br>Helena, MT 59601<br>(406) 444-2707<br>Christian.Corrigan@mt.gov<br><br>*Counsel for Plaintiff State of Montana* | MICHAEL T. HILGERS<br>Attorney General<br>ERIC J. HAMILTON<br>Deputy Solicitor General<br><br>Nebraska Attorney General's Office<br>2115 State Capitol<br>Lincoln, NE 68509<br>(402) 471-2682<br>eric.hamilton@nebraska.gov<br><br>*Counsel for Plaintiff State of Nebraska* |

14

<div style="columns:2">

JOHN FORMELLA
Attorney General
MARK W. DELL'ORFANO
Attorney

New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
mark.w.dellorfano@doj.nh.gov
(603) 271-1236

*Counsel for Plaintiff State of New Hampshire*

DAVE YOST
Attorney General
BENJAMIN FLOWERS
Solicitor General

Ohio Attorney General's office
30 E. Broad St., 17th Fl.
Columbus, OH 43215
(614) 728-7511
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

ALAN WILSON
Attorney General
THOMAS T. HYDRICK**
Assistant Deputy Solicitor General

South Carolina Attorney General's Office
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for Plaintiff State of South Carolina*

DREW H. WRIGLEY
Attorney General
COURTNEY TITUS**
Deputy Solicitor General

North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-3644
ctitus@nd.gov

*Counsel for Plaintiff State of North Dakota*

GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation

Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
zach.west@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

JONATHAN SKRMETTI
Attorney General and Reporter
GABRIEL KRIMM**
Assistant Solicitor General

Office of the Attorney General and Reporter of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-3491
brandon.smith@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

</div>

| | |
|---|---|
| PATRICK MORRISEY<br>Attorney General<br>LINDSAY S. SEE**<br>Solicitor General<br>MICHAEL R. WILLIAMS**<br>Senior Deputy Solicitor General<br><br>West Virginia Attorney General's Office<br>State Capitol Complex, Bldg. 1, Rm E-26<br>1900 Kanawha Blvd. E<br>Charleston, WV 25305<br>(681) 313-4550<br>lindsay.s.see@wvago.gov<br>michael.r.williams@wvago.gov<br><br>*Counsel for Plaintiff State of West Virginia* | BRIDGET HILL<br>Attorney General<br>RYAN SCHELHAAS**<br>Chief Deputy Attorney General<br><br>Office of the Wyoming Attorney General<br>200 W. 24th Street<br>Cheyenne, WY 82002<br>(307) 777-7841<br>ryan.schelhaas@wyo.gov<br><br>*Counsel for Plaintiff State of Wyoming* |

*\*\*admitted pro hac vice*
*\*motion for admission pro hac vice pending*

In association with local counsel:

F. Scott Flow
FLOW LAW FIRM, PLLC
800 SW 9th Avenue
Amarillo, Texas 79101-3206
(806) 372-2010
fsflow@flowlaw.com

*Co-Counsel for Plaintiffs other than State of Texas, Tennessee*

## CERTIFICATE OF SERVICE

I certify that on May 16, 2023, the undersigned counsel used the CM/ECF system to file this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas. The attorneys in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Brunn (Beau) Roysden
Brunn (Beau) Roysden
Fusion Law, PLLC

16