# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

|  |  |
|---|---|
| STATE OF UTAH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 2:23-cv-16 |
| ) | |
| JULIE A. SU, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      The Rule Is the Product of Reasoned Decisionmaking. ................................................... 2

        A.      The Rule adequately explains its departure from 2020 Rules. ........................... 2

        B.      The Rule is consistent with its stated rationale of diminishing chilling effect. ............... 4

        C.      The Rule's provisions are reasonable and based on proper considerations. ................. 6

        D.      It was reasonable not to adopt the collateral benefits disclosure requirement. .............. 7

        E.      Sub-regulatory guidance would not have cured defects in the 2020 Rules. .................... 8

        F.      Plaintiffs cannot impose a novel procedural requirement in excess of the APA. .......... 9

II.      Any Relief Granted Should Be Narrowly Tailored. .......................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021) ........................................................................................................3

*DHS v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ................................................................................................................4

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ....................................................................................................................3

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ....................................................................................................................3

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ................................................................................................................2

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ..................................................................................................................10

*Little Sisters of Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ................................................................................................................9

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) .....................................................................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*,
  463 U.S. 29 (1983) ................................................................................................................. 2, 5

*Nat'l Ass'n of Mfrs. v. SEC*,
  --- F. Supp. 3d ----, 2022 WL 17420760 (W.D. Tex. Dec. 4, 2022) ..................................... 6, 8

*Pension Benefit Guaranty Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) ....................................................................................................................9

*PPG Inds., Inc. v. United States*,
  52 F.3d 363 (D.C. Cir. 1995) ....................................................................................................10

*Solenex LLC v. Bernhardt*,
  962 F.3d 520 (D.C. Cir. 2020) ....................................................................................................4

*Sw. Elec. Power Co. v. EPA*,
  920 F.3d 999 (5th Cir. 2019) ......................................................................................................9

*Third Fifth Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ..................................................................................................................5

**Statutes**

5 U.S.C. § 553(c) ............................................................................................................................9

5 U.S.C. § 706(2) ..................................................................................................................... 9, 10

28 U.S.C. § 2201(a) ................................................................................................................. 9, 10

29 U.S.C. § 1104(a)(1) .............................................................................................................. 4, 8

**Regulations**

29 C.F.R. § 2550.404a–1 .......................................................................................................... 4, 7

Final Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights,
   87 Fed. Reg. 73822 (Dec. 1, 2022) ....................................................................................*passim*

Proposed Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder
   Rights, 86 Fed. Reg. 57272 (Oct. 14, 2021) ..............................................................................6

**INTRODUCTION**

The Rule challenged here supports the goals of the Employee Retirement Security Act of 1974 (ERISA) by clarifying that ERISA plan fiduciaries may consider any factor in selecting investments that they reasonably conclude is relevant to a risk and return analysis. *See* Final Rule, Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. 73822 (Dec. 1, 2022) (Rule). It clarifies that risk and return factors may include the economic effects of environmental, social, and governance (ESG) factors where appropriate given the relevant facts and circumstances. The Rule thus places ERISA plan participants and beneficiaries on equal footing with other market participants. To accomplish this goal, the Department of Labor (DOL) rescinded two earlier rules that created a chilling effect on fiduciaries' consideration of ESG factors—even when such factors were material to financial performance. In doing so, DOL reaffirmed, consistent with ERISA's statutory text, that fiduciaries' exclusive purpose must be to secure financial benefits for plan participants and beneficiaries, and that this purpose may never be subordinated to unrelated goals. The Rule also reaffirmed DOL's longstanding position that, where two investment courses of action are economically equivalent, and ERISA therefore does not instruct fiduciaries as to how to choose between them, a fiduciary may look to collateral benefits in deciding how to break the tie. For the reasons explained in detail in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, which Defendants incorporate by reference here, the Rule falls comfortably within the Department's statutory authority and is the product of reasoned decisionmaking. *See generally* PI Opp., ECF No. 69.

Because this matter largely turns on purely legal questions or matters properly subject to judicial notice, the majority of the issues before the Court are presented in the preliminary injunction briefing. The parties agreed, however, that to ensure all issues were presented to the Court prior to final judgment, they would file supplemental briefs, in the form of cross-motions for summary judgment, to address any additional relevant facts regarding Plaintiffs' arbitrary-and-capricious claim

1

arising from the complete administrative record and the relief Plaintiffs seek under the Declaratory Judgment Act and the Administrative Procedure Act (APA). *See* ECF No. 89. This additional briefing confirms that the Rule is lawful and that the Court should grant judgment in Defendants' favor.

### ARGUMENT[1]

### I. The Rule Is the Product of Reasoned Decisionmaking.

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Under that "deferential" standard, "a court may not substitute its own policy judgment for that of the agency" and is limited to "ensur[ing] that the agency has . . . reasonably considered the relevant issues and reasonably explained the decision." *Id.* Agency action is arbitrary and capricious only when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation [] that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). Plaintiffs' supplemental brief repeats arguments from the preliminary injunction motion, focuses on policy disagreements with DOL's reasoned choices, misrepresents the Rule's meaning, and points to no part of the Rule that violates the deferential arbitrary-and-capricious standard. *See* PI Opp. 28–39.

#### A. The Rule adequately explains its departure from 2020 Rules.

Plaintiffs ignore the express text of the Rule and provide no support from the administrative record in arguing that DOL "has not justified" the change from the 2020 Rules. Pls.' Mot 3–4, ECF No. 92. When departing from prior policy, an agency need provide only "a reasoned explanation" for "disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v.*

---

[1] Defendants set forth the factual and procedural background in the preliminary injunction opposition. PI Opp. 3–14.

*Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).[2] The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one," but rather only that "there are good reasons for" the new policy. *Id.* at 515. As the Fifth Circuit has explained, "all that is necessary is a 'minimal level of analysis' from which the agency's reasoning may be discerned—regardless of whether the court finds the reasoning fully persuasive." *Brackeen v. Haaland*, 994 F.3d 249, 357–58 (5th Cir. 2021) (en banc), *cert. granted*, 142 S. Ct. 1204 (2022) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)).

The Rule describes in great detail the need for clarification in light of the flaws of the 2020 Rules. *See* PI Opp. 29–30. In particular, DOL determined that the 2020 Rules chilled "ERISA fiduciaries' consideration of climate change and other ESG factors in investment decisions, even in cases where it is in the financial interest of plans to take such considerations into account." 87 Fed. Reg. at 73826. DOL also cited stakeholder concerns that the agency had "rushed the [2020 Rules] unnecessarily and failed to adequately consider and address substantial evidence submitted by public commenters." *Id.* at 73825; *see, e.g.*, AR5820–22 (Ceres); AR6730–31 (Inv. Adviser Ass'n); AR7232 (AFL-CIO). Plaintiffs' assertion that DOL failed to "offer[] evidence," Pls.' Mot. 3, in support of this explanation is factually incorrect. DOL reviewed literature and received significant responses from stakeholders confirming that the Rule "will redound to the benefit of employee benefit plans, participants, and beneficiaries covered by ERISA," 87 Fed. Reg. at 73859; *see also id.* at 73859–75 (summarizing comments and literature). Indeed, it is Plaintiffs who lack evidence for their assertions. Plaintiffs do not point to any part of the administrative record indicating that DOL did not provide "a reasoned explanation" for the Rule. *Fox*, 556 U.S. at 515–16. Plaintiffs cite only portions of the

---

[2] Plaintiffs' quotation of *Fox* is misleading and inaccurate. Pls.' Mot. 3. They omit key text explaining that an "agency *need not always provide* a more detailed justification than what would suffice for a new policy created on a blank slate." *Fox*, 556 U.S. at 515 (emphasis added).

administrative record confirming—in Plaintiffs' own words—"that financially-focused ESG investing can be good for participants" and "a profitable investment strategy." Pls.' Mot. 3–4.

Plaintiffs are also incorrect that DOL failed to provide a "'reasoned analysis' of alternatives." Pls.' Mot. 3 (quoting *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020)). Plaintiffs do not clarify what aspects of the Rule required consideration of "alternatives," nor what "alternatives" DOL allegedly failed to consider. Plaintiffs assert only that DOL should have considered "anything that expressly considers protection of ERISA participants for the circumstance when a fiduciary acts with a potentially harmful lack of rigor." *Id.* This concern is misplaced: both ERISA itself and the Rule repeatedly require fiduciaries to act with the reasonable "care, skill, prudence, and diligence" of a prudent person in the same circumstances. 29 U.S.C. § 1104(a)(1)(B); 29 C.F.R. § 2550.404a–1(a).

What is more, DOL analyzed each change from the 2020 Rules and determined that the current Rule protects plan participants while optimizing financial returns. *See* PI Opp. 30–38. In doing so, DOL considered various alternatives to each of those changes. *See, e.g.*, 87 Fed. Reg. at 73878 (eliminating tiebreaker test); *id.* at 73841–42, 73878 (uniform methodologies for factoring participant preferences); *id.* at 73879 (changes similar to European Commission); *id.* at 73878, 73883–84 (regulatory alternatives to rulemaking). DOL adopted several changes to the Rule following consideration of comments. *See, e.g.*, *id.* at 73839–41; *id.* at 73847–48. Plaintiffs cannot establish that the Rule is arbitrary and capricious merely by claiming that DOL failed to consider *additional* unknown, unspecified alternatives. *See, e.g.*, *Solenex LLC v. Bernhardt*, 962 F.3d 520, 529 (D.C. Cir. 2020) ("[U]nidentified and unproven . . . interests are not a valid basis on which to undo agency action.").

**B. The Rule is consistent with its stated rationale of diminishing chilling effect.**

Plaintiffs next argue that the Rule is arbitrary and capricious because they do not agree that the 2020 Rules had a chilling effect. DOL's determination, however, is reasonable and well supported.

To the extent Plaintiffs claim a chilling effect is "counter to the evidence before" DOL or "so

4

implausible that it could not be ascribed to a difference in view," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, the administrative record overwhelmingly proves otherwise.[3] *See, e.g.*, AR7281, 7283 (Ullico); AR6765–67 (AFSCME); AR6507 (N. Am. Sec. Admin. Ass'n); AR6762–63 (BNY Mellon Inv. Mgmt.); AR6808–09 (Putnam Inv.). Indeed, Plaintiffs' own motion cites only stakeholder submissions that *support* the existence of a chilling effect. *See* Pls.' Mot. 5–6 & n.9. Plaintiffs attempt to undermine these individual submissions but provide no record evidence refuting the chilling effect of the 2020 Rules. *Id.* And even if Plaintiffs' criticisms of individual comments had merit—which they do not—quibbles with a handful of submissions cannot establish that the Rule is unreasonable.

Regardless, Plaintiffs' arguments about the individual submissions fail. Plaintiffs contend that the relevant submissions "contain only generic claims about 'chill' and 'confusion' without any specifics." Pls.' Mot. 5. The cited submissions, however, include detailed discussions of the 2020 Rules' chilling effect.[4] And Plaintiffs provide no authority for the proposition that assertions of current and expected future harm without "specific" examples cannot justify rulemaking, especially when such concerns are widely shared. Perhaps recognizing as much, Plaintiffs attempt to argue that any submissions discussing a chilling effect do not provide "an adequate basis to promulgate" the Rule because they post-date DOL's non-enforcement statement. Pls.' Mot. 5. But Plaintiffs ignore that the non-enforcement statement was a response to initial feedback from stakeholders about the 2020 Rules' chilling effect. *See* 87 Fed. Reg. at 73823 n.13, 73825–26; *see also* AR9676. There is no basis to

---

[3] Plaintiffs' insinuation that the Rule did not account for *Third Fifth Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), Pls.' Mot. 5–6, is belied by its careful consideration of that case. *See* 87 Fed. Reg. at 73834.

[4] For example, Natixis Investment Managers explained that "the 2020 [Rules] created a false perception among too many ERISA plan fiduciaries that ESG-related investments create additional fiduciary risk." AR10151. Ceres explained that in "discussions with a wide range of plan sponsors," "many . . . expressed concern that they will be targeted by the DOL if they adopt ESG funds in their plan." AR10438. And the American Retirement Association and Ceres expressed concern that the 2020 Rule could "encourage a dangerously narrow conception of risk that exposes participants' retirement savings to avoidable future losses." AR9689.

argue that comments should be disregarded because they confirm those previously expressed views.

### C. The Rule's provisions are reasonable and based on proper considerations.

Plaintiffs argue in scattershot fashion that the Rule is not reasonable due to several changes from the 2020 Rules. But the record demonstrates that these changes are considered and supported. Indeed, many of the changes Plaintiffs contest were made for the purpose of reducing compliance costs, and "it is well within the 'zone of reasonableness' for [DOL] to remove increased compliance costs that—in [DOL's] expert judgment—did not provide sufficient . . . protection benefits." *Nat'l Ass'n of Mfrs. v. SEC*, --- F. Supp. 3d ----, 2022 WL 17420760, at *5 (W.D. Tex. Dec. 4, 2022).

Plaintiffs first argue that reverting to the traditional tiebreaker test is arbitrary and capricious because Plaintiffs do not believe that the 2020 tiebreaker standard engendered confusion or chill. Pls.' Mot. 7. In fact, DOL received numerous comments supporting this change. *See, e.g.*, 87 Fed. Reg. at 73835; AR7282 (Ullico); AR6767–68 (AFSCME); AR5693–94 (Construction Emp. of Am.); AR5913 (Int'l Bhd. Teamsters); AR6644–45 (Spark Inst.). And DOL both considered and explained its reasons for rejecting contrary views. 87 Fed. Reg. at 73835–37.[5]

Plaintiffs next contend that deleting a particular clause proposed in the NPRM is arbitrary and capricious because doing so "authoriz[ed] nonpecuniary factors in proxy voting and other exercises of shareholder rights."[6] Pls.' Mot. 7. This argument ignores that the Rule requires that when exercising shareholder rights, fiduciaries must "[a]ct solely in accordance with the economic interest of the plan" and "[n]ot subordinate the interests of the participants and beneficiaries in their retirement

---

[5] Contrary to Plaintiffs' arguments, Pls.' Mot. 7 n.11, the record also reflects DOL's reasoned rationale for permitting fiduciaries to take into account plan participants' preferences in a manner consistent with the duty of prudence, *see* PI Opp. 31–32.

[6] The NPRM proposed: "[w]hen exercising shareholder rights, plan fiduciaries must . . . [n]ot subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to any other objective*, or promote benefits or goals unrelated to those financial interests of the plan's participants and beneficiaries*." 86 Fed. Reg. at 57303. DOL did not adopt the italicized clause.

income . . . to any other objective." 29 C.F.R. § 2550.404a–1(d)(2)(ii). As Defendants have explained, *see* PI Opp. 32–33, these phrases already served the purpose of the excised clause, so it "serve[d] no independent function" and imposed additional "costs and potential for litigation," 87 Fed. Reg. at 73847–48; *see also, e.g.*, AR7238–39 (AFL-CIO); AR6675–76 (Nat'l Coord. Comm. Multiemp. Plans) Plaintiffs' argument that it is impossible for a clause to both "serve[] no independent function" and "impose[] additional duties" is unexplained. Pls.' Mot. 7.

In addition, Plaintiffs argue that "requiring a fiduciary to document the actual reason why it is doing something is not overly burdensome." Pls.' Mot. 8. Plaintiffs cite no evidence for this bare assertion. Nor do Plaintiffs contend with the significant record evidence that these documentation requirements were indeed unnecessarily burdensome. *See, e.g.*, AR7281–82 (Ullico) (documentation requirements "suggest[ed] that such [ESG] investments are inherently suspect" and may "chill [ESG] investments . . . even when those factors are directly relevant to the financial merits of the investment decision or they are legitimately applied as a tie-breaker," and that "any potential benefit from such a requirement would be easily outweighed by the increased cost"); AR6768 (AFSCME).

Finally, contrary to Plaintiffs' assertion, Pls.' Mot. 8, commenters "overwhelmingly" supported removing the 2020 Rules' specific restrictions on QDIAs. 87 Fed. Reg. at 73842. Even the comments Plaintiffs cite expressly support—with detailed explanations—the Rule's elimination of these restrictions. *See* AR5761 (Council of Institutional Investors); AR5827 (Ceres).

**D. It was reasonable not to adopt the collateral benefits disclosure requirement.**

Plaintiffs assert that DOL did not provide a "clear explanation" for removing the collateral benefit disclosure requirement. Pls.' Mot. 8. But the Rule included a three-page discussion of commenter concerns and concluded that "a disclosure emphasizing matters collateral to the economics of an investment may not be in the best interests of plan participants." 87 Fed. Reg. at 73880. This was for "reasons similar to those underlying the decision to remove the documentation

7

requirements," *id.* at 73841, including the chilling effect and the sufficiency of existing duties, *see* PI Opp. 33–35, and concerns that such disclosure "could distract plan participants" from other important required disclosures. 87 Fed. Reg. at 73884. This explanation more than suffices. *See, e.g.*, *Nat'l Ass'n of Mfrs.*, 2022 WL 17420760, at *5–6 (agency may incorporate concerns from public comments).

Plaintiffs once again offer little more than disagreement with DOL's decision. Their brief cites to comments supporting the elimination of the collateral benefits disclosure requirement. *See* Pls.' Mot. 8–9; *see also* AR5919–20 (Intl. Bhd. Teamsters); AR6689 (Am. Bankers Ass'n); AR6733–34 (Inv. Adviser Ass'n); AR6645–46 (Spark Inst.). Plaintiffs assert that plan participants "should . . . worry about funds that have collateral reasons behind their selection" because ERISA "presumes [fiduciaries] will focus on financial returns." Pls.' Mot. 9. But Plaintiffs' argument demonstrates why the disclosure requirement was unnecessary: fiduciaries are *required to* focus solely on financial returns under ERISA and the Rule. 29 U.S.C. § 1104(a)(1); 87 Fed. Reg. at 73885. Moreover, removal of the collateral benefits disclosure requirement "has no impact on a fiduciary's duty to prudently document the tiebreaking decisions in accordance with section 404 of ERISA." 87 Fed. Reg. at 73841. Plaintiffs' assertion that the Rule "improperly opened the door to consideration of 'collateral benefits,'" Pls.' Mot. 9, has no basis other than Plaintiffs' supposition that fiduciaries will violate their duties.

**E. Sub-regulatory guidance would not have cured defects in the 2020 Rules.**

Plaintiffs summarily repeat their argument that the Rule was arbitrary and capricious because DOL did not consider issuing nonregulatory guidance to assuage the chill and confusion engendered by the 2020 Rules. But the Rule specifically explained why guidance did not suffice to address certain problematic aspects of the 2020 Rules, including the documentation requirements, QDIA provision, and overall chilling effect. 87 Fed. Reg. at 73853–54. It also expressly rejected the alternative of "leaving the current regulation in place without change." *Id.* at 73883. The Rule further explained that DOL initially issued the 2020 Rules for the purpose of clarifying the uncertainty arising from the

8

prior sub-regulatory guidance. *Id.* at 73856. The 2020 Rules, however, "inadvertently caused more confusion" based on "the terms and tone of the final rules and preambles." *Id.* It would make little sense to issue sub-regulatory guidance to fix an ongoing problem in prior sub-regulatory guidance that the 2020 Rules intended to fix but instead exacerbated. In addition, many commenters specifically advised against issuing sub-regulatory guidance. *See, e.g.*, AR10152 (Natixis Investment Managers) ("guidance does not carry the legal authority or provide the stability of a properly promulgated notice and comment rulemaking"); AR5820–21 (Ceres) ("[t]he 2020 ESG Rule needs to be amended").

### F. Plaintiffs may not impose a novel procedural requirement in excess of the APA.

The Supreme Court has expressly held that courts may not "impose upon agencies specific procedural requirements that have no basis in the APA." *Little Sisters of Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2385 (2020) (quoting *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654–655 (1990)). Plaintiffs' novel "[p]rejudgment" test, Pls.' Mot. 10, is exactly such a requirement. DOL complied with "the APA's objective criteria," including adequate notice, the opportunity for interested persons to participate, "a concise general statement of [the rule's] basis and purpose," and publication at least 30 days before the effective date. *Little Sisters of Poor Saints*, 140 S. Ct. at 2385–86 (quoting 5 U.S.C. § 553(c)); *see also* 87 Fed. Reg. at 73822. No more is required.

## II. Any Relief Granted Should Be Narrowly Tailored.

Plaintiffs no longer seek injunctive relief; they instead request a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and a "set aside" under 5 U.S.C. § 706(2). Pls.' Mot. 10. Should the Court see fit to grant any portion of Plaintiffs' requested relief—which it should not—any remedy should be appropriately limited. As an initial matter, if the Court were to determine that any portion of the Rule is invalid as to any Plaintiff, it should give effect to its severability clause, *see* 87 Fed. Reg. at 73886, and tailor any relief narrowly to allow the remainder of the Rule to remain in effect. *See* PI Opp. 40; *see also, e.g.*, *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019).

9

Any relief granted may properly extend only to Plaintiffs with standing—which excludes the Plaintiff States—under either the Declaratory Judgment Act or the APA. *See* PI Opp. 14–18, 40. First, the Declaratory Judgment Act applies only to "a case of actual controversy," and serves to "declare the rights . . . of any interested party *seeking such declaration*." 28 U.S.C. § 2201(a) (emphasis added). The Act's text thus limits the scope of a declaratory judgment to parties with standing. Second, section 706(2) of the APA, which authorizes courts to "set aside agency actions, findings, [or] conclusions" that violate the statute, does not authorize universal vacatur. The Department of Justice has recently and extensively argued that text and history demonstrate that "Congress . . . did not intend to create a novel remedy of universal vacatur in Section 706." *See* Br. for Pet'rs, *United States v. Texas*, 2022 WL 4278395, at *39–*42 (Sept. 12, 2022); *see also* Reply Br. for Pet'rs, *United States v. Texas*, 2022 WL 17170668, at *16–*20 (Nov. 17, 2022). To interpret the APA otherwise would effectively provide for a nationwide injunction in every APA matter—a remedy that the Fifth Circuit recently emphasized is neither "required or even the norm." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021).

Finally, the Court should reject Plaintiffs' unexplained request that it "retain jurisdiction" in any final judgment. Pls.' Mot. 10. Doing so would be particularly inappropriate in an APA case, where remand to the agency is the ordinary course. *See, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation"); *PPG Inds., Inc. v. United States*, 52 F.3d 363 (D.C. Cir. 1995) ("the case must be remanded to the agency for further action consistent with the corrected legal standards").

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, Plaintiffs' summary judgment motion should be denied and judgment should be entered in favor of Defendants. At a minimum, any relief granted should apply only to any portion of the Rule found invalid, and only to Plaintiffs who have demonstrated standing.

Dated: June 2, 2023

>Respectfully submitted,
>
>BRIAN M. BOYNTON
>*Principal Deputy Assistant Attorney General*
>
>BRAD P. ROSENBERG
>*Special Counsel*
>Federal Programs Branch
>
>/s/ *Cassandra M. Snyder*
>LESLIE COOPER VIGEN
>*Senior Trial Counsel*
>CASSANDRA M. SNYDER
>*Trial Attorney*
>U.S. Department of Justice
>Civil Division
>Federal Programs Branch
>1100 L Street NW
>Washington, DC 20005
>(202) 451-7729
>cassandra.m.snyder@usdoj.gov
>
>*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Cassandra M. Snyder*
CASSANDRA M. SNYDER
U.S. Department of Justice