IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

STATE OF UTAH, *et al.*,

      Plaintiffs,

v.

2:23-CV-016-Z

MARTIN J. WALSH, SECRETARY OF
LABOR, *et al.*,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**

Before the Court are parties' competing motions for summary judgment. Plaintiffs filed their Motion for Summary Judgment ("Motion") (ECF No. 92), on May 16, 2023. Defendants filed their Cross-Motion for Summary Judgment ("Cross-Motion") (ECF No. 94), on June 2, 2023. Having considered the motions, pleadings, and relevant law, the Court **DENIES** the Motion and **GRANTS** the Cross-Motion.

**BACKGROUND**

Plaintiffs are 26 States ("State Plaintiffs") and other interested parties ("Private Plaintiffs") suing the United States Department of Labor ("DOL" or the "Department") and the Secretary of Labor in his official capacity over the "2022 Investment Duties Rule" (the "Rule" or "2022 Rule"). The Rule clarifies the duties of fiduciaries to Employment Retirement Income Security Act of 1974 ("ERISA") employee benefit plans concerning the selection of investments and investment courses of action. *See* 87 Fed. Reg. at 73885; 29 C.F.R. § 2550.404a-1. Plaintiffs allege the Rule violates the Administrative Procedure Act ("APA") because it is arbitrary and capricious and runs afoul of ERISA. ECF No. 92 at 4; 5 U.S.C. § 706(2)(A), (C).

ERISA was enacted in 1974 to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(a). To those ends, ERISA protects: (1) defined benefit plans (traditional pensions), and (2) defined contribution plans, or "individual account plans." *Id.* § 1002(34), (35). Plan sponsors — typically an employer or a group of employers — are responsible for choosing investment options offered to participants (employees) of individual account plans. *See id.* § 1002(16). And because these sponsors may manage the plans themselves or hire others to perform various tasks, they (along with administrators, investment managers, trustees, and advisors) are fiduciaries under ERISA. *See id.* § 1002(21)(A).

Accordingly, Congress created requirements for "disclosure and reporting to participants and beneficiaries," established "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans," and provided plan participants and beneficiaries with remedies for any violation of these requirements. *Id.* § 1001(b). As such, ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and their beneficiaries." *Id.* § 1104(a)(1). Fiduciaries are further obligated to act with "care, skill, prudence, and diligence," *id.* § 1104(a)(1)(B), because their duties to ERISA plan participants are "derived from the common law of trusts" and "the highest known to the law." *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020). And per the DOL, such duties include the management of shareholder rights, including voting rights. 87 Fed. Reg. at 73825.

For nearly three decades, DOL has posited that ERISA's obligations do not forbid consideration of collateral or non-financial benefits in the selection of competing investments that serve the plan's economic interests equally. 87 Fed. Reg. at 73824. This so-called "tiebreaker" standard is only permitted where the selected investment (1) has "an expected rate of return at least

2

commensurate to rates of return of available alternative investments" with similar risks, and (2) otherwise comports with factors like "diversification" and "the investment policy of the plan." *Id.* Likewise, DOL has recognized that "environmental, social, and governance issues" ("ESG") may present purely financial considerations if they "are not merely collateral considerations or tie-breakers" but instead are "proper components of the fiduciary's primary analysis of the economic merits." 80 Fed. Reg. at 65136 (Oct. 26, 2015).

In 2020, DOL issued the "2020 Investment Duties Rule" or "2020 Rule." 85 Fed. Reg. 72846. That rule stated the tiebreaker is available only where fiduciaries are "unable to distinguish" investments "on the basis of pecuniary factors alone" and imposed documentation requirements on its use. *Id.* at 72884. But DOL then found "substantial evidence submitted by public commenters" that the "tone" of the 2020 Rule created "confusion" among investors about whether "ESG factors may be treated as 'pecuniary' factors." 87 Fed. Reg. at 73856; 73825. Thus, in stakeholders' eyes, this created a "chilling effect" on the "appropriate integration of climate change and other ESG factors in investment decisions," *id.*, and placed "a thumb on the scale against the consideration of ESG factors, even when those factors are financially material." *Id.* at 73826.

To remedy those concerns, the 2022 Rule first removed the "pecuniary/non-pecuniary" nomenclature and replaced it with the instruction that fiduciaries' investment decisions "must be based on factors that the fiduciary reasonably determines are relevant to a risk and return analysis." *Id.* at 73885. Second, the Rule again clarified that risk and return factors "may include" ESG factors depending on individual facts and circumstances. *Id.* Third, the Rule restated the tiebreaker test to permit considerations of collateral benefits where competing investments "equally serve the financial interests of the plan over the appropriate time horizon." *Id.* Fourth, the Rule eliminated the 2020 Rule's specific documentation requirement, which commenters feared would chill

3

fiduciaries from utilizing the tiebreaker test. *Id.* at 73838. Fifth, the Rule removed special requirements concerning the selection of qualified designated investment alternatives. *Id.* at 73842. And sixth, the Rule adopted proposals to eliminate regulatory language indicating that the exercise of fiduciary duties "does not require the voting of every proxy or the exercise of every shareholder right," and to eliminate monitoring and recordkeeping requirements related to proxy voting or other exercises of shareholder rights. *Id.* at 73843–46.

Plaintiffs filed this case on January 26, 2023, and then filed a motion for a preliminary injunction on February 24, 2023. ECF Nos. 1, 39. Private Plaintiffs allege they will be "forced to expend additional time and resources monitoring and reviewing recommendations from the plan's investment advisors, without the benefit of recordkeeping requirements or strict regulations, to assure the advisors are focusing only on pecuniary considerations and not collateral ESG factors," ECF No. 39 at 21, and that oil and gas companies "will likely be further harmed by decreased interest from investment capital." *Id.* at 22. Likewise, State Plaintiffs allege they "suffer a proprietary injury in the form of diminished tax revenues" in addition to *parens patriae* standing "because the Rule will harm the economic well-being of their residents." *Id.* at 26.

After conferring on Plaintiffs' intent to move under Rule 65(a)(2) to "consolidate trial on the merits" with the preliminary injunction hearing, parties "agreed that the only additional information needed in this case is the administrative record and supplemental briefing." ECF No. 89 at 2. The Court then entered a scheduling order consistent with that agreement. ECF No. 97. Accordingly, the case is now ripe for summary judgment.

### LEGAL STANDARD

"Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record." *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp.

4

2d 13, 18 (D.D.C. 2008). "[T]he district judge," in turn, "sits as an appellate tribunal," because "[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *City & Cnty. of S.F. v. United States*, 130 F.3d 873, 877 (9th Cir. 1997).

"[T]he entire case on review is a question of law, and only a question of law." *Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018). And "summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Lannett Co., Inc. v. FDA*, 300 F. Supp. 3d 34, 41 (D.D.C. 2017). Hence, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Lastly, "[o]n cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021).[1]

**ANALYSIS**

### A. The Rule Does Not Violate ERISA

ERISA provides that a fiduciary must discharge his duties concerning a plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of" providing "benefits" to them. 29 U.S.C. § 1104(a)(1). The term 'benefits" in the provision "must be

---

[1] In the preliminary injunction briefing, DOL contested whether State Plaintiffs have standing but did not contest the standing of Private Plaintiffs. The Court agrees that State Plaintiffs likely do not have standing. *See La. State v. NOAA*, No. 22-30799, 2023 WL 4014179, at *6 (5th Cir. June 15, 2023) (complaint allegations are insufficient at summary judgment because pleadings are not summary judgment evidence); *id.* at *7 n.5 ("Additionally, it is dubious that Louisiana may maintain its *parens patriae* suit against the federal government at all."); *cf. Texas v. United States*, 809 F.3d 134, 157 (5th Cir. 2015) (state standing based on "a loss of specific tax revenues" involves "undisputed" direct injuries to the state). But because "only one needs standing for the action to proceed," the Court will not discuss the standing issues at length. *Gen. Land Off. v. Biden*, No. 22-40526, 2023 WL 4044448, at *3 (5th Cir. June 16, 2023).

understood to refer to the sort of *financial* benefits (such as retirement income) that trustees who manage investments typically seek to secure for the trust's beneficiaries." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420–21 (2014).

The question of whether the Rule violates ERISA invokes the analytical framework outlined in *Chevron USA Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[2] That framework "proceeds in two steps." *Mexican Gulf Fishing,* 60 F.4th at 963. At step one, courts ask "whether Congress has directly spoken to the precise question at issue," in which case courts "must give effect to the unambiguously expressed intent of Congress and reverse an agency's interpretation that fails to conform to the statutory text." *Id.* But if the statute is ambiguous, courts reach step two, and may not disturb an agency rule unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 53 (2011). Thus, "[t]he fact that the agency has from time to time changed its interpretation" does not mean that "no deference should be accorded the agency's interpretation of the statute." *Chevron*, 467 U.S. at 863.

Here, Plaintiffs argue DOL loses at either step because "the plain text of ERISA forecloses consideration of non-pecuniary factors, including for tiebreakers." ECF No. 85 at 14. But that is not so. Because ERISA does not contemplate the possibility of a "tie" between two financially equivalent investment options, Congress has not "directly spoken to the precise question at issue." *Mexican Gulf Fishing*, 60 F.4th at 963.

DOL also wins at step two. That is because the reasonableness of DOL's interpretation is supported by its prior rulemakings — including the 2020 Rule which Plaintiffs approvingly hold

---

[2] Plaintiffs aver that *Chevron* "should be limited or overruled." ECF No. 85 at 15. Plaintiffs' objections to *Chevron* are well taken. But the Court will apply *Chevron* in appropriate circumstances "until and unless it is overruled by our highest Court." *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 963 n.3 (5th Cir. 2023).

out as "reflect[ing] ERISA's focus on *financial* benefits." ECF No. 39 at 11. Indeed, since at least 2015, DOL has posited that ESG factors "may have a direct relationship to the economic value of the plan's investment." 80 Fed. Reg. at 65136. And likewise, the 2020 Rule stated that failing to consider ESG-related risk-return factors could constitute a violation of the duty of prudence in some circumstances: "For example, a company's improper disposal of hazardous waste would likely implicate business risks and opportunities, litigation exposure, and regulatory obligations." 85 Fed. Reg. at 72848.[3] But in any event, Plaintiffs concede that ESG factors can be considered for risk-return purposes in appropriate circumstances. *See* ECF No. 39 at 32 (ESG are permissible factors "when the fiduciary reasonably concludes the factor will benefit the beneficiary directly by improving risk-adjusted return of a particular investment" and "the fiduciary's exclusive motive is to obtain this direct benefit").

The 2022 Rule changes little in substance from the 2020 Rule and other rulemakings.[4] Where the 2020 Rule explained that collateral factors may be considered when a fiduciary is "unable to distinguish" between two investment options based on financial factors alone, the 2022 Rule allows the same when the two options "equally serve the financial interests of the plan." 87 Fed. Reg. at 73836–38. And while Plaintiffs aver that the 2022 changes loosen restrictions on fiduciaries, there is little meaningful daylight between "equally serve" and "unable to distinguish."

The Rule also explains that fiduciaries remain free "to determine that an ESG-focused investment is not in fact prudent," 87 Fed. Reg. at 73831, and stresses that a "fiduciary's

---

[3] Additionally, DOL stated in 2008 that fiduciaries may "rely on factors outside the economic interests of the plan in making investment choices," although they "will rarely be able to demonstrate compliance with ERISA absent a written record demonstrating that a contemporaneous economic analysis showed that the investment alternatives were of equal value." 73 Fed. Reg. at 61735–36. For these reasons, the "history and the breadth of the authority that [the agency] has asserted" does not provide a "reason to hesitate before concluding that Congress" meant to confer such authority. *W. Va. v. EPA*, S. Ct. 2587, 2608 (2022) (discussing the "major questions" doctrine).

[4] Scholars have noted "the substantive requirements of the two rules are the same" and that the changes from the 2020 Rule are merely "cosmetic." ECF No. 88 at 16.

determination with respect to an investment . . . must be based on factors that the fiduciary reasonably determines are relevant to a risk and return analysis," *id.* § 2550.404a-1(b)(4).[5] Hence, "[r]isk and return factors may include [ESG] factors on the particular investment," but "[w]hether any particular consideration is a risk-return factor depends on the individual facts and circumstances." *Id.* And even where collateral benefits are considered as a tiebreaker, a fiduciary may not "accept expected reduced returns or greater risks to secure such additional benefits." *Id.* § 2550.404a-1(c)(2).

Additionally, the Rule's statement that risk-return factors "may include" ESG factors differs from the "may often require" language of the proposed rule. 87 Fed. Reg. at 73830. As DOL clarified, the proposed language "was not intended to create an effective or de facto regulatory mandate" or "an overarching regulatory bias in favor of ESG strategies." *Id.* To the contrary, the Rule "makes unambiguous that it is not establishing a mandate that ESG factors are relevant under every circumstance, nor is it creating an incentive for a fiduciary to put a thumb on the scale in favor of ESG factors." *Id.* at 73831.

The Rule seeks to achieve "appropriate regulatory neutrality and ensures that plan fiduciaries do not misinterpret" the Rule "as a mandate to consider the economic effects of climate change and other ESG factors under all circumstances." *Id.* And "nothing about the principles-based approach should be construed as overturning long established ERISA doctrine or displacing relevant common law prudent investor standards." *Id.* This includes *Dudenhoeffer*'s holding that

---

[5] *See also* 29 C.F.R. § 2550.404a-1(c)(1) ("A fiduciary may not subordinate the interests of participants . . . to other objectives, and may not sacrifice investment return or take on additional investment risk to promote benefits or goals unrelated to interests of the participants"); *id.* § 2550.404a-1(b)(1)(i) (Fiduciaries must give "appropriate consideration" to facts they know or should know "are relevant to the particular investment or investment course of action involved."). The phrase "appropriate consideration" includes "a determination by the fiduciary that the particular investment . . . is reasonably designed . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain . . . compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks." *Id.* § 2550.404a-1(b)(2)(i).

fiduciaries must act "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and that the term "benefits" "must be understood to refer to . . . *financial* benefits." 573 U.S. at 421.

To summarize, an ESG factor could be worth consideration even under prior rules if it "is expected to have a material effect on the risk and/or return of an investment." 85 Fed. Reg. at 72884. Similarly, the 2022 Rule states that risk and return factors may include ESG factors under some circumstances, but those factors must still reflect "a reasonable assessment of its impact on risk-return." 29 C.F.R. § 2550.404a-1(b)(4). In other words, the 2022 Rule "provides that where a fiduciary reasonably determines that an investment strategy will maximize risk-adjusted returns, a fiduciary may pursue the strategy, whether pro-ESG, anti-ESG, or entirely unrelated to ESG." ECF No. 88 at 13–14. And like prior rules, the 2022 Rule allows consideration of collateral factors to break a tie. Thus, after affording DOL the deference it is presently due under *Chevron*, the Court cannot conclude that the Rule is "manifestly contrary to the statute." *Mayo Found.*, 562 U.S. at 53.

### B. The Rule Is Not Arbitrary and Capricious

Under the APA, courts must "hold unlawful and set aside" agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, courts should recognize that agencies "have expertise and experience in administering their statutes that no court can properly ignore," *Judulang v. Holder*, 565 U.S. 42, 53 (2011), and must not "impose upon agencies specific procedural requirements that have no basis in the APA," *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990). That said, the agency must

9

nevertheless "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43; *see also Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1013 (5th Cir. 2019) (judicial review of agency action "is not toothless").

While an agency need not "address every comment," it must "respond in a reasoned manner to those that raise significant problems." *Reytblatt v. U.S. Nuclear Regul. Comm'n*, 105 F.3d 715, 722 (D.C. Cir. 1997). In review, courts then "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State Farm*, 463 U.S. at 43. For these purposes, an agency's action is "arbitrary and capricious" if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

Similarly, "an agency's decision to change course may be arbitrary and capricious if the agency ignores or countermands its earlier factual findings without reasoned explanation for doing so." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009). At the least, the agency must "display awareness that it *is* changing position," and "show that there are good reasons for the new policy." *Id.* at 515.

Here, Plaintiffs argue: (1) the Rule does not rebut DOL's prior finding that "strict" regulations are necessary; (2) the alleged need for the Rule is inadequate because DOL never identified "who specifically was confused," the "source of confusion," or that "any such confusion or negative perceptions reduced *financial* returns for participants and beneficiaries"; and (3) many of the Rule's provisions are "unreasonable, internally inconsistent, fail to consider relevant factors," and rely on factors "Congress has not intended it to consider." ECF No. 391 at 37–40.

10

These arguments all fail to establish an APA violation. To begin, DOL explained its position that the 2020 Rule had a chilling effect on fiduciaries' consideration of pertinent information when making investment decisions. 87 Fed. Reg. at 73826. And DOL expressly replied to comments that argued the agency "did not articulate what confusion it had created." *Id.* at 73860. The Department identified specific comments speaking to that issue, cited literature from the Harvard Law School Forum on Corporate Governance and the United Nations Principles for Responsible Investment, *id.*, and considered eliminating the tiebreaker test before ultimately retaining it due to reliance interests, *id.* at 73878.[6]

Plaintiffs then take issue with the Rule's authorization of fiduciaries considering "participants' preferences" — a "euphemism for considering nonpecuniary factors such as climate change and other ESG factors." ECF No. 39 at 41–42. But Plaintiffs again fail to distinguish the 2022 Rule from the 2020 Rule. Indeed, nothing in the 2020 Rule "preclude[d] a fiduciary from looking into certain types of investment alternatives in light of participant demand for those types of investments." 85 Fed. Reg. at 72864. And likewise, the 2022 Rule merely states that participant preferences can be considered when they are "relevant to furthering the purposes of the plan" and "consistent with" a fiduciary's investment duties. 87 Fed. Reg. at 73842. Further, the Rule clarifies that "fiduciaries may not add imprudent investment options to menus just because participants request or would prefer them." *Id.*

Next, Plaintiffs point out that the Rule deleted the proposed rule's prohibition on exercising proxy rights to "promote non-pecuniary benefits or goals unrelated to those financial interests of the plan participants and beneficiaries" — a command "designed to promote ERISA's focus on financial benefits." ECF No. 39 at 42. But the Rule's "removal of the clause at issue does not

---

[6] *See also R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189 (5th Cir. 2023) (agencies must consider "serious reliance interests" that its "longstanding policies may have engendered").

constitute a rejection of this principle." 87 Fed. Reg. at 73848. Rather, DOL concluded that other

provisions in the Rule already require fiduciaries to act "solely in accordance with the economic

interests of the plan" and that the clause therefore "serve[d] no independent function." *Id.* at 73847.

The Department further agreed with commenters that "the clause is easily misconstrued"

as imposing on fiduciaries duties "above and beyond" the duties contained in other paragraphs. *Id.*

at 73848. Because DOL saw no reason to "impose such additional duties, with their attendant costs

and potential for litigation" when other provisions "are fully adequate to protect the interests of

plan participants," it found that ERISA's duty of prudence was sufficient in protecting plan

beneficiaries. *Id.* Accordingly, the Department saw no need in imposing "additional burdens" on

the use of the tiebreaker test or creating "incentives that discourage, rather than promote, proper

fiduciary activity." *Id.* at 73838.

Similarly, Plaintiffs argue the Rule wrongly eliminated specific restrictions on qualified

default investment alternatives ("QDIAs") to allow fiduciaries "to select funds that expressly

prioritize nonpecuniary benefits." ECF No. 39 at 44. But DOL explained that "most commenters

on this issue" considered the restrictions unnecessary. 87 Fed. Reg. at 73842.

Commenters also expressed concern "that funds may be excluded from selection as QDIAs

solely because they expressly considered climate change or other ESG factors, even though the

funds are prudent based on a consideration of their financial attributes alone" or are "even best in

class." *Id.* at 73843. DOL agreed with these comments but noted that QDIAs would continue to

be subject to "the prohibition against subordinating the interests of participants and beneficiaries

in their retirement income to other objectives." *Id.*

Plaintiffs then fix their attention on the proposed rule's disclosure requirement "that would

apply whenever a fiduciary considered a collateral benefit in selecting an investment for a

participant-driven individual account plan" and assert the "2022 Rule eliminated this provision but remarkably does not clearly state why." ECF No. 39 at 45. However, DOL did explain the "limited support" for this disclosure requirement and the "substantial concerns" raised by the public. 87 Fed. Reg. at 73839. Among these concerns were that the disclosure requirement: (1) is "inherently ambiguous"; (2) is unnecessary and requires disclosure of content "of no economic significance"; (3) "disproportionately emphasize[s] one part of the fiduciary decisionmaking process over other more relevant factors in a way that could mislead participants"; (4) is "contrary to the principle of neutrality" because it has "a chilling effect on the proper use of climate change and other ESG factors"; and (5) "would effectively act as an invitation to litigation." *Id.* at 73839–41.

Some commenters took issue with the "necessary consequence" that a disclosure violation "would constitute a per se breach of ERISA's duty of loyalty." *Id.* at 73841. Others pointed out various "technical issues with the proposed disclosure requirement." *Id.* DOL responded that its decision was based on these concerns but also emphasized that "the decision against adopting a collateral benefit disclosure requirement in the final rule has no impact on a fiduciary's duty to prudently document the tiebreaking decisions in accordance with section 404 of ERISA." *Id.*[7]

Additionally, Plaintiffs assert the Rule fails to consider the alternative of issuing sub-regulatory guidance instead of amending the regulation itself. But as an initial matter, an agency "need not consider every alternative proposed" — especially where the alternative was not a serious issue raised by commenters. *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 724 (5th Cir. 2013). And regardless, DOL explained the 2020 Rule was plagued with "contradictory statements"

---

[7] Plaintiffs' Reply faults the Rule for not mentioning additional monitoring costs participants will incur to "ensure compliance with fiduciary duties." ECF No. 85 at 20. But "Plaintiffs provide no detail about what kind of monitoring they might undertake, how much it might cost, or how it differs from their normal activities." ECF No. 69 at 28; *see also* 29 C.F.R. § 2509.75-8 (performance of fiduciaries should be reviewed "at reasonable intervals" in such manner "as may be reasonably expected" to ensure compliance).

and "overly stringent language." ECF No. 69 at 45. Hence, the Department maintains that interpretive guidance "could not have cured the chilling effect" of the 2020 Rule and would "not have the force and effect of law." *Id.* at 46; *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015).

Finally, Plaintiffs aver that the Rule is the product of "prejudgment" because it "does not meaningfully rebut the strong evidence that DOL had already decided what to do in this rulemaking before it reviewed the public comments." ECF No. 39 at 48. But the Supreme Court has held that an "open-mindedness" test violates the "general proposition that courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2385 (2020).

For all these reasons, the Rule does not violate the APA. And while the Court is not unsympathetic to Plaintiffs' concerns over ESG investing trends, it need not condone ESG investing generally or ultimately agree with the Rule to reach this conclusion. Rather, "all that is necessary is a 'minimal level of analysis' from which the agency's reasoning may be discerned," "regardless of whether the court finds the reasoning fully persuasive." *Brackeen v. Haaland*, 994 F.3d 249, 357–58 (5th Cir. 2021), *rev'd in part on other grounds*, No. 21-376, 2023 WL 4002951 (U.S. June 15, 2023). DOL has provided that here. Accordingly, the Department is entitled to summary judgment, and Plaintiff's Motion must be denied.

CONCLUSION

For the foregoing reasons, the Motion is **DENIED** and the Cross-Motion is **GRANTED**.

**SO ORDERED**.

September **21**, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE