## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

STATE OF UTAH ET AL.,

                        *Plaintiffs*,

v.

JULIE A. SU[1] and
UNITED STATES DEPARTMENT OF LABOR,

                        *Defendants*.

No. 2:23-CV-00016-Z

**PLAINTIFFS' FIRST SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

---

[1] Plaintiffs have substituted the name of the Acting Secretary of Labor for former Secretary of Labor Martin Walsh as a Defendant in accordance with Fed. R. Civ. P. 25(d).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................1

I.    The 2022 Rule's Tiebreaker Provision Is Contrary To Law ...................................1

    A.    ERISA's Text and Structure Forbid the Tiebreaker Provision.............................1

    B.    ERISA's Common-Law Roots Refute the Tiebreaker Provision..........................3

    C.    The Supreme Court Has Interpreted "Sole and Exclusive Benefit".....................4

    D.    ERISA's Drafting History Also Supports Plaintiffs .........................................5

    E.    Past Practice Does Not Justify the Tiebreaker Provision, and Congress's Disapproval of the 2022 Rule is More Probative ..................................................6

    F.    The Major-Questions Doctrine Forecloses The Tiebreaker Provision ...............7

II.    The 2022 Rule's Provisions Are Arbitrary and Capricious ...................................8

III.    This Court Should Vacate the 2022 Rule....................................................................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Airlines for America v. Department of Transportation,*
    __ F.4th __, 2024 WL 3580314 (5th Cir. July 29, 2024) ..................................................6

*American Council of Life Insurers v. DOL,*
    No. 4:24-CV-00482-O, 2024 WL 3572297 (N.D. Tex. July 26, 2024) ...............................3

*Blankenship v. Boyle,*
    329 F. Supp. 1089 (D.D.C. 1971) ....................................................................................4

*Career Colleges and Schools of Texas v. United States Department of Education,*
    98 F.4th 220 (5th Cir. 2024) ...........................................................................................6

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) ..........................................................................................10

*Chamber of Commerce v. DOL,*
    885 F.3d 360 (5th Cir. 2018) ...........................................................................................3

*Donovan v. Bierwirth,*
    680 F.2d 263 (2d Cir. 1982) ............................................................................................4

*Erlenbaugh v. United States,*
    409 U.S. 239 (1972) ........................................................................................................5

*Federation of Americans for Consumer Choice, Inc. v. DOL,*
    __ F. Supp. 3d __, 2024 WL 3554879 (E.D. Tex. July 25, 2024) ....................................3

*Fifth Third Bancorp v. Dudenhoeffer,*
    573 U.S. 409 (2014) ........................................................................................................2

*Fulton National Bank v. Tate,*
    363 F.2d 562 (5th Cir. 1966) ...........................................................................................4

*Halperin v. Richards,*
    7 F.4th 534 (7th Cir. 2021) ..............................................................................................3

*In re Van Epps' Estate,*
    161 N.W.2d 278 (Wis. 1968) ...........................................................................................3

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ......................................................................................................3

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ............................................................................................ 1, 6, 9

*Luyties' Estate v. Scudder*,
    432 S.W.2d 210 (Mo. 1968) .......................................................................................... 3

*Martinez v. Schlumberger, Ltd.*,
    338 F.3d 407 (5th Cir. 2003) ........................................................................................ 3

*Mayfield v. DOL*,
    __ F.4th __, 2024 WL 4142760 (5th Cir. Sept. 11, 2024) .......................................... 7

*MCI Telecommunications Corp. v. AT&T*,
    512 U.S. 218 (1994) ....................................................................................................... 8

*NFIB v. DOL*,
    595 U.S. 109 (2022) ....................................................................................................... 8

*NLRB v. Amax Coal*,
    453 U.S. 322 (1981) ................................................................................................... 3, 5

*Restaurant Law Center v. DOL*,
    __ F.4th __, 2024 WL 3911308 (5th Cir. Aug. 23, 2024) ............................... passim

*Schweitzer v. Investment Committee of Phillips 66 Savings Plan*,
    960 F.3d 190 (5th Cir. 2020) ..................................................................................... 2, 3

*Southwest Electric Power Co. v. EPA*,
    920 F.3d 999 (5th Cir. 2019) ........................................................................................ 9

*Texas v. DOL*,
    2024 WL 3240618 (E.D. Tex. June 28, 2024) ............................................................ 1

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ......................................................................................... 9

*Tibble v. Edison International*,
    575 U.S. 523 (2015) ....................................................................................................... 3

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ....................................................................................................... 3

*United States v. Haggar Apparel Co.*,
    526 U.S. 380 (1999) ....................................................................................................... 9

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ................................................................................................... 6, 8

**Statutes**

5 U.S.C. § 706 ......................................................................................................... 1, 8

29 U.S.C. § 1103 ......................................................................................................... 2, 3

29 U.S.C. § 1104 ...................................................................................................... 1, 2, 3

29 U.S.C. § 1107 ............................................................................................................. 3

29 U.S.C. § 1108 ............................................................................................................. 3

**Administrative Materials**

Financial Factors in Selecting Plan Investments,
    85 Fed. Reg. 39,113-02 (June 30, 2020) ...........................................................6

Financial Factors in Selecting Plan Investments,
    85 Fed. Reg. 72,846 (Nov. 3, 2020) ...................................................................6

Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights,
87 Fed. Reg. 73,822 (Dec. 1, 2022)……………………………………………………...3, 7, 9, 10

**Other Authorities**

2A Scott & Fratcher, *The Law of Trusts*
    § 170 (4th ed. 1987) ............................................................................................4

Antonin Scalia & Bryan Garner, *Reading Law* (2012) ...................................................3

Emp. Benefits Sec. Admin., DOL, *FY 2023 Congressional Budget Justification*,
    https://perma.cc/W4X2-P3D5 ...........................................................................7

*Exclusive*, American Heritage Dictionary of the English Language 458 (1969) ...................2

*Exclusive*, Black's Law Dictionary (11th ed. 2019) ...........................................................2

H.R.J. Res. 30, 118th Cong. ...........................................................................................6

*How ESG Became Part of America's Culture Wars*, The Economist (June 21, 2023),
    https://www.economist.com/the-economist-explains/2023/06/21/how-esg-became-part-of-
    americas-culture-wars .......................................................................................8

James D. Hutchinson & Charles G. Cole, *Legal Standards Governing Investment of
    Pension Assets for Social and Political Goals*, 128 U. Pa. L. Rev. 1340 (1980) ................. 5, 6, 8

Jean-Pierre Aubry et al., *ESG Investing and Public Pensions: An Update*,
    Ctr. for Ret. Rsch. at Bos. Coll., State & Local Pension Plans No. 74 (Oct. 2020),
    https://perma.cc/R5YN-E2HT .........................................................................7

Restatement (Second) of Trusts § 170 (1959)................................................................3

Restatement (Third) of Trusts § 78 (2007)..................................................................4

Restatement (Third) of Trusts § 90 (2007)..................................................................4

Retirees Sustainable Investment Opportunities Act of 2021, H.R. 3604, 117th Cong. (2021) ............8

*Sole*, American Heritage Dictionary of the English Language 1229 (1969)...........................................2

*Solely*, Merriam-Webster Dictionary Online,
    https://perma.cc/DK3L-4YZB ....................................................................2

*Solely*, Oxford Student's Dictionary of American English 570 (1st ed. 1983) .........................................2

The Freedom to Invest in a Sustainable Future Act,
    S. 523, 118th Cong. (2023)........................................................................8

Welfare and Pension Plan Legislation: Hearings on H.R. 2 and H.R. 462
    Before the Gen. Subcomm. on Lab. of the H. Comm. on Educ. and Labor,
    93d Cong. 260 (1973)........................................................................6

## INTRODUCTION

Following *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2261 (2024), the Fifth Circuit remanded this case to "have the benefit of the district court's 'independent judgment' as to whether the [2022 Rule] can be squared with either ERISA or the APA." Order at 9. As Judge Oldham put it, DOL's interpretation of ERISA assumes a fiduciary's duty of loyalty can "run out." Oral Arg. at 20:03, 28:41. That is wrong. This Court should conclude—consistent with text, structure, the common law, Supreme Court precedent, drafting history, Congressional disapproval, and the major-questions doctrine—that ERISA imposes a prophylactic duty to act for the sole and exclusive financial benefit of beneficiaries. There is no room for mixed motives, even if a fiduciary claims to not subordinate financial interests. This Court should also hold that the 2022 Rule is arbitrary and capricious because it improperly defines what constitutes a tie, permits consideration of collateral effects, and eliminates recordkeeping based on a misinterpretation of ERISA. Finally, this Court should vacate the 2022 Rule.

## ARGUMENT

### I.  THE 2022 RULE'S TIEBREAKER PROVISION IS CONTRARY TO LAW

The APA directs courts to "hold unlawful and set aside" agency action that is "not in accordance with law" or "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(A), (C). It is the Court's "responsibility . . . to decide whether the law means what the agency says" without deference to the agency's interpretation. *Loper Bright*, 144 S. Ct. at 2261. Here, the 2022 Rule is contrary to ERISA and therefore violates the APA. *See Rest. L. Ctr. v. DOL*, __ F.4th __, 2024 WL 3911308, at *1 (5th Cir. Aug. 23, 2024) (rule "contrary to the . . . clear statutory text . . . is not in accordance with law"); *Texas v. DOL*, 2024 WL 3240618 (E.D. Tex. June 28, 2024) (finding DOL rule "likely unlawful").

#### A.  ERISA'S TEXT AND STRUCTURE FORBID THE TIEBREAKER PROVISION

ERISA imposes fiduciary duties of loyalty, prudence, and diversification. 29 U.S.C. § 1104(a)(1)(A)–(C). The duty of loyalty requires acting "solely in the interest of the participants and

1

beneficiaries," *id.* § 1104(a)(1), and for the "exclusive" purposes of "providing benefits" to participants and beneficiaries and defraying reasonable expenses, *id.* §§ 1103(c)(1), 1104(a)(1)(A).

The ordinary meaning of those terms forbids any other considerations. "Solely" means "to the exclusion of all else." *Solely*, Merriam-Webster Dictionary Online, https://perma.cc/DK3L-4YZB; *see Sole*, American Heritage Dictionary of the English Language 1229 (1969) ("Being the only one; existing or functioning without another or others; only."); *Solely*, Oxford Student's Dictionary of American English 570 (1st ed. 1983) ("alone; only"). "Exclusive" means fiduciaries must act for the "whole, undivided" purpose of securing those benefits for participants. *Exclusive*, Black's Law Dictionary (11th ed. 2019); *see Exclusive*, American Heritage Dictionary of the English Language 458 (1969) ("Not divided or shared with others . . . Single or independent; sole[.]"). And "benefits" refers to "financial benefits," which "does not cover nonpecuniary benefits" such as "securing capital funds" for the employer or "bringing about stock ownership" for employees. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416, 420–21 (2014) (cleaned up). Those financial benefits must be "the sort of financial benefits (such as retirement income)" that ERISA protects. *Id.* at 421.

Moreover, when choosing between best-in-class investments, ERISA already supplies its own default answer, making a tiebreaker unnecessary. Fiduciaries have a duty to diversify investment options "to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C); *see also Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194–95 (5th Cir. 2020). In other words, choose both investment options when possible.

ERISA's overall structure, which contains express exceptions, confirms that Congress did not provide broader, unwritten exceptions to its fiduciary rules, including the exclusive-benefit rule. *See* 29 U.S.C. § 1103(c)(2)(A) (permitting fiduciaries to return mistaken contributions made by an employer within a limited time); *id.* § 1103(c)(2)(B) (permitting fiduciaries to return funds contributed on initial tax qualifications of a retirement plan within a limited period if the plan receives an adverse

determination). The exclusive-benefit rule also does not apply when allocating assets upon termination of a retirement plan. *Id.* §§ 1103(d), 1104(a)(1). ERISA also "allows corporate insiders—who already have fiduciary duties under corporation law—to serve as ERISA fiduciaries." *Halperin v. Richards*, 7 F.4th 534, 547 (7th Cir. 2021); *see* 29 U.S.C. § 1108(c)(3). Such insiders would otherwise have a conflict of interest. *NLRB v. Amax Coal*, 453 U.S. 322, 332 (1981). ERISA even "invites conflicts of interest" in some circumstances by allowing investments in company stock under employee stock ownership plans. *Halperin*, 7 F.4th at 547; *see* 29 U.S.C. § 1107(b)(1), (d)(3)(A)(ii). The existence of these exceptions implies the lack of others, including a tiebreaker exception to the exclusive-benefit rule. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018); Antonin Scalia & Bryan Garner, *Reading Law* 107 (2012).

In sum, "solely" means solely; "exclusive" means exclusive. It doesn't matter whether a fiduciary refrains from *subordinating* the interests of retirement plan participants, *see* 87 Fed. Reg. 73,822, 73,885, because ERISA's duty of loyalty is a categorical prophylactic that bars collateral considerations.

## B.    ERISA'S COMMON-LAW ROOTS REFUTE THE TIEBREAKER PROVISION

"ERISA codified the common law understanding of fiduciary." *Fed'n of Ams. for Consumer Choice, Inc. v. DOL*, __ F. Supp. 3d __, 2024 WL 3554879, at *10 (E.D. Tex. July 25, 2024) (citing *Chamber of Com. v. DOL*, 885 F.3d 360, 369–70 (5th Cir. 2018)); *Am. Council of Life Insurers v. DOL*, No. 4:24-CV-00482-O, 2024 WL 3572297, at *5 (N.D. Tex. July 26, 2024) (agreeing with *FACC*); *see also Tibble v. Edison Int'l*, 575 U.S. 523, 528–29 (2015); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411–12 (5th Cir. 2003). Its fiduciary duties "are 'the highest known to the law.'" *Schweitzer*, 960 F.3d at 194.

ERISA's duty of loyalty even uses common-law terms, *see* Restatement (Second) of Trusts § 170(1) (1959) ("The trustee is under a duty to the beneficiary to administer the trust *solely in the interest of the beneficiary*." (emphasis added)); *accord Luyties' Est. v. Scudder*, 432 S.W.2d 210, 214 (Mo. 1968); *In re Van Epps' Est.*, 161 N.W.2d 278, 282 (Wis. 1968), which presumably "bring the old soil with them," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (cleaned up).

3

The duty of loyalty is "the most fundamental" rule of trust law. 2A Scott & Fratcher, *The Law of Trusts* § 170, at 311 (4th ed. 1987). It prohibits fiduciaries from being "influenced" in any way "by the interest of any third person or by motives other than the accomplishment of the purposes of the trust." Restatement (Third) of Trusts § 78 cmt. f (2007); *see* Restatement (Second) of Trusts § 170, cmt. q. This includes anything "advancing or expressing the trustee's personal views concerning social or political issues or causes." Restatement (Third) of Trusts § 90 cmt. C (2007).

To enforce these duties, trust law imposes categorical, prophylactic rules to ensure that fiduciaries avoid entirely the siren call of collateral considerations. As the Fifth Circuit explained, "[i]t is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest." *Fulton Nat'l Bank v. Tate*, 363 F.2d 562, 571 (5th Cir. 1966) (cleaned up). Trust law thus chooses to "remove altogether the occasions of temptation rather than to monitor fiduciary behavior and attempt to uncover and punish abuses when a trustee has actually succumbed to temptation." Restatement (Third) of Trusts § 78 cmt. b.

When a fiduciary acts with mixed motives, even when those considerations "were harmless" to the beneficiary, courts impose "an irrebuttable presumption of wrongdoing." *Halperin*, 7 F.4th at 546 (cleaned up); *see also Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (decisions must "be made with an eye single to the interests of the participants and beneficiaries," which requires trustees not to put "themselves in a position" where they cannot function "with the complete loyalty to participants demanded of them"); *Blankenship v. Boyle*, 329 F. Supp. 1089, 1113 (D.D.C. 1971) (fiduciary may not "operat[e] the Fund in a manner designed in whole or in part to afford collateral advantages").

## C.    THE SUPREME COURT HAS INTERPRETED "SOLE AND EXCLUSIVE BENEFIT"

*Amax Coal* involved an NLRA provision with language the Court found nearly identical to ERISA's. The NLRA permitted employers and unions to establish employee-benefit trust funds if

4

employers and employees were equally represented among the trustees. 453 U.S. at 325. It also required those trustees to act "'for the sole and exclusive benefit of the employees.'" *Id.* at 329.

The case turned on how to interpret the "sole and exclusive benefit" rule. The Court noted that those terms had "accumulated settled meaning" through the common law of trusts, which included "an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties." *Id.* This rule existed to "deter the trustee from all temptation and to prevent any possible injury to the beneficiary," and so it "must be enforced with uncompromising rigidity." *Id.* at 329-30 (cleaned up). "Congress intended to impose . . . traditional fiduciary duties unless [it] has unequivocally expressed a[ contrary] intent." *Id.* "A fiduciary cannot contend 'that, although he had conflicting interests, he served his masters equally well or that his primary loyalty was not weakened by the pull of his secondary one.'" *Id.* at 330 (citation omitted). And ERISA "essentially codified" the same strict fiduciary standards in its own "exclusive benefit" rule. *Id.* at 332.

The obvious textual similarities and express comparison to ERISA confirm that ERISA's duty of loyalty should be read the same way. *See Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972) (discussing *in pari materia* canon). It makes no difference whether a fiduciary concludes—rightly or wrongly—that collateral considerations will not subordinate the interests of plan participants. The sole-and-exclusive-benefit rule is an "'uncompromising'" prophylactic to ensure that collateral considerations never even tempt fiduciaries at all. *Amax Coal*, 453 U.S. at 329–30.

## D.   ERISA'S DRAFTING HISTORY ALSO SUPPORTS PLAINTIFFS

ERISA's drafting history reinforces the conclusion that fiduciaries may not consider collateral effects. Congress considered several proposals to permit fiduciaries to engage in "social investing," but included no such provisions in ERISA. *See* James D. Hutchinson & Charles G. Cole, *Legal Standards Governing Investment of Pension Assets for Social and Political Goals*, 128 U. Pa. L. Rev. 1340, 1365–69 (1980) (collecting examples). Ralph Nader proposed a bill that would have allowed retirement funds

to put up to ten percent of their assets in "social" investments. *Welfare and Pension Plan Legislation: Hearings on H.R. 2 and H.R. 462 Before the Gen. Subcomm. on Lab. of the H. Comm. on Educ. and Labor*, 93d Cong. 260 (1973) (statement of Nader & Ferguson). Congress never adopted it. "In light of these congressional responses to specific proposals for social investing," it would be "inappropriate to stretch the 'solely in the interest' language" to allow the same considerations as tiebreakers. Hutchinson & Cole, *supra*, at 1366–67; *see West Virginia v. EPA*, 597 U.S. 697, 731–32 (2022).

### E.    PAST PRACTICE DOES NOT JUSTIFY THE TIEBREAKER PROVISION, AND CONGRESS'S DISAPPROVAL OF THE 2022 RULE IS MORE PROBATIVE

DOL relies heavily on its past practice to justify the tiebreaker provision. Courts may consider agency interpretations of law "issued contemporaneously with the statute at issue, and which have remained consistent over time." *Loper Bright*, 144 S. Ct. at 2262. But "near-exclusive reliance on agency custom is irreconcilable with the judicial obligation to interpret the statute that Congress actually enacted," *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 241 (5th Cir. 2024), and agency practice cannot "defeat a statute's text by adverse possession," *Airlines for Am. v. Dep't of Transp.*, __ F.4th __, 2024 WL 3580314, at *3 (5th Cir. July 29, 2024); *see Rest. L. Ctr.*, 2024 WL 3911308, at *8.

DOL's position post-dates ERISA and is constantly shifting. DOL has admitted that the "first comprehensive guidance" on the tiebreaker issue came in 1994, two decades after Congress passed ERISA. 85 Fed. Reg. 72,846. The 2022 Rule is the latest volley in a series of "ping-ponging directives." Fifth Circuit Order at 1; *cf. Rest. L. Ctr.*, 2024 WL 3911308, at *2 ("DOL's interpretation of the dual-jobs regulation began to oscillate with every change in presidential administration."). DOL has even questioned whether a tiebreaker is consistent with ERISA. *See* 85 Fed. Reg. 39,113-02, 39,123. DOL's past practice is thus not probative, especially since it cannot be squared with ERISA's text and structure, the common law, or the Court's interpretation of near-identical text.

Moreover, this is a rare case in which a Congressional majority has expressed its view that the 2022 Rule does not properly implement the statute, H.R.J. Res. 30, 118th Cong., and the view of

Congress on the meaning of ERISA is far more relevant than DOL's shifting positions. That the Congressional resolution did not become law because of a veto does not negate Congress's action in approving the resolution as a statement of its own judgment that the 2022 Rule conflicts with ERISA.

### F.     THE MAJOR-QUESTIONS DOCTRINE FORECLOSES THE TIEBREAKER PROVISION

The major-questions doctrine provides another compelling reason why DOL cannot authorize consideration of collateral effects. Two of the "three indicators that each independently trigger the doctrine" are present: DOL "'seeks to regulate a significant portion of the American economy or require billions of dollars in spending by private persons or entities,' and '"claims the power to resolve a matter of great political significance."'" *Mayfield v. DOL*, __ F.4th __, 2024 WL 4142760, at *2 (5th Cir. Sept. 11, 2024) (citation omitted).

The 2022 Rule is economically significant. ERISA applies to the retirement plans of 158 million Americans and nearly $13 trillion in assets. Emp. Benefits Sec. Admin., DOL, *FY 2023 Congressional Budget Justification* 10, https://perma.cc/W4X2-P3D5. DOL projected that the 2022 Rule will affect 20 percent of all plans, comprising 28.5 million participants, "because their fiduciaries consider or will begin considering . . . ESG factors." 87 Fed. Reg. at 73,857–58 & nn.117–18. To illustrate the point, public pension plans—which are not subject to ERISA—"applied ESG to . . . more than half of all assets." Jean-Pierre Aubry et al., *ESG Investing and Public Pensions: An Update*, Ctr. for Ret. Rsch. at Bos. Coll., State & Local Pension Plans No. 74, at 3 (Oct. 2020), https://perma.cc/R5YN-E2HT. That meets the guideposts of "hundreds of billions of dollars of impact" and affecting more than a "small percentage of the overall workforce." *Mayfield*, 2024 WL 4142760, at *3. Indeed, a district court recently found that even DOL's attempt to expand "fiduciary" under ERISA was an attempt "to regulate a significant portion of the American economy" because it would "transform" a "trillion-dollar market" and "regulate in a new way the thousands of people and organizations working in that market." *Fed'n of Ams. for Consumer Choice*, 2024 WL 3554879, at *14 (cleaned up). So too here.

7

The 2022 Rule also has great political significance. ESG investing is one of the most controversial contemporary political issues. *See e.g.*, *How ESG Became Part of America's Culture Wars*, The Economist (June 21, 2023), https://www.economist.com/the-economist-explains/2023/06/21/how-esg-became-part-of-americas-culture-wars. Congress passed a resolution to invalidate the 2022 Rule, which alone should be sufficient to invoke the major-questions doctrine. It has also considered many bills on the subject, both when enacting ERISA and now, Hutchinson & Cole, *supra*, at 1365–69 (examples),[2] making the 2022 Rule "all the more suspect," *West Virginia*, 597 U.S. at 732 (cleaned up).

The 2022 Rule also brings about a "radical or fundamental change" to ERISA. *Id.* (cleaned up). As discussed above, the consideration of collateral factors is antithetical to the fiduciary duties that Congress made central to ERISA. A fiduciary's duty to be transparent and provide adequate disclosures is also central to ERISA, but the 2022 Rule discarded those requirements with respect to the use of collateral factors and the tiebreaker. Shifting the regulatory scheme to permit such behavior is the kind of change that requires more than "modest words," "vague terms," or "subtle devices." *Id.* (cleaned up). DOL can show no clear statement of authorization. And DOL's inconsistent previous rules and guidance do not negate the major-questions doctrine. *See* Part I.E, *supra.* In any event, the major-questions doctrine has roots in a decision where past agency practice supported the rule. *MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218, 221–23, 231 (1994); *see also West Virginia*, 597 U.S. at 723 (citing *MCI*); *NFIB v. DOL*, 595 U.S. 109, 123 (2022) (same) (Gorsuch, J., concurring).

## II.    THE 2022 RULE'S PROVISIONS ARE ARBITRARY AND CAPRICIOUS

The 2022 Rule's tiebreaker and other provisions are arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), for multiple reasons. First, the tiebreaker is an improper line-drawing of when investments are financially equivalent. *See Rest. L. Ctr.*, 2024 WL 3911308, at *1 ("[B]ecause [the

---

[2] *See also, e.g.*, The Freedom to Invest in a Sustainable Future Act, S. 523, 118th Cong. (2023); Retirees Sustainable Investment Opportunities Act of 2021, H.R. 3604, 117th Cong. (2021).

challenged rule] imposes a line-drawing regime that Congress did not countenance, it is arbitrary and capricious."). Second, the 2022 Rule's provisions eliminating recordkeeping and allowing consideration of collateral effects are based an erroneous interpretation of ERISA's exclusive-benefit rule as a non-subordination principle rather than a prophylactic.[3]

"Even without *Chevron*, . . . courts are still to conduct a similar arbitrary-and-capricious analysis in 'fix[ing] the boundaries of . . . delegated authority and ensuring the agency has engaged in reasoned decisionmaking within those boundaries.'" *Rest. L. Ctr.*, 2024 WL 3911308, at *9 (citing *Loper Bright*, 144 S. Ct. at 2263; *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999) ("[A] court may conclude the regulation is inconsistent with the statutory language or is an *unreasonable implementation* of it.")). This review is "not toothless." *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1013 (5th Cir. 2019); *see Texas v. United States*, 40 F.4th 205, 226 (5th Cir. 2022) (arbitrary-and-capricious review "has serious bite").

The improper line drawing identified by the Fifth Circuit in *Restaurant Law Center* is similarly present here. It is far from clear that true "ties" exist in investing. The 2022 Rule concedes that "no two investments are the same in each and every respect," 87 Fed. Reg. at 73,836, meaning it is always possible to distinguish between even best-in-class investments. Yet even if ties exist in theory in the narrowest of circumstances, the 2022 Rule adopts a much broader formulation. It deletes the "economically indistinguishable" standard and replaces it with language allowing pursuit of collateral benefits if "competing investments . . . equally serve the financial interests of the plan over the appropriate time horizon." *See* 87 Fed. Reg. at 73,885 (new 29 C.F.R. § 2550.404a-1(c)(2)). It also fails to limit its application to only those situations where diversification is not possible.

In addition, the 2022 Rule permits consideration of collateral factors beyond just the tiebreaker and removes recordkeeping requirements that protect beneficiaries. These changes are arbitrary given

---

[3] Plaintiffs will not re-brief the arbitrary and capricious arguments generally and instead they incorporate that prior briefing by reference. *See* Dkts. 92, 99.

the best interpretation of ERISA's exclusive-benefit rule. *See* Part I, *supra*. For example, on the issue of QDIA's, DOL articulated the relevant rule as "prohibit[ing] . . . subordinating the interests of participants and beneficiaries in their retirement income to other objectives." Dkt. 109 at 12 (citing 87 Fed. Reg. at 73,843). This is not the correct standard. Similarly, DOL's basis for removing disclosure requirements included that they "require[] disclosure of content 'of no economic significance'" would have a "'chilling effect on the proper use of climate change and other ESG factors'" and "'would effectively act as an invitation to litigation.'" Dkt. 109 at 13 (citing 87 Fed. Reg. at 73,839–41). But all of those reasons are based on DOL's misconception of ERISA's as only prohibiting subordination.

DOL's conclusions regarding the 2020 Rule are similarly faulty. DOL described the 2020 Rule as "plagued with . . . . 'overly stringent language.'" Dkt. 109 at 13–14 (citing Dkt. 69 at 45; 87 Fed. Reg. at 73,833–34). DOL also states that the 2020 Rule "mandat[ed] documentation that 'increased transaction costs for no particular benefit to plan participants.'" Dkt. 69 at 46 (quoting 87 Fed. Reg. at 73,838). These conclusions are based on an incorrect interpretation of ERISA. As Judge Oldham observed, controversy over the Rule could be avoided by simply distilling the Rule into a single sentence and referencing the Court's pecuniary standard in *Dudenhoeffer. See* Oral Arg. at 26:00. DOL's fundamental misapprehension of ERISA's duty of loyalty as a non-subordination principle rather than a broad prophylactic means its related decisions are fatally flawed and should be vacated.

## III.    THIS COURT SHOULD VACATE THE 2022 RULE

Vacatur is the "default rule" for APA violations. *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc); *see also Rest. L. Ctr.*, 2024 WL 3911308, at *11. The 2022 Rule rests on an unlawful interpretation of ERISA, which pervades its reasoning. It also systematically eliminates protections for ERISA participants that are directly tied to the correct understanding of ERISA's duty of loyalty.

## CONCLUSION

This Court should grant summary judgment and vacate the 2022 Rule.

Dated October 16, 2024.

*/s/ David Bryant*
KEN PAXTON
Attorney General
BRENT WEBSTER
First Assistant Attorney General
RALPH MOLINA
Deputy First Assistant Attorney General
AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy
DAVID BRYANT
Senior Special Counsel, Special Litigation
Division
Texas Bar No. 03281500

Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1700
david.bryant@oag.texas.gov

*Counsel for Plaintiff State of Texas*

*/s/ Jonathan Berry*
JONATHAN BERRY
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JARED M. KELSON
JAMES R. CONDE
ANDREW W. SMITH

Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com

*Counsel for Plaintiffs Liberty Energy Inc., Liberty
Oilfield Services LLC*, and *Western Energy Alliance*

Respectfully submitted,

*/s/ Stanford E. Purser*
SEAN REYES
Attorney General
STANFORD E. PURSER
Solicitor General
Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
spurser@agutah.gov

BRUNN (BEAU) ROYSDEN
Fusion Law, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ 85020
(602) 315-7545
beau@fusion.law

*Counsel for Plaintiff State of Utah*

*/s/ Kevin M. Gallagher*
JASON MIYARES
Attorney General
KEVIN M. GALLAGHER**
Principal Deputy Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*

11

/s/ Neville Hedley
NEVILLE HEDLEY**
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(312) 342-6008
ned.hedley@hlli.org

ANNA ST. JOHN
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

*Counsel for Plaintiff James R. Copland and Alex L. Fairly*

STEVE MARSHALL
Attorney General
EDMUND LACOUR
Solicitor General

Alabama Attorney General's Office
501 Washington Ave.
Montgomery, AL 36014
(334) 353-2196
edmund.lacour@alabamaag.gov

*Counsel for Plaintiff State of Alabama*

/s/ Zachary Faircloth
ELIZABETH B. MURRILL
Attorney General
ZACHARY FAIRCLOTH
Principal Deputy Solicitor General
KELSEY L. SMITH
Deputy Solicitor General
TRACY SHORT
Assistant Attorney General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
faircloHz@ag.louisiana.gov
smithkel@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

TREG TAYLOR
Attorney General
JEFFREY G. PICKETT
Senior Assistant Attorney General
BENJAMIN HOFMEISTER**
Assistant Attorney General

Alaska Department of Law
123 4th Street
Juneau, AK 99801
(907) 269-5275
jeff.pickett@alaska.gov
ben.hofmeister@alaska.gov

*Counsel for Plaintiff State of Alaska*

TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN JACOBS
Deputy Solicitor General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY**
Solicitor General

Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

THEODORE E. ROKITA
Attorney General
JAMES A. BARTA**
Deputy Solicitor General

Indiana Attorney General's Office
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta@atg.in.gov

*Counsel for Plaintiff State of Indiana*

ASHLEY MOODY
Attorney General
JAMES H. PERCIVAL
Chief of Staff

Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, FL 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

RAÚL R. LABRADOR
Attorney General
MICHAEL A. ZARIAN
Deputy Solicitor General
Idaho Attorney General's Office
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720-0010
(208) 947-8776
michael.zarian@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
eric.wessan@ag.iowa.gov.

*Counsel for Plaintiff State of Iowa*

13

KRIS W. KOBACH
Attorney General
ANTHONY J. POWELL
Solicitor General
JESSE A. BURRIS**
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
Tel: (785) 296-2215
Fax: (785) 296-3131
jesse.burris@ag.ks.gov

*Counsel for Plaintiff State of Kansas*


LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN**
Solicitor General

Montana Department of Justice
215 N Sanders St.
Helena, MT 59601
(406) 444-2707
Christian.Corrigan@mt.gov

*Counsel for Plaintiff State of Montana*


RUSSELL COLEMAN
Attorney General
LINDSEY KEISER**
Assistant Attorney General

Kentucky Attorney General's Office
700 Capital Avenue, Suite 118
Frankfort, KY
Tel: (502) 696-5478
lindsey.keiser@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*


ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
MARIA A. LANAHAN**
Deputy Solicitor General

Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-3321
josh.divine@ago.mo.gov
maria.lanahan@ago.mo.gov

*Counsel for Plaintiff State of Missouri*


MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Solicitor General

Nebraska Attorney General's Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

14

JOHN M. FORMELLA
Attorney General
MARK W. DELL'ORFANO
Assistant Attorney General

New Hampshire Department of Justice
1 Granite Place
Concord, NH 03301
(603) 271-3658
mark.w.dellorfano@doj.nh.gov

*Counsel for Plaintiff State of New Hampshire*

DAVE YOST
Attorney General
MATHURA J. SRIDHARAN
Deputy Solicitor General

Ohio Attorney General's office
30 E. Broad St., 17th Fl.
Columbus, OH 43215
(614) 728-7511
Mathura.Sridharan@OhioAGO.gov

*Counsel for Plaintiff State of Ohio*

ALAN WILSON
Attorney General
THOMAS T. HYDRICK**
Assistant Deputy Solicitor General

South Carolina Attorney General's Office
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for Plaintiff State of South Carolina*

DREW H. WRIGLEY
Attorney General
PHILIP AXT
Solicitor General

North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Plaintiff State of North Dakota*

GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation

Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
zach.west@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

JONATHAN SKRMETTI
Attorney General and Reporter
GABRIEL KRIMM**
Assistant Solicitor General

Office of the Attorney General and Reporter of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 532-5596
Gabriel.Krimm@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

15

PATRICK MORRISEY
Attorney General
MICHAEL R. WILLIAMS**
Solicitor General

West Virginia Attorney General's Office
State Capitol Complex, Bldg. 1, Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305
(681) 313-4550
michael.r.williams@wvago.gov

*Counsel for Plaintiff State of West Virginia*

**admitted pro hac vice*
*motion for admission pro hac vice pending*

In association with local counsel:

F. Scott Flow
FLOW LAW FIRM, PLLC
800 SW 9th Avenue
Amarillo, Texas 79101-3206
(806) 372-2010
fsflow@flowlaw.com

*Co-Counsel for Plaintiffs other than State of Texas, Tennessee*

BRIDGET HILL
Attorney General
RYAN SCHELHAAS**
Chief Deputy Attorney General

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2024, the undersigned counsel used the CM/ECF system to file this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas. The attorneys in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Brunn (Beau) Roysden
Brunn (Beau) Roysden
Fusion Law, PLLC

16